## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

MEMPHIS LIGHT, GAS &
WATER DIVISION,

     Plaintiff,                   No. _____

v.

TRAVELERS CASUALTY & SURETY
COMPANY OF AMERICA,

     Defendant.

## COMPLAINT FOR DECLARATORY JUDGMENT AND BREACH OF PERFORMANCE BOND

COMES NOW the Plaintiff, Memphis Light, Gas & Water Division of the City of Memphis, Tennessee, by and through counsel, and for its Complaint against the Defendant, Travelers Casualty & Surety Company of America, respectfully states to the Court as follows:

### I. PARTIES

1.      Memphis Light, Gas & Water Division (hereinafter "MLGW") is a Tennessee public utility created as a division of the City of Memphis. MLGW's principal place of business is located at 220 South Main Street, Memphis, Tennessee 38103.

2.      The Defendant, Travelers Casualty & Surety Company of America (hereinafter "Travelers") is a business organized and existing under the laws of the state of Connecticut. Travelers is authorized to engage in the surety business in the state of Tennessee. Travelers' principal place of business is located at One Tower Square, Hartford, Connecticut 06183. Travelers can be served with process through the Commissioner of the Tennessee Department of Commerce and Insurance.

## II. JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a) because complete diversity of citizenship exists between the parties and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4.      Venue of this action is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claims in this action occurred in Shelby County, Tennessee.

5.      This Court has personal jurisdiction over Travelers as this action arises from a Performance Bond, namely bond number 107114240, under which Travelers agreed to serve as the Surety for the performance of its Principal, Asplundh Tree Expert, LLC (hereinafter "Asplundh"), under a Contract which required Asplundh to perform certain vegetation management services for MLGW in Shelby County, Tennessee.

## III. FACTS

6.      Among other things, MLGW owns, controls and manages the electric power distribution system that supplies energy to individuals and businesses located within Shelby County, Tennessee.

7.      A significant part of maintaining and improving MLGW's electric distribution system is its vegetation management program, which is one of the largest expenditures for MLGW's electric division.

8.      The purpose of the vegetation management program is to maintain appropriate clearance between vegetation and power transmission lines and reduce tree-related power outages

and electrical hazards. To accomplish this, trees and other vegetation that are in close proximity to overhead electrical lines are meant to be trimmed on a "cycle" schedule.

9.    MLGW outsources its vegetation management work to third-party contractors who specialize in utility line clearance.

10.    Line clearance contractors are chosen through a competitive bidding process. Prospective bidders receive a copy of the proposed contract, specifications, and forms for bidders to use to provide pricing and other requested information. The contract is awarded based on the bid amount as well as other considerations such as experience, supplier diversity, specification compliance, and ability to complete the work as required by MLGW.

11.    In or around early 2019, MLGW put out a request for bids on a new contract for vegetation management services. MLGW was in search of a contractor to perform the preventative maintenance trimming of trees on a three-year cycle, also referred to as "cycle trimming." The contractor chosen for the job also would perform other types of work on an as-needed basis, such as remedial trimming and emergency clearance.

12.    Asplundh submitted a bid to MLGW on or about March 19, 2019, and was awarded the contract through MLGW's competitive bidding process.

13.    When submitting its bid, Asplundh acknowledged to MLGW that it had "carefully examined" the bid request documents provided by MLGW, which included the proposed form of contract, other contract documents, and the specifications. (*See* Ex. A, Bid, at BB-1.)

14.    Asplundh also acknowledged to MLGW that it had "made such investigations as are necessary to inform the bidder in all matters affecting the performance of the contract bid upon." (Ex. A, Bid, at BB-1.)

15.     As Asplundh acknowledged it had reviewed all the bid request documents. Asplundh also was aware, or should have been aware, when preparing and submitting its bid that Asplundh was obligated to "fully understand the facilities, difficulties and restrictions attending and execution of the work required." (Ex. A, Contract, at C-4.)

16.     Asplundh further agreed at the time of submitting its bid that it would be contractually bound to perform the work in a good and skillful manner and at the bid prices it submitted. (*See* Ex. A, Bid, at BB-1.)

17.     Via a letter dated March 15, 2019, Asplundh provided MLGW with Asplundh's staffing plan, which it represented would achieve the completion of a 3-year cycle trim of the trees on the entirety of MLGW's electric distribution system. As part of that staffing plan, it stated that by the 180th day of beginning the work, Asplundh would have 95% of the necessary staffing to perform the work, or around 190 employees.

### The Contract at Issue

18.     On August 30, 2019, MLGW and Asplundh entered into a five-year contract titled "Line Clearance Contract Number 12077" (hereinafter "the Contract"). The entire agreement consisted of Asplundh's bid, contract, general conditions and specifications, all of which are bound together. A complete copy of the Contract is attached hereto as **Exhibit A** and is incorporated herein by reference as though set forth in this paragraph verbatim.

19.     Among other things, the Contract required Asplundh to perform the following "Work":

> furnish supervision, labor, transportation, equipment and such material including equipment, tools, and supplies as required to trim and or remove all trees and brush. Also, to trim trees using the most arboricultural techniques, and perform other utility forest services including chemical

4

spraying, transmission, right of way clearing and mowing, clean up and disposal of materials, and to provide clearance for the electric conductors of MLGW. In addition, this contract may include emergency storm work.

(*See* Ex. A, Contract, art. III, at C-4.)

20.     The Contract specified that as part of its scope of work, Asplundh was required to trim MLGW's entire electric distribution system on a three-year cycle. (*See* Ex. A, Contract, Specifications, para. 2, at SPEC-2.)

21.     That cycle trimming obligation, *i.e.*, to clear the lines of the entirety of MLGW's distribution system every three years, was the core obligation of the Contract. Trimming vegetation at regular intervals is crucial to reduce the risk of tree-related power outages and other damage to the electric distribution system.

22.     The Contract provided specific metrics for Asplundh's cycle trimming obligation, in terms of mileage. As set out in the Contract, the entire distribution system totaled 4,119 miles. As such, to completely perform its obligation to trim the entire system on a 3-year cycle, Asplundh had to trim 1,400 miles each year, or approximately one-third of MLGW's electric distribution system annually. Over the five-year term of the Contract, Asplundh was required to trim a total of 7,000 miles. (*See* Ex. A, Contract, Specifications, para. 2, at SPEC-2; *see also* Bid, at BB-3.1 to BB-3.11.)

23.     The Contract provided MLGW with the right to control and assign the sequence of the cycle trimming work to be performed by Asplundh. (*See* Ex. A, Contract, art. III, at C-4, art. IX, at C-7; Gen. Conditions, para. 26, at GC-10; Specifications, para. 8, at SPEC-7.)

24.     Asplundh was obligated to complete the Work in accordance with the design as decided and determined by MLGW. (*See* Ex. A, Contract, art. IX, at C-7)

25.    Asplundh was also obligated to perform the work under the Contract in a timely manner, time being of the essence:

> The Work under this Contract will be performed in its entirety during the allocated time for the Work.

(Ex. A, Contract, art. III, at C-4.)

> The Contractor agrees to complete each portion of the Work by the date specified in Contract Documents or by MLGW, with time being of the essence. The Work shall begin in a timely manner and be continued through completion during normal working hours unless otherwise specified by the MLGW representative.

(Ex. A, Contract, art. XXIV, at C-19 to C-20; *see also* Gen. Conditions, para. 15, at GC-7.)

26.    Asplundh was solely responsible for providing and training the personnel to complete the work under the Contract in a timely manner:

> The Contractor will furnish the personnel that shall be required to complete the Work in a timely manner and within the Contract amount. The Contractor, at the Contractor's sole cost and expense, will train employees prior to the start of the Work.

(Ex. A, Contract, art. XII, at C-7, art. XXVI, at C-20.)

> The Contractor shall maintain and operate a workforce sufficient to meet the requirements of this provision.

(Ex. A, Contract, art. XXIV, at C-19 to C-20; *see also* Gen. Conditions, para. 15, at GC-7.)

27.    Payment for the cycle trimming portion of the Work was based on units, which were miles. The pricing for each mile was based on and set by Asplundh's bid, and the price-per-mile varied depending on the year, the geographical area, the type of electrical lines, and the location of the lines (front lots or roadways versus rear or back lots). (*See* Ex. A, Contract, Specifications, para. 2, at SPEC-2; *see also* Bid, at BB-3.1 to BB-3.11.)

6

28. The Contract's total value was $97,419,024.24, which was the amount of Asplundh's bid. Of that total amount, $74,521,917.45 was for the cycle trimming work. These amounts are further broken out by year as follows:

|  | Total Contract Amount | Portion of Contract Amount for Cycle Trimming |
|---|---|---|
| Year 1 | $18,547,505.26 | $14,177,560.86 |
| Year 2 | $19,005,934.87 | $14,531,999.89 |
| Year 3 | $19,475,720.06 | $14,895,299.88 |
| Year 4 | $19,957,142.62 | $15,267,682.38 |
| Year 5 | $20,432,721.43 | $15,649,374.44 |
| **TOTAL** | **$97,419,024.24** | **$74,521,917.45** |

(*See* Ex. A, Bid, at BB-3.1 to BB-3.11.)

29. At all times during the bidding process and when the Contract was in effect, Asplundh was well-informed of all material information relevant to the scope and performance of Work because the material information was included in the bid request documents provided to Asplundh prior to entering into the Contract. The material information included, but was not limited to, the 3-year cycle trimming requirements, Asplundh's obligation to provide the necessary work force, and Asplundh's obligation to complete the Work as assigned, scheduled, and directed by MLGW.

**The Performance Bond at Issue**

30. Pursuant to the terms of the Contract, Asplundh was required to provide a performance bond in the amount of $19,483,804.85, the average one-year contract amount. (*See* Ex. A, Contract, at C-32 to C-35.) To comply with this requirement, Asplundh secured a performance bond in the amount of $19,483,804.85, bond number 107114240 (hereinafter the "Performance Bond"), under which Asplundh was the Principal, Travelers was the Surety and

MLGW was the Obligee. A copy of the Performance Bond is attached hereto as **Exhibit B** and is incorporated herein by reference.

31.    The Performance Bond sets forth the circumstances under which Travelers' obligations under the Performance Bond would arise. In this regard, the Performance Bond provides as follows:

> Provided there is no default by the Obligee, the Surety's obligation under this Performance Bond shall arise after:
>
> A.    The Obligee has notified the Principal and the Surety in writing (at the address described on the signature page) that the Obligee is considering declaring the Principal in default of the Contract and has requested and attempted to arrange a conference with the Principal and the Surety to be held not later than 15 days after receipt of such notice to discuss methods of performing the Contract. If the Obligee, the Principal, and the Surety agree, the Principal shall be allowed a reasonable time to perform the Contract, but such agreement shall not waive the Obligee's right subsequently to declare the Principal in default; and
>
> B.    The Obligee has declared the Principal in default of the Contract and formally terminated the Principal's right to complete the Contract. Such Default shall not be declared earlier than 20 days after the Principal and the Surety have received the notice as provided in A; and
>
> C.    The Obligee has agreed to pay the balance of the contract price to the Surety under the terms of the Contract or to a contractor selected to perform the Contract under the terms of the Contract with the Obligee.

(*See* Ex. B, Performance Bond, at C-32 to C-33.)

32.    Pursuant to the Performance Bond, when MLGW, as the Obligee, has satisfied the conditions referenced in paragraph 31 above, Travelers, as the Surety, was required to promptly and at Travelers' expense take certain actions. In this regard, the Performance Bond provides as follows:

When the Obligee has satisfied the conditions aforesaid, the Surety shall promptly and at Surety's expense take one (1) of the following actions:

    A.    Arrange for the Principal, with consent of the Obligee, to perform and complete the Contract; or

    B.    Perform and complete the Contract itself, through the Surety's agents or through independent contractors; or

    C.    Obtain bids or negotiate proposals from qualified contractors acceptable to the Obligee for a contract for performance and completion of the Contract, arrange for a contract to be prepared for execution by the Obligee and the contractor selected with the Obligee's concurrence, to be secured with performance and payment bonds, executed by a qualified surety equivalent to the bonds issued on the Contract, and pay to the Obligee the damages over the balance of the Contract price incurred by the Obligee resulting from the Principal's default; or

    D.    Waive the Surety's right to perform and complete, arrange for completion, or obtain a new contractor and within reasonable promptness under the circumstances, after investigation, determine the amount for which the Surety may be liable to the Obligee and, as soon as practical and after the amount is determined, tender payment to the Obligee; or

    E.    Deny liability in whole or in part and notify the Obligee in writing, citing reasons.

(*See* Ex. B, Performance Bond, at C-33.)

33.    The Performance Bond further provides as follows:

If the Surety does not proceed with reasonable promptness, the Surety shall be deemed in default of this Performance Bond 15 days after receipt of an additional written notice from the Obligee to the Surety demanding the Surety perform the Surety's obligations under this Performance Bond, and the Obligee shall be entitled to enforce any remedy available to the Obligee. If the Surety proceeds as provided above and the Obligee refuses the payment tendered or the Surety has denied liability, in whole or in part, without further written notice the Obligee shall be entitled to enforce any remedy available to the Obligee including the Obligee's costs, expenses, and attorney fees.

After the Obligee has terminated the Principal's right to complete the Contract, and if the Surety elects to act under the aforementioned subparagraphs A through E above, then the responsibilities of the Surety to the Obligee shall not be greater than those of the Principal under the Contract, and the responsibilities of the Obligee to the Surety shall not be greater than those of the Obligee under the Contract. To the limit of this Performance Bond, but subject to the commitment by the Obligee of the balance of the Contract price to mitigation of costs and damages on the Contract, the Surety is obligated without duplication for:

> A.    The responsibilities of the Principal for correction of defective work and completion of the Contract;
>
> B.    Additional legal, design, professional and delay costs resulting from the Principal's default, and resulting from the actions or failure to act of the Surety under the preceding paragraph; and
>
> C.    Liquidated damages, or if no liquidated damages are specified in the Contract, actual damages caused by delayed performance or nonperformance of the Principal.

(*See* Ex. B, Performance Bond, at C-33 to C-34.)

## Asplundh's Failure to Perform its Obligations

34.    Asplundh began performing the Work in October 2019.

35.    MLGW's electric distribution system is mapped on a grid system that is divided into 139 sections. Each section is then further divided into 28 blocks.

36.    For the cycle trimming portion, MLGW assigned the Work to Asplundh based on MLGW's grid system.

37.    MLGW assigned the cycle trimming Work by section, and Asplundh had discretion on the order it worked the blocks in each assigned section.

38.    MLGW was not obligated to pay Asplundh for cycle trimming mileage on a section block until Asplundh completed the entirety of the block.

39.     The purpose of MLGW's assignment of sections and its policy requiring an entire block to be completed before payment for the mileage on that block was to maintain the integrity of the electric distribution system through consistently well-maintained vegetation. If the trimming of an entire block is not completed in a timely manner, it negatively impacts the reliability of the electric distribution system and causes MLGW's customers to experience more service outages.

40.     Asplundh did not perform the cycle trimming in a timely manner and did not make sufficient progress on the assigned sections that would have resulted in it performing the entirety of the cycle trimming required under the Contract.

41.     Asplundh also failed to hire, train, and maintain a sufficient workforce to timely complete the cycle trimming work that was assigned by MLGW, despite its obligation to do so.

42.     The average number of Asplundh's crews dropped each year between 2020 and 2023, and the number of crews was never sufficient to complete the cycle trimming assignments in a timely manner.

43.     In addition to failing to hire and maintain the number of employees needed to perform the Work, Asplundh also made personnel decisions that delayed the cycle trimming.

44.     At times, Asplundh pulled its crews from the MLGW service area and moved them to jobs in other states, where upon information and belief, Asplundh knew it was able to profit more than it would profit under the bid prices it submitted for the Contract.

45.     Asplundh's management of its crews that performed cycle trimming also contributed to its failure to perform under the Contract.

46.     The trees on the front lines were primarily trimmed by "bucket crews" and the trees on the rear lines were primarily trimmed by "manual crews" that manually climbed trees for

11

trimming. It is crucial that bucket crews do not work more than a few weeks ahead of manual crews, so that there is consistent and well-maintained clearance of all electrical lines on both front and rear lines in a block to minimize tree-related power outages and electric hazards on that block.

47.    Instead of following MLGW's directives and policies to complete all portions of a block in a timely manner, Asplundh concentrated its efforts on easier and more financially lucrative trimming of front lines by bucket crews and neglected the areas that required manual crews to trim the overgrowth of vegetation.

48.    Asplundh did not assign enough personnel to crews to complete the manual work, or rear lot, tree trimming required of it per MLGW's assignments. Asplundh allowed its bucket crews on the front lines to work significantly faster than its manual crews that were to trim the rear electrical lines. As a result, the rear electrical lines were even further behind schedule for cycle trimming than front lines and section blocks were not completed in a timely manner.

49.    Asplundh's actions in failing to complete the necessary climbing work resulted in slower production and progress on the cycle trimming work.

50.    MLGW's ability to assign additional sections that were in need of cycle trimming was significantly impeded by Asplundh's failure to complete all required miles in assigned sections (both front and rear lines).

51.    In late 2022, MLGW assigned section 86 to Asplundh, but Asplundh had failed to complete that section by the summer of 2023.

52.    Asplundh failed to comply with its contractual obligations because it did not perform the cycle trimming in a timely manner to meet the required miles under the Contract and

ultimately failed to make sufficient progress to perform a 3-year cycle trim of MLGW's entire electric distribution system.

53.     Asplundh's trimming of assigned sections was completed at a deficient rate that would not achieve the required 3-year cycle trim of the entire system.

54.     During the term of the Contract, Asplundh never came close to trimming the 1,400 miles required each year to maintain a 3-year cycle. Its progress declined each year, starting with only 610 miles trimmed in 2020, 552 miles trimmed in 2021, 190 miles trimmed in 2022 and only 26 miles trimmed in 2023 prior to MLGW's termination for breach on July 13, 2023.

55.     By the end of 2022, Asplundh had only trimmed 1,367 miles total during the three full years into the Contract term, less than the annual requirement. That total mileage was woefully deficient and did not even come close to completing the entire 4,119 mile distribution system over that 3-year period.

### Termination of the Contract and Default of the Performance Bond

56.     The Contract provided MLGW with the right to terminate the Contract, without any prior written notice, for any of the reasons set out in the Contract's breach of contract provision. (*See* Ex. A, Contract, art. V, at C-5.)

57.     More specifically, the breach of contract provision provided that MLGW could terminate the Contract should Asplundh:

1.     Fail or refuse to perform the Work in whole or in part after notice by MLGW to proceed;

2.     Abandon the Work;

…

5.     Unnecessarily or unreasonably delay the Work at any time;

6.     Willfully or negligently violate any provisions of this Contract;

13

7.    Fail or refuse to fully complete the Work within the time specified or extension of time granted by MLGW;

…

11.    Fail or refuse to comply with the terms and provisions of the Contract and or Contract Documents;

12.    Fail to complete the work within the specified time allotted for completion of Work as set forth in the proposal and otherwise as set forth in the Contract Documents.

(*See* Ex. A, Contract, art. XVII, at C-13 to C-14.)

58.    Despite numerous requests, Asplundh did not increase its production rate, did not hire more employees, and did not increase the number of its crews, or otherwise cure its breaches.

59.    On November 29, 2022, as a result of Asplundh's continued failure to perform its obligations under the Contract, pursuant to Rule XVII of the Contract and paragraph A of the Performance Bond, MLGW notified Asplundh and Travelers that MLGW was considering declaring Asplundh in default of the Contract and  was requesting a conference with Asplundh and Travelers to be held no later than December 14, 2022 to discuss methods of performing the Contract. A copy of the November 29, 2022 correspondence from MLGW's counsel to Asplundh and Travelers is attached hereto as **Exhibit C**.

60.    After the aforementioned November 29, 2022 letter was sent to Asplundh and Travelers, Asplundh and MLGW engaged in discussions in an effort to reach a resolution concerning Asplundh's failure to perform its obligations under the Contract. As a result, the requested conference between MLGW, Asplundh and Travelers referenced in the November 29, 2022 letter was postponed while MLGW and Asplundh continued to discuss a potential resolution. However, no resolution was reached and Asplundh continued to fail to meet its performance obligations under the Contract.

61.    In 2022 and 2023, MLGW experienced a number of significant power outages in the Shelby County service area from storms which caused damage to MLGW's power transmission system from falling trees and tree limbs. The extent of the weather related damage to MLGW's electric transmission system and the resulting power outages was significantly exacerbated as a result of Asplundh's failure to meet its vegetative maintenance obligations under the Contract. These damages were certainly foreseeable to Asplundh because one of the primary reasons for Asplundh's vegetation management work was to reduce damage to MLGW's electric distribution system from falling trees and tree limbs.

62.    On May 30, 2023, MLGW, by and through counsel, sent Asplundh a Notice of Breach letter as required by Article VIII of the Contract. A copy of the May 30, 2023 Notice of Breach letter to Asplundh is attached hereto as **Exhibit D**. In the May 30, 2023 letter, MLGW requested a conference with Asplundh to be held no later than fifteen (15) days after receipt of the notice letter to discuss methods of Asplundh performing the Contract.

63.    On June 1, 2023, MLGW, by and through counsel, sent a letter to Travelers with a copy of the May 30, 2023 Notice of Breach letter that had been sent to Asplundh. In compliance with Section A of the Performance Bond, MLGW requested that Travelers participate in a conference with MLGW and Asplundh to discuss methods of performing the Contract. A copy of the June 1, 2023 letter from MLGW to Travelers' representative, Laura Murphy, is attached hereto as **Exhibit E**.

64.    MLGW, Travelers and Asplundh conducted the meeting requested by MLGW on June 15, 2023. By agreement, the meeting took place via videoconference. The June 15, 2023

15

meeting was unproductive and no resolution was reached concerning Asplundh's failure to perform its obligations under the Contract.

65. During the June 15, 2023 conference, all attendees on behalf of Asplundh, MLGW and Travelers agreed that the conference was being held in compliance with Section A of the Performance Bond. During the conference, Travelers requested MLGW to provide additional information about Asplundh's failure to perform under the Contract. Travelers also requested information regarding the bids that MLGW had requested in early 2023 as referenced in paragraph 67 below. MLGW's counsel responded to this request for information in a letter dated June 20, 2023. A copy of the subject letter is attached hereto as **Exhibit F**.

66. As a governmental entity, MLGW is required to engage in a competitive bidding process prior to entering into contracts such as contracts for line clearance.

67. Asplundh's Contract with MLGW was not an exclusive contract. In an effort to mitigate its damages and comply with its own obligations to provide reliable electric service to its customers, MLGW issued a notice to bidders for line clearance work in early 2023 requesting companies to submit bids for line clearance work so that MLGW would have a back up plan in place if Asplundh continued to breach its obligations under the Contract. While bids were requested and Asplundh itself submitted its own bid, no new contract for the line clearance work had been entered into by MLGW prior to the termination of Asplundh's Contract on July 14, 2023 as addressed in further detail below.

68. In its June 20, 2023 letter, Travelers was advised that while MLGW had requested bids in an effort to mitigate its damages, at the time of the letter, MLGW and its governing bodies had yet to approve and enter into any additional tree trimming contracts. However, Travelers was

advised that time was of the essence and that it was imperative for MLGW to move forward with securing reliable tree trimming services in the immediate future to mitigate damages and reduce the likelihood and severity of further power outages.

69.     On or about June 20, 2023, another round of storms in the Shelby County area caused additional widespread power outages. As was the case with prior storm related power outages, Asplundh's failure to perform under the Contract caused and/or contributed to the severity of the damages to MLGW's electric transmission system and the resulting power outages.

70.     In light of Asplundh's continued default under the Contract, MLGW formally terminated Asplundh's right to complete the Contract by letter dated July 13, 2023. A copy of the letter to Asplundh's counsel formally terminating the Contract is attached hereto as **Exhibit G**.

71.     At the time the Contract was terminated, Asplundh had only trimmed 1,393 miles total for the cycle trimming.

72.     Asplundh failed to trim 5,607 miles of the total miles required under the Contract.

73.     As a result of Asplundh's failure to perform its cycle trimming obligations under the Contract, the vegetation on the electric distribution system became overgrown, resulting in additional and more expensive tree trimming to properly clear the overgrowth. The overgrowth also caused a decrease in electric service reliability that directly impacted MLGW's customers, as well as increased MLGW's costs and expenses to restore electric service.

74.     In the event of a termination of the Contract, Asplundh is liable for all expenses or financial losses incurred by MLGW for completing the Work under the Contract. (*See* Ex. A, Contract, art. V, at C-5.)

75.     MLGW's July 13, 2023 termination of Asplundh's right to complete the Contract satisfied the requirements of Section B of the Performance Bond.

76.     On July 14, 2023, MLGW's counsel sent a letter to Travelers regarding MLGW's termination of the Contract. A copy of the July 14, 2023 letter from MLGW's counsel to Travelers is attached hereto as **Exhibit H**. In the July 14, 2023 letter, MLGW satisfied Subsection C of the Performance Bond by advising Travelers that MLGW agreed to pay the balance of the Contract price to Travelers, as the Surety under the Performance Bond, or to a contractor selected to perform the Contract, in accordance with the terms and conditions of the Contract. Pursuant to the terms of the Contract, payments were not due until work had been performed and Travelers was notified of the foregoing in the July 14, 2023 letter.

77.     In light of MLGW's payment assurances pursuant to the terms of the Contract, the July 14, 2023 letter to Travelers confirmed that MLGW had satisfied all of MLGW's obligations under Subsections A, B and C of the Performance Bond. Therefore, MLGW requested Travelers to promptly take one of its required actions under the Performance Bond. In the letter, MLGW's counsel noted that since time was of the essence, Travelers was requested to notify MLGW's counsel by 5:00 p.m. on July 20, 2023 as to which option Travelers would be exercising under Subsections A. – E. of the Performance Bond.

78.     In a letter dated July 18, 2023, Travelers claimed that it did not have sufficient information to establish Travelers' liability under the Performance Bond. In the July 18, 2023 letter, a copy of which is attached hereto as **Exhibit I**, Travelers requested MLGW to provide additional documentation concerning the subject dispute. In separate emails dated July 18, 2023 and July 28, 2023, Travelers' representative, Laura Murphy, advised that she was going to be out

of the office until the week of August 8, 2024. Copies of the subject emails are attached hereto as **Exhibit J**.

79.    On August 18, 2023, Counsel for MLGW sent a letter to Ms. Murphy providing the materials that Ms. Murphy had requested in her July 18, 2023 correspondence. In the August 18, 2023 letter, a copy of which is attached hereto as **Exhibit K**, MLGW disputed any contention on Travelers' behalf that Travelers had not previously been provided with sufficient information to establish Travelers' liability under the Performance Bond. In the August 18, 2023 letter, MLGW's counsel requested Travelers to immediately advise which option Travelers would be exercising under its available options pursuant to Sections A. – E. of the Performance Bond.

80.    Travelers failed to perform its obligations as the Surety under the Performance Bond within fifteen (15) days of Travelers' receipt of the August 18, 2023 letter from MLGW's counsel. As a result, Travelers was in default pursuant to the express terms of the Performance Bond. *See* Ex. B, Performance Bond, C-33.

81.    MLGW's Contract with Asplundh granted MLGW the right to hire other contractors to complete the Work required by the Contract. (*See* Ex. A, Contract, art. V, at C-5.)

82    Time being of the essence, in August 2023, through the competitive bidding process that was begun earlier, MLGW entered into 5-year contracts with three (3) new contractors to complete the Work that Asplundh was obligated to perform under the Contract.

83.    MLGW's timely mitigation efforts were necessary to minimize the gap in cycle trimming in an effort to reduce the severity and number of power outages MLGW's customers were experiencing due to Asplundh's failure to perform under the Contract.

84.      The three new contracts each cover cycle trimming for separate specific areas of the electric distribution system, and together those areas represent the same total area and total mileage that was covered by the Asplundh Contract.

85.      MLGW assigns the cycle trimming to the new contractors on a grid basis, by sections and blocks, just as it assigned the cycle trimming to Asplundh. Currently, the new contractors have made sufficient progress on the assigned cycle trimming to complete the required 1/3 of the mileage of the total system in the first year. This is the same one-year mileage requirement Asplundh had under the Contract, but failed to come even close to completing.

86.      On August 24, 2023, MLGW's counsel sent Travelers' representative, Laura Murphy, a letter advising that MLGW and Asplundh had agreed to attend mediation with the Honorable Chancellor Ellen Hobbs Lyle prior to the initiation of legal proceedings. Travelers was asked to participate in the mediation. A copy of the August 24, 2023 letter from MLGW's counsel to Ms. Murphy is attached hereto as **Exhibit L**.

87.      On August 25, 2023, Ms. Murphy responded to the August 24, 2023 correspondence from MLGW's counsel. A copy of Ms. Murphy's August 25, 2023 e-mail to MLGW's counsel is attached hereto as **Exhibit M**. In her August 25, 2023 e-mail, Ms. Murphy noted that MLGW had continued to press Travelers to take action under the Performance Bond in light of the termination of Asplundh. Ms. Murphy noted that she had requested Peter Macaluso to provide a written response to Travelers to address the issues raised in correspondence concerning the dispute.

88.      By October 10, 2023, MLGW's counsel had not received a copy of Mr. Macaluso's written response to Travelers concerning the issues in dispute. Therefore, MLGW's counsel sent

a letter to Ms. Murphy about the matter on October 10, 2023. A copy of the October 10, 2023 letter from MLGW's counsel to Laura Murphy with Travelers is attached hereto as **Exhibit N**. In the letter, MLGW's counsel requested a copy of Mr. Macaluso's written response and Travelers' decision concerning the option that it would be exercising under Sections A. – E. of the Performance Bond.

89.     On October 19, 2023, Travelers' representative, Laura Murphy, sent a letter to MLGW's counsel advising that it was denying liability under the Performance Bond based on Travelers' determination that a bona fide dispute existed between MLGW and Asplundh as to whether Asplundh had breached the Contract and whether the Contract with Asplundh had been properly terminated.[1] A copy of the October 19, 2023 letter from Ms. Murphy to MLGW's counsel is attached hereto as **Exhibit O**.[2] Of note, in her October 19, 2023 letter, Ms. Murphy erroneously claimed that MLGW had not satisfied its obligations under Subsection C of the Performance Bond which required MLGW to agree to pay the balance of the Contract price to the Surety under the terms of the Contract or to a contractor selected to perform the Contract under the terms of the Contract with the Obligee. In asserting this erroneous position, Ms. Murphy overlooked the fact that MLGW had expressly complied with its obligations under Subsection C of the Performance Bond in the letter that MLGW sent to Ms. Murphy on July 14, 2023. Among other things the July 14, 2023 letter from MLGW's counsel expressly provided as follows:

> Pursuant to Subsection C. of the Performance Bond, please accept this letter as MLG&W's agreement to pay the balance of the Contract price to Travelers (as the surety under the Performance Bond), or to a contractor selected to perform the

---

[1] As noted, Travelers was already in default under the Performance Bond prior to Travelers' belated denial of liability on October 19, 2023.

[2] Due to the voluminous nature of the enclosures referenced in the October 19, 2023 letter, they are not included with Exhibit O.

Contract, in accordance with the terms and conditions of the Contract. Pursuant to the terms of the Contract, payments are not due until work has been performed.

(*See* p. 2 of the July 14, 2023 letter attached hereto as **Exhibit H**.)

90.     Notwithstanding Travelers' prior default under the Performance Bond, the Performance Bond also expressly provides that if "the Surety has denied liability, in whole or in part, without further written notice the Oblige shall be entitled to enforce any remedy available to the Obligee including the Obligee's costs, expenses and attorney fees. (*See* Exhibit B, Performance Bond, at C-33 to C-34.)

91.     The Performance Bond expressly references Travelers' obligations to MLGW under the terms of the Performance Bond. In this regard, the Performance Bond provides as follows:

> After the Obligee has terminated the Principal's right to complete the Contract, and if the Surety elects to act under the aforementioned subparagraphs A through E above, then the responsibilities of the Surety to the Obligee shall not be greater than those of the Principal under the Contract, and the responsibilities of the Obligee to the Surety shall not be greater than those of the Obligee under the Contract. To the limit of this Performance Bond, but subject to the commitment by the Obligee of the balance of the Contract price to mitigation of costs and damages on the Contract, the Surety is obligated without duplication for:
>
> > A.     The responsibilities of the Principal for correction of defective work and completion of the Contract;
> >
> > B.     Additional legal, design, professional and delay costs resulting from the Principal's default, and resulting from the actions or failure to act of the Surety under the preceding paragraph; and
> >
> > C.     Liquidated damages, or if no liquidated damages are specified in the Contract, actual damages caused by delayed performance or nonperformance of the Principal.

(*See* Ex. B, Performance Bond, at C-33 to C-34.)

92.     MLGW avers that it fully complied with its obligations under Subsection A. – E. of the Performance Bond, thereby triggering Travelers' obligations under the Performance Bond. Travelers failed to perform its obligations under the Performance Bond in a timely manner thus rendering Travelers in default under the terms of the Performance Bond. Pleading in the alternative, MLGW also avers that Travelers' denial of liability under the Performance Bond was erroneous and that Travelers is liable to MLGW for all forms of damages arising from and/or related to Asplundh's failure to perform its obligations under the Contract, subject only to the limit of Travelers' liability under the Performance Bond, namely the sum of $19,483,804.85.

**Damages Caused by Asplundh**

93.     MLGW has been damaged by Asplundh's breaches of the Contract in that MLGW is incurring and will continue to incur higher costs under the new contracts to complete the cycle trimming that Asplundh did not perform.

94.     Whereas Asplundh's Contract had a total 5-year value of just over $97 million for all the tree trimming work (both cycle and non-cycle trimming), the three new contracts' 5-year total is over $227 million for both cycle and non-cycle trimming.

95.     The unit or mileage bid pricing for just the cycle trimming portion under the new contracts greatly exceeds the per mile pricing under Asplundh's Contract, resulting in cycle trimming costs that are at least double what MLGW would have paid per mile pursuant to the Asplundh Contract.

96.     For example, the first year of the new contracts is basically the same time period as the last year of the Asplundh Contract, had it not been terminated. For that time period of fall 2023

to fall 2024, the three new contracts' cycle trimming bids total to $31,990,445. Asplundh's bid amount for that same time period was $15,649,374.

97.    That increase in cycle trimming costs for the first year of the new contracts represents an average *additional* per mile cost to MLGW of $11,672.

98.    Asplundh's failure to provide the necessary work force and to perform the cycle trimming in a timely manner was a cause of higher cycle-trimming costs under the new contracts because of the necessary additional work to properly clear the electrical lines of the vegetation overgrowth and dispose of additional debris until the required cycle is reestablished.

99.    Asplundh's breaches also caused MLGW's electric distribution system to be neglected and become overgrown with vegetation because of the delay in cycle trimming, resulting in the system suffering decreased reliability and MLGW's customers to experience increased rates of tree-related outages. MLGW's reputation and goodwill in the community and among its customers has also been negatively impacted due to Asplundh's breaches and other wrongful acts.

100.    As a result, MLGW has incurred and will continue to incur increased expenses and costs for remedial trimming necessitated by the overgrowth of vegetation on the electric distribution system.

101.    MLGW conducts line inspections and issues work orders for remedial trimming in areas that are more at risk for tree-related outages. Remedial trimming is a supplement to cycle trimming and is performed on an as-needed basis.

102.    The need for such remedial trimming has increased as a result of Asplundh's failure to stay on schedule and perform the cycle trimming in a timely manner. The additional remedial

trimming that is attributable to Asplundh's breaches is expected to continue for several years until the overgrowth of vegetation has been addressed and the cycle trimming has been reestablished.

103.    Further, Asplundh's breaches and actions described herein have caused MLGW to incur and likely continue to incur increased expenses and costs for restoring power after storms and weather events as a result of the vegetation overgrowth, including but not limited to emergency tree trimming costs and emergency clearance costs.

104.    Asplundh's failure to timely perform cycle trimming has resulted in more frequent service interruptions than would occur if trees were well-maintained on a 3-year cycle. The increased emergency restoration expenses attributable to Asplundh's breaches are expected to continue until the vegetation overgrowth has been addressed through timely cycle trimming.

105.    MLGW does not owe any payments to Asplundh because any unpaid invoices submitted by Asplundh were for cycle trimming of uncompleted blocks, thus, those amounts are not due pursuant to the terms of the Contract.

106.    Because the expenses and financial losses incurred by MLGW exceed what would have been payable to Asplundh had it completed its obligations, Asplundh is obligated to pay the excess to MLGW and such payment must be made "promptly." (*See* Ex. A, Contract, art. V, at C-5, art. XVII, at C-14.)

107.    To date, no payment has been made to MLGW. Accordingly, MLGW is entitled to recover the costs of collecting payment, including attorney fees, plus interest at the maximum rate allowed by law. (*See* Ex. A, Contract, art. XVII, at C-14.)

## IV. CAUSES OF ACTION

## COUNT I – DECLARATORY RELIEF

108.    MLGW incorporates herein by reference paragraphs 1 – 107 of this Complaint as if fully set forth herein.

109.    MLGW avers that an actual controversy exists concerning the following matters:

A.   Whether MLGW complied with its obligations under Subsections A. – C. of the Performance Bond.

B.    Whether Travelers is in default under the Performance Bond for failing to perform its obligations under the Performance Bond within fifteen (15) days of receiving the July 18, 2023 written correspondence from MLGW's counsel requesting Travelers to advise which option it would be exercising among its obligations under the Performance Bond.

C.   Whether Travelers erroneously denied liability under the Performance Bond.

D.   A declaration as to the liability and damages that Travelers has and/or owes to MLGW under the Performance Bond.

110.    Pursuant to 28 U.S.C. §2201, MLGW requests the entry of a declaratory judgment on the following matters:

A.   A declaration that MLGW fully satisfied all of its obligations under Subsections A. – C. of the Performance Bond.

B.   A declaration that Travelers is in default under the Performance Bond for failing to perform its obligations within fifteen (15) days of receiving the July 18, 2023 additional written notice letter from MLGW's counsel and that Travelers is financially responsible to MLGW for all liabilities, debts, expenses, costs, attorneys' fees and other obligations for which Travelers is

responsible under the terms of the Performance Bond and that MLGW be awarded a monetary judgment against Travelers for same.

C.  A declaration that Travelers' denial of liability under the Performance Bond was erroneous and that Travelers is financially responsible to MLGW for all liabilities, debts, expenses, costs, attorneys' fees and other obligations for which Travelers is responsible under the terms of the Performance Bond and that MLGW be awarded a monetary judgment against Travelers for same.

## COUNT II – BREACH OF PERFORMANCE BOND

111.    MLGW incorporates herein by reference paragraphs 1 – 110 of this Complaint as if fully set forth herein.

112.    For the reasons stated above, MLGW avers that Travelers is in default and has breached its obligations under the Performance Bond by (i) failing to perform its obligations under the Performance Bond within fifteen (15) days of receiving the July 18, 2023 additional written notice letter from MLGW's counsel and/or (ii) by erroneously denying liability under the Performance Bond.

113.    As a direct and proximate result of Travelers' default and breach of its duties under the Performance Bond, MLGW has sustained significant damages, including, but not limited to those damages referenced below, arising out of Asplundh's breach of contract for which Travelers assumed liability pursuant to the terms of the Performance Bond. Under the terms of the Performance Bond, Travelers is required to fully indemnify and save MLGW harmless from all costs and damages sustained by MLGW as a result of any failure by Asplundh to perform its obligations under the Contract. The liabilities and damages for which Travelers is obligated under

the terms of the Performance Bond include, but are not limited to, the increased costs that MLGW has incurred and will incur in the future as a result of having to retain the services of other contractors to provide the services that Asplundh was supposed to perform pursuant to the Contract, the increased costs of remedial trimming work caused by Asplundh's failure to perform, the increased cost of emergency restoration work for damage to MLGW's electrical transmission system resulting from Asplundh's failure to perform its obligations under the Contract and other incidental and consequential damages. Furthermore, MLGW seeks the recovery of all costs of collection including attorneys' fees and costs as a resulting of Asplundh's breaches of the Contract and Travelers' breach of the Performance Bond and all other damages and forms of relief legally recoverable from Travelers in connection with its obligations and responsibilities under the Performance Bond.

WHEREFORE, PREMISES CONSIDERED, MLGW prays that:

1.      Proper process issue and be served upon Travelers, requiring Travelers to answer this Complaint as required by law or that a judgment by default be rendered against Travelers;

2.      This case be tried before a jury;

3.      MLGW be awarded the declaratory judgments requested above;

4.      MLGW be awarded a judgment against Travelers for compensatory damages in an amount to be proven at trial, up to the amount of Travelers' total obligation under the Performance Bond in the amount of $19,483,804.85;

5.      MLGW be awarded pre-judgment and post judgment interest;

6.      MLGW be awarded its reasonable attorneys' fees, costs and expenses;

7.      All court costs in this cause be assessed against Travelers; and

8.      MLGW be awarded such other relief to which it may be entitled in the premises,

both general and specific.


Respectfully submitted,

BLACK MCLAREN JONES RYLAND & GRIFFEE, P.C.


By:      */s/ John C. Ryland*_____
          John C. Ryland    #16878
          William E. Cochran, Jr. #21428
          530 Oak Court Drive, Suite 360
          Memphis, Tennessee 38117
          jryland@blackmclaw.com
          wcochran@blackclaw.com
          (901) 762-0535

          Attorneys for Plaintiff

# CONTRACT DOCUMENTS

## FOR

### LINE CLEARANCE

## CONTRACT NO. 12077

## MEMPHIS LIGHT, GAS AND WATER DIVISION

### CITY OF MEMPHIS, TENNESSEE

## MEMPHIS LIGHT, GAS AND WATER DIVISION

## BOARD OF LIGHT, GAS AND WATER COMMISSIONERS

| | |
|---|---|
| **STEVEN WISHNIA** | **CHAIR** |
| **CARLEE MCCULLOUGH** | **VICE CHAIR** |
| **MITCH GRAVES** | **COMMISSIONER** |
| **LEON DICKSON, SR.** | **COMMISSIONER** |
| **MICHAEL POHLMAN** | **COMMISSIONER** |
| | |
| **JARL "J.T." YOUNG** | **PRESIDENT AND CHIEF EXECUTIVE OFFICER** |
| | |
| **DANA JEANES** | **SENIOR VICE-PRESIDENT, CHIEF FINANCIAL OFFICER AND SECRETARY- TREASURER** |

EXHIBIT A

MLGW 000001

# CONTRACT DOCUMENTS

## FOR

## LINE CLEARANCE

### CONTRACT NO. 12077

### MEMPHIS LIGHT, GAS AND WATER DIVISION

### CITY OF MEMPHIS, TENNESSEE

### MEMPHIS LIGHT, GAS AND WATER DIVISION

### BOARD OF LIGHT, GAS AND WATER COMMISSIONERS

| | |
|---|---|
| STEVEN WISHNIA | CHAIR |
| CARLEE MCCULLOUGH | VICE CHAIR |
| MITCH GRAVES | COMMISSIONER |
| LEON DICKSON, SR. | COMMISSIONER |
| MICHAEL POHLMAN | COMMISSIONER |
| | |
| JARL "J.T." YOUNG | PRESIDENT AND CHIEF EXECUTIVE OFFICER |
| | |
| DANA JEANES | SENIOR VICE-PRESIDENT, CHIEF FINANCIAL OFFICER AND SECRETARY- TREASURER |

EXHIBIT A

MLGW 000002

# Summary Page

# For

# Contract No. 12077 Line Clearance

| | |
|---|---|
| Contractor's License Requirement(s) | BC-28;HC-5 |
| Contractor's License Listed in Contract Document | S OR APPLICABLE |
| Monetary Limit of the Contractor's License | UNLIMITED |
| Value of the Contract | $ 97,419,024.24 |
| Performance Bond Amount | $ 19,483,804.85 |
| Contractor's Labor and Materials Bond | $ 24,354,756.06 |
| Term of Contract | 60 MONTHS |

**NOTE: Asplundh Tree Expert, LLC will provide an annual Performance Bond equal to 20% of the 60-month contract price.**

EXHIBIT A                          MLGW 000003



# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
6/25/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: | | | |
|---|---|---|---|---|---|
| Aon Risk Services Central, Inc.<br>Philadelphia PA Office<br>One Liberty Place, Suite 1000<br>Philadelphia, PA 19103 | Aon Risk Services Central, Inc.<br>4 Overlook Point<br>Lincolnshire, IL 60069 | PHONE (A/C, No, Ext): 215-255-2000 | | FAX (A/C, No): | |
| | | E-MAIL ADDRESS: | | | |
| | | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| | | INSURER A: Greenwich Insurance Company | | | 22322 |
| INSURED<br>Asplundh Tree Expert LLC<br>708 Blair Mill Road<br>Willow Grove, PA 19090 | | INSURER B: XL Insurance America, Inc. | | | 24554 |
| | | INSURER C: XL Catlin Lloyd's Syndicate XLC 2003 | | | |
| | | INSURER D: | | | |
| | | INSURER E: | | | |
| | | INSURER F: | | | |

## COVERAGES    CERTIFICATE NUMBER: 2145033455    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|---|
| A | X | COMMERCIAL GENERAL LIABILITY | | | RGD300138201 | 8/1/2018 | 8/1/2019 | EACH OCCURRENCE | $ 1,000,000 |
| | | CLAIMS-MADE [X] OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 500,000 |
| | | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | POLICY [X] PRO-JECT [ ] LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | OTHER: | | | | | | | $ |
| A | | AUTOMOBILE LIABILITY | | | RAD943783701 (AOS)<br>RAD943786601 (VI) | 8/1/2018 | 8/1/2019 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | X | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | | OWNED AUTOS ONLY / SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | | HIRED AUTOS ONLY / NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | X | $10,000 Med Pay | | | | | | | $ |
| C | X | UMBRELLA LIAB [X] OCCUR | | | CSUSA1801704 | 8/1/2018 | 8/1/2019 | EACH OCCURRENCE | $ 2,000,000 |
| | | EXCESS LIAB [ ] CLAIMS-MADE | | | | | | AGGREGATE | $ 2,000,000 |
| | | DED [ ] RETENTION $ | | | | | | | $ |
| B | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N | | | RWD300135801 (AOS)<br>RWR300135901 | 8/1/2018 | 8/1/2019 | [X] PER STATUTE / OTH-ER | |
| | | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Memphis Light, Gas & Water Division is listed as additional insured as required by written agreement but only according to policy terms, conditions and exclusions for liability arising from operations performed by or on behalf of the named insured.
Waiver of subrogation applies only where required by written agreement unless claim arises out of negligence of the certificate holder.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Memphis Light, Gas & Water Division<br>220 South Main Street<br>Memphis, TN 38103 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br>*Aon Risk Services Central, Inc.* |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD

EXHIBIT A

MLGW 000004

MEMPHIS LIGHT, GAS AND WATER DIVISION

CITY OF MEMPHIS

MEMPHIS, TENNESSEE

CONTRACT NAME: Line Clearance

CONTRACT NO: 12077

TO THE BOARD OF LIGHT, GAS AND WATER COMMISSIONERS
MEMPHIS, LIGHT, GAS AND WATER DIVISION
MEMPHIS, TENNESSEE

The undersigned, as bidder, declares that: (1) the bidder, as the only person, persons, company or party interested in this bid as principals, are named on the Signature Page of the Contract document; (2) the bidder has carefully examined the proposed form of contract, other contract documents and the specifications referred to collectively as the "Contract Documents"; and (3) the bidder has made such investigations as are necessary to inform the bidder in all matters affecting the performance of the contract bid upon. The bidder proposes and agrees that, if this proposal is accepted, the bidder will contract with the Memphis Light, Gas and Water Division ("MLGW") of the City of Memphis, Tennessee, in a good and skillful manner free from faults and defects, all as called for and in strict accordance with the Contract Documents and to the satisfaction of MLGW according to the bid price on the Bidding Blank page.

Bidders are to ensure all blanks are filled with: (a) specific terms or responses; (b) a straight line to indicate nothing goes in the blank; or (c) "N/A" (Not Applicable). Failure to address every blank or question with the specific terms or response, a strike through (straight line), or "N/A" (not applicable) may render the bid nonresponsive and ineligible for further consideration.

Bidding Blank Section begins on the next page.

COMPANY NAME OF BIDDER: _Asplundh Tree Expert, LLC_

*Bids are awarded based on the Lowest and Best Bid. Lowest and Best Bid is defined as the most responsive bid, solicitation or offer that meets required specifications, including if applicable, any supplier diversity goal as set in the Bid Packet or Bid Invitation, specifications, price, start date, and completion date.*

BB - 1

EXHIBIT A

MLGW 000005

CONTRACT NAME: Line Clearance

CONTRACT NO: 12077

## BIDDING BLANK

**Scope of Work:** To furnish all supervision labor, transportation, materials, equipment, tools, and supplies as required to trim and or remove all trees and brush, to trim trees using the most arborcultural techniques, and to perform other utility forestry services including chemical spraying, transmission right of way clearing and mowing, clean up and disposal of materials, and to provide clearance for the electric conductors of MLGW. In addition, this contract may include emergency storm work.

**Term:** 60 months

**Annual Renewals:** No

**Retainage:** No

**Bond Requirements:**

    **Bid Bond:** 5%

    **Performance Bond:** 100% of the annual contract cost for each year.

    **Contractor's Labor and Materials Payment Bond:** 25% of the total contract amount.

**Supplier Diversity Goal %:** 0%

**Supplier Diversity Goal:** Although a goal has not been assigned to this contract, Supplier Diversity maybe acheived by soliciting proposals/bids from certified minority, women, or locally owned small businesses to bid as a prime. Supplier Diversity maybe achieved by partnering/subcontracting with a certified minority, women, or locally owned small businesses to perform any combination of work outlined in the scope of work called for in this contract. Companies providing responses to this solicitation are encouraged to offer their best proposal/bid to include Certified Minority Business Enterprise (MBE), Women Business Enterprise (WBE), or Local Small Business (LSB) representation.

BB - 2

EXHIBIT A

MLGW 000006

## CATEGORY I    YEAR 1

### UNIT PRICING

A. **Unit Prices**

| | | Estimated<br># of FDR Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 357.5 | x | 4,475.88 | = | 1,601,471.51 |
| | REAR | 86.5 | x | 13,230.65 | = | 1,145,774.40 |
| Region 2 | FRONT | 247.2 | x | 4,179.78 | = | 1,033,242.52 |
| | REAR | 55.3 | x | 13,814.39 | = | 763,935.78 |
| Region 3 | FRONT | 180.9 | x | 5,301.43 | = | 959,028.14 |
| | REAR | 63.8 | x | 13,892.56 | = | 886,345.50 |
| Region 4 | FRONT | 227.9 | x | 4,518.31 | = | 1,029,723.02 |
| | REAR | 50.3 | x | 13,136.68 | = | 660,774.89 |
| Region 5 | FRONT | 391.6 | x | 6,948.17 | = | 2,720,904.47 |
| | REAR | 89.4 | x | 18,858.61 | = | 1,685,959.50 |

**TOTAL FEEDER COST**  =  12,487,159.73

**Unit Prices**

| | | Estimated<br># of Tap Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 199.4 | x | 5,002.04 | = | 997,406.02 |
| | REAR | 231.6 | x | 15,251.03 | = | 3,532,138.41 |
| Region 2 | FRONT | 87.9 | x | 4,672.87 | = | 410,745.59 |
| | REAR | 205.5 | x | 15,187.44 | = | 3,121,018.02 |
| Region 3 | FRONT | 133.7 | x | 6,089.50 | = | 814,165.65 |
| | REAR | 173.1 | x | 16,031.32 | = | 2,775,022.35 |
| Region 4 | FRONT | 230.0 | x | 5,366.31 | = | 1,234,251.36 |
| | REAR | 193.1 | x | 16,641.23 | = | 3,213,421.31 |
| Region 5 | FRONT | 451.4 | x | 7,720.13 | = | 3,484,866.41 |
| | REAR | 462.3 | x | 22,631.38 | = | 10,462,487.74 |

**TOTAL TAP COST**  =  30,045,522.87

BB-3.1

EXHIBIT A                                         MLGW 000007

| Total FDR Mile Cost: | 12,487,159.73 | Divided By 3 (Yearly Cycle) = | 4,162,386.58 |
| Total Tap Mile Cost: | 30,045,522.87 | Divided By 3 (Yearly Cycle) = | 10,015,174.29 |

TOTAL UNIT COST PER YEAR    14,177,560.86

**B. Hourly Crew Costs**

Manual:
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 8 crews =    2,538,894.66

Bucket:
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 2 crews =    + 554,452.95

TOTAL HOURLY CREW COST    3,093,347.61

**C. Transmission Crew Costs**

Manual:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =    317,361.83

Bucket:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =    214,179.37

Jaraffe crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =    432,058.29

Mowing crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =    312,997.29

TOTAL TRANSMISSION CREW COSTS =    1,276,596.78

**TOTAL BID YEAR 1 (UNIT COST PER YEAR +HOURLY CREW COSTS PER YEAR + TRANSMISSION CREW COSTS PER YEAR)**
Eighteen Million, Five Hundred & Forty Seven Thousand, Five Hundred & Five

Dollars and Twenty Six Cents    **Dollars and Cents**
($  18,547,505.26                ).

BB-3.2

EXHIBIT A

MLGW 000008

## CATEGORY I YEAR 2

### UNIT PRICING

A. **Unit Prices**

| | | Estimated # of FDR Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 357.8 | x | 4,587.78 | = | 1,641,508.30 |
| | REAR | 86.6 | x | 13,561.42 | = | 1,174,418.76 |
| Region 2 | FRONT | 247.2 | x | 4,284.28 | = | 1,059,073.58 |
| | REAR | 55.3 | x | 14,159.75 | = | 783,034.17 |
| Region 3 | FRONT | 180.9 | x | 5,433.96 | = | 983,003.84 |
| | REAR | 63.8 | x | 14,239.88 | = | 908,504.14 |
| Region 4 | FRONT | 227.9 | x | 4,631.27 | = | 1,055,466.09 |
| | REAR | 50.3 | x | 13,465.09 | = | 677,294.26 |
| Region 5 | FRONT | 391.6 | x | 7,121.88 | = | 2,788,927.08 |
| | REAR | 89.4 | x | 19,330.07 | = | 1,728,108.49 |

**TOTAL FEEDER COST** = 12,799,338.72

| **Unit Prices** | | Estimated # of Tap Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 199.4 | x | 5,127.09 | = | 1,022,341.17 |
| | REAR | 231.6 | x | 15,632.31 | = | 3,620,441.87 |
| Region 2 | FRONT | 87.9 | x | 4,789.70 | = | 421,014.23 |
| | REAR | 205.5 | x | 15,567.12 | = | 3,199,043.47 |
| Region 3 | FRONT | 133.7 | x | 6,241.73 | = | 834,519.80 |
| | REAR | 173.1 | x | 16,432.11 | = | 2,844,397.90 |
| Region 4 | FRONT | 230.0 | x | 5,500.47 | = | 1,265,107.65 |
| | REAR | 193.1 | x | 17,057.26 | = | 3,293,756.84 |
| Region 5 | FRONT | 451.4 | x | 7,913.13 | = | 3,571,988.07 |
| | REAR | 462.3 | x | 23,197.17 | = | 10,724,049.93 |

**TOTAL TAP COST** = 30,796,660.94

BB-3.3

EXHIBIT A

MLGW 000009

Total FDR Mile Cost: 12,799,338.72   Divided By 3 (Yearly Cycle) = 4,266,446.24

                                              +

Total Tap Mile Cost: 30,796,660.94   Divided By 3 (Yearly Cycle) = 10,265,553.65

                                                                    14,531,999.89

TOTAL UNIT COST PER YEAR

**B. Hourly Crew Costs**

Manual:
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 5 crews = 2,600,434.75

                                                                                +
Bucket:
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 2 crews = 567,605.37

TOTAL HOURLY CREW COST = 3,168,040.12

**C. Transmission Crew Costs**

Manual:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew = 325,054.34

Bucket:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew = 219,179.40

Jarraffe crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew = 441,722.07

Mowing crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew = 319,939.06

                                                                        1,305,894.87

TOTAL TRANSMISSION CREW COSTS =

# TOTAL BID YEAR 2 (UNIT COST PER YEAR + HOURLY CREW COSTS PER YEAR + TRANSMISSION CREW COSTS PER YEAR)

Nineteen Million, Five Thousand, Nine Hundred & Thirty Four Dollars

and Eighty Seven Cents                          **Dollars and Cents**

($ 19,005,934.87                    ).

BB-3.4

EXHIBIT A

MLGW 000010

## CATEGORY I YEAR 3

### UNIT PRICING

A. **Unit Prices**

| | | Estimated # of FDR Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 357.8 | x | 4,702.48 | = | 1,682,546.01 |
| | REAR | 86.6 | x | 13,900.45 | = | 1,203,779.23 |
| Region 2 | FRONT | 247.2 | x | 4,391.39 | = | 1,085,550.42 |
| | REAR | 55.3 | x | 14,513.74 | = | 802,610.03 |
| Region 3 | FRONT | 180.9 | x | 5,569.81 | = | 1,007,578.94 |
| | REAR | 63.8 | x | 14,595.87 | = | 931,216.74 |
| Region 4 | FRONT | 227.9 | x | 4,747.05 | = | 1,081,852.75 |
| | REAR | 50.3 | x | 13,801.72 | = | 694,226.62 |
| Region 5 | FRONT | 391.6 | x | 7,299.92 | = | 2,858,650.26 |
| | REAR | 89.4 | x | 19,813.32 | = | 1,771,311.20 |

**TOTAL FEEDER COST** = 13,119,322.19

| **Unit Prices** | | Estimated # of Tap Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 199.4 | x | 5,255.26 | = | 1,047,899.70 |
| | REAR | 231.6 | x | 16,023.11 | = | 3,710,952.92 |
| Region 2 | FRONT | 87.9 | x | 4,909.44 | = | 431,539.59 |
| | REAR | 205.5 | x | 15,956.30 | = | 3,279,019.56 |
| Region 3 | FRONT | 133.7 | x | 6,397.78 | = | 855,382.79 |
| | REAR | 173.1 | x | 16,842.91 | = | 2,915,507.85 |
| Region 4 | FRONT | 230.0 | x | 5,637.98 | = | 1,296,735.34 |
| | REAR | 193.1 | x | 17,483.69 | = | 3,376,100.76 |
| Region 5 | FRONT | 451.4 | x | 8,110.96 | = | 3,661,297.77 |
| | REAR | 462.3 | x | 23,777.10 | = | 10,992,151.18 |

**TOTAL TAP COST** = 31,566,577.46

BB-3.5

EXHIBIT A

MLGW 000011

| | | |
|---|---|---|
| Total FDR Mile Cost: 13,119,322.19 | Divided By 3 (Yearly Cycle) = | 4,373,107.40 |
| | + | |
| Total Tap Mile Cost: 31,566,577.46 | Divided By 3 (Yearly Cycle) = | 10,522,192.49 |
| | **TOTAL UNIT COST PER YEAR** | 14,895,299.88 |

**B. Hourly Crew Costs**

**Manual:**
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 8 crews =    2,663,474.69

**Bucket:**
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 2 crews =  + 581,072.42

**TOTAL HOURLY CREW COST** =    3,244,547.12

**C. Transmission Crew Costs**

**Manual:**
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =    332,934.34

**Bucket:**
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =    224,297.34

**Jarraff crew:**
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =    451,604.68

**Mowing crew:**
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =    327,036.71

**TOTAL TRANSMISSION CREW COSTS** =    1,335,873.07

## TOTAL BID YEAR 3 (UNIT COST PER YEAR + HOURLY CREW COSTS PER YEAR + TRANSMISSION CREW COSTS PER YEAR)

Nineteen Million, Four Hundred & Seventy Five Thousand, Seven Hundred & Twenty
Dollars and Six Cents                                    **Dollars and Cents**

($ 19,475,720.06                    ).

**BB-3.6**

EXHIBIT A

MLGW 000012

## CATEGORY I YEAR 4

### UNIT PRICING

A. **Unit Prices**

| | | Estimated # of FDR Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 357.8 | x | 4,820.04 | = | 1,724,609.66 |
| | REAR | 86.8 | x | 14,247.96 | = | 1,233,873.71 |
| Region 2 | FRONT | 247.2 | x | 4,501.17 | = | 1,112,689.18 |
| | REAR | 55.3 | x | 14,876.59 | = | 822,675.28 |
| Region 3 | FRONT | 180.9 | x | 5,709.06 | = | 1,032,768.41 |
| | REAR | 63.8 | x | 14,960.77 | = | 954,497.16 |
| Region 4 | FRONT | 227.9 | x | 4,865.73 | = | 1,108,899.06 |
| | REAR | 50.3 | x | 14,146.77 | = | 711,582.29 |
| Region 5 | FRONT | 391.6 | x | 7,482.42 | = | 2,930,116.51 |
| | REAR | 89.4 | x | 20,308.66 | = | 1,815,593.98 |

**TOTAL FEEDER COST** = 13,447,305.24

| **Unit Prices** | | Estimated # of Tap Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 199.4 | x | 5,386.65 | = | 1,074,097.20 |
| | REAR | 231.6 | x | 16,423.69 | = | 3,803,726.74 |
| Region 2 | FRONT | 87.9 | x | 5,032.17 | = | 442,328.08 |
| | REAR | 205.5 | x | 16,355.21 | = | 3,360,995.05 |
| Region 3 | FRONT | 133.7 | x | 6,557.72 | = | 876,767.36 |
| | REAR | 173.1 | x | 17,263.98 | = | 2,988,395.55 |
| Region 4 | FRONT | 230.0 | x | 5,778.93 | = | 1,329,153.72 |
| | REAR | 193.1 | x | 17,920.78 | = | 3,460,503.28 |
| Region 5 | FRONT | 451.4 | x | 8,313.73 | = | 3,752,819.96 |
| | REAR | 462.3 | x | 24,371.52 | = | 11,266,954.96 |

**TOTAL TAP COST** = 32,355,741.90

BB-3.7

EXHIBIT A

MLGW 000013

| | | | | |
|---|---|---|---|---|
| Total FDR Mile Cost: | 13,447,305.24 | Divided By 3 (Yearly Cycle) | = | 4,482,435.08 |
| | | + | | |
| Total Tap Mile Cost: | 32,355,741.90 | Divided By 3 (Yearly Cycle) | = | 10,785,247.30 |

**TOTAL UNIT COST PER YEAR**  15,267,682.38

**B. Hourly Crew Costs**

Manual:
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 8 crews =  2,728,051.22

Bucket:
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 2 crews =  + 594,861.69

**TOTAL HOURLY CREW COST** =  3,322,912.91

**C. Transmission Crew Costs**

Manual:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =  341,006.40

Bucket:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =  229,536.00

Jarrafe crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =  461,711.15

Mowing crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew =  334,293.78

**TOTAL TRANSMISSION CREW COSTS** =  1,366,547.34

## TOTAL BID YEAR 4 (UNIT COST PER YEAR +HOURLY CREW COSTS PER YEAR + TRANSMISSION CREW COSTS PER YEAR)

Nineteen Million, Nine Hundred & Fifty Seven Thousand, One Hundred & Forty Two Dollars and Sixty Two Cents    **Dollars and Cents**

($ 19,957,142.62 ).

BB-3.8

EXHIBIT A

MLGW 000014

## CATEGORY I YEAR 5

## UNIT PRICING

A. **Unit Prices**

| | | Estimated # of FDR Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 357.8 | x | 4,940.54 | = | 1,767,724.90 |
| | REAR | 86.8 | x | 14,604.16 | = | 1,264,720.55 |
| Region 2 | FRONT | 247.2 | x | 4,613.70 | = | 1,140,506.41 |
| | REAR | 55.3 | x | 15,248.50 | = | 843,242.16 |
| Region 3 | FRONT | 180.9 | x | 5,851.78 | = | 1,058,587.62 |
| | REAR | 63.8 | x | 15,334.79 | = | 978,359.59 |
| Region 4 | FRONT | 227.9 | x | 4,987.37 | = | 1,136,621.54 |
| | REAR | 50.3 | x | 14,500.43 | = | 729,371.84 |
| Region 5 | FRONT | 391.6 | x | 7,669.48 | = | 3,003,369.42 |
| | REAR | 89.4 | x | 20,816.37 | = | 1,860,983.83 |

**TOTAL FEEDER COST** = 13,783,487.87

| **Unit Prices** | | Estimated # of Tap Miles | | Cost/Mile | | Total Cost |
|---|---|---|---|---|---|---|
| Region 1 | FRONT | 199.4 | x | 5,521.31 | = | 1,100,949.63 |
| | REAR | 231.6 | x | 16,834.28 | = | 3,898,819.91 |
| Region 2 | FRONT | 87.9 | x | 5,157.98 | = | 453,386.28 |
| | REAR | 205.5 | x | 16,764.09 | = | 3,445,019.93 |
| Region 3 | FRONT | 133.7 | x | 6,721.66 | = | 898,686.54 |
| | REAR | 173.1 | x | 17,695.58 | = | 3,063,105.44 |
| Region 4 | FRONT | 230.0 | x | 5,923.40 | = | 1,362,382.57 |
| | REAR | 193.1 | x | 18,368.80 | = | 3,547,015.87 |
| Region 5 | FRONT | 451.4 | x | 8,521.58 | = | 3,846,640.46 |
| | REAR | 462.3 | x | 24,980.81 | = | 11,548,628.83 |

**TOTAL TAP COST** ≈ 33,164,635.45

BB-3.9

EXHIBIT A

MLGW 000015

| | | | |
|---|---|---|---|
| Total FDR Mile Cost: | 13,783,487.87 | Divided By 3 (Yearly Cycle) = | 4,594,495.96 |
| Total Tap Mile Cost: | 33,164,635.45 | + Divided By 3 (Yearly Cycle) = | 11,054,878.48 |
| | | **TOTAL UNIT COST PER YEAR** | 15,649,374.44 |

**B. Hourly Crew Costs**

Manual:
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 8 crews = 2,781,794.30

Bucket:
(Labor billing rate + equipment billing rate) x 2000 hours x 1 year x 2 crews = + 608,980.94

**TOTAL HOURLY CREW COST** = 3,390,775.23

**C. Transmission Crew Costs**

Manual:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew = 349,275.24

Bucket:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew = 229,536.00

Jaraffe crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew = 472,046.61

Mowing crew:
(Labor billing rate + equipment rate) X 2000 hours X 1 year X 1 crew = 341,713.90

**TOTAL TRANSMISSION CREW COSTS** = 1,392,571.76

## TOTAL BID YEAR 5 (UNIT COST PER YEAR + HOURLY CREW COSTS PER YEAR + TRANSMISSION CREW COSTS PER YEAR)

Twenty Million, Four Hundred & Thirty Two Thousand, Seven Hundred &
Twenty One Dollars and Forty Three Cents                    **Dollars and Cents**

($ 20,432,721.43                    ).

BB-3.10

EXHIBIT A

MLGW 000016

## GRAND TOTAL BID

**YEAR 1** 18,547,505.26

**YEAR 2** 19,005,934.87

**YEAR 3** 19,475,720.06

**YEAR 4** 19,957,142.62

**YEAR 5** 20,432,721.43

## 5 YEAR TOTAL  Ninety Seven Million, Four Hundred and Nineteen

Thousand, Twenty Four Dollars and Twenty Four Cents

_____ **Dollars and Cents**

($ 97,419,024.24 ).

## *PLEASE SUBMIT EMERGENCY STORM CREW RATES WITH YOUR BID

Note:  This contract may be awarded in whole or in part.

BB-3.11

EXHIBIT A

MLGW 000017

MILEAGES ARE NOT GUARANTEED
ALL MILEAGE WILL BE PAID AT NEAREST TENTH OF A MILE.

D. Removal prices (For Unit Work Only)

| 0-12" DBH | Part of Bid |
| 12"+ DBH | Will be worked with Labor and Equipment Rates |

### REGION BOUNDARIES

Region 1    Tipton County Line south on Austin Peay Hwy to I-240.  I-240 to Wolf River,
            Wolf River east to Fayette County line.

Region 2    Wolf River from Fayette County line west to I-240, I-240 south and west to
            Getwell Rd., Getwell Rd., south to Knight Arnold Rd., west to Lamar, Lamar
            south to State Line.

Region 3    State Line on Lamar north to Knight Arnold, Knight Arnold east to Getwell Rd.,
            Getwell Rd. north to I-240, I-240 west, I-240 north to Madison; west to
            Mississippi River.

Region 4    Mississippi River on the west side, Madison east to I-240, I-240 to Austin Peay
            Hwy., Austin Peay Hwy. North to Tipton County line.

Region 5    I-240 on all four sides (north, south, east, and west)


Maps to be issued at Pre-Bid meeting.

Things to be considered in figuring Unit Prices and Labor and Equipment Rates

1.    1 Full-Time Manager or Supervisor
2.    1 General Foreman per 8 crews
3.    Cell phone for each crew, General Foreman, Manager or Supervisor

### END OF THIS PAGE

# CATEGORY II

## LABOR AND EQUIPMENT RATES

A. Labor Cost: See Article 2 titled "Labor to be furnished by the Contractor, "in the Specifications Section.

\* Overhead consists of transportation and labor costs of requested supervision, insurance, taxes and profit. This is a percentage of the minimum pay rate per hour. (See Crew Makeup on Page  ).

\*\*    General Foreman and his vehicle will not be billable. This will be included in overhead.

\*\*\*    One General Foreman per eight (8) crews.

+    Tree Trimmer A shall be paid an additional minimum of fifty cents per hour when filling in for the foreman or given a crew on a trial basis. MLGW will only pay $.50 for Work out of Class.

B. Equipment Costs: See Article 3 titled "Equipment to be furnished by the Contractor, "in the Specifications Section. Equipment costs are for the duration of the Contract.

Crew Configuration: The following is an approximate makeup for crews used on T&E jobs.

**Manual:**

| Manpower | Equipment |
|---|---|
| Working Foreman A/Crewleader | Split Dump |
| Tree Trimmer A | Chipper |
| Tree Trimmer B | 3 Saws |
| Trimmer Helper | |

**Bucket:**

| Manpower | Equipment |
|---|---|
| Working Foreman A/Crewleader | 65'Aerial Lift |
| Tree Trimmer | Chipper |
| | 2 Saws |

**Jaraffe:**

| Manpower | Equipment |
|---|---|
| Working Foreman A/Crewleader | Jaraffe |
| Trimmer A/Operator | Tractor with brown tree cutter |
| Trimmer Helper | 1 chainsaw |

EXHIBIT A

**Mowing:**

**Manpower**

Working Foreman A/Crewleader
Trimmer Helper

**Equipment**

Tree mower 120-200 hp
Truck w/trailer
1 chainsaw

C.    **Available Manpower**

Tree Trimmer A
Tree Trimmer B
Tree Trimmer C
Trimmer Helper
Working Foreman A/Crewleader

**Number Available Upon Request**

All equipment available upon
request.

BB-3.14

EXHIBIT A

MLGW 000020

**LABOR AND EQUIPMENT RATES**

COMPANY NAME:

### REGULAR TIME RATE

| Classification | YEAR 1 BILLING RATE | YEAR 2 BILLING RATE | YEAR 3 BILLING RATE | YEAR 4 BILLING RATE | YEAR 5 BILLING RATE |
|---|---|---|---|---|---|
| Foreman | 39.38 /HR | 40.36 /HR | 41.37 /HR | 42.41 /HR | 43.47 /HR |
| Trimmer A | 34.08 /HR | 34.93 /HR | 35.80 /HR | 36.70 /HR | 37.62 /HR |
| Trimmer B | 32.27 /HR | 33.07 /HR | 33.90 /HR | 34.75 /HR | 35.62 /HR |
| Trimmer C | 30.17 /HR | 30.93 /HR | 31.70 /HR | 32.49 /HR | 33.31 /HR |
| Trimmer Helper | 28.80 /HR | 29.52 /HR | 30.26 /HR | 31.02 /HR | 31.79 /HR |
| Work Out of Class | .50 /HR | .50 /HR | .50 /HR | .50 /HR | .50 /HR |

### OVERTIME RATE

| Classification | YEAR 1 BILLING RATE | YEAR 2 BILLING RATE | YEAR 3 BILLING RATE | YEAR 4 BILLING RATE | YEAR 5 BILLING RATE |
|---|---|---|---|---|---|
| Foreman | 56.70 /HR | 58.12 /HR | 59.57 /HR | 61.06 /HR | 62.59 /HR |
| Trimmer A | 49.07 /HR | 50.30 /HR | 51.56 /HR | 52.85 /HR | 54.17 /HR |
| Trimmer B | 46.46 /HR | 47.63 /HR | 48.82 /HR | 50.04 /HR | 51.29 /HR |
| Trimmer C | 43.45 /HR | 44.54 /HR | 45.65 /HR | 46.79 /HR | 47.96 /HR |
| Trimmer Helper | 41.48 /HR | 42.52 /HR | 43.58 /HR | 44.67 /HR | 45.78 /HR |
| Work Out of Class | .72 /HR | .72 /HR | .72 /HR | .72 /HR | .72 /HR |

3B -3.15

EXHIBIT A

MLGW 000021

# HOURLY RATE PRICING SUBMITTAL

| Equipment Type | Year 1 Billing Rate | Year 2 Billing Rate | Year 3 Billing Rate | Year 4 Billing Rate | Year 5 Billing Rate |
|---|---|---|---|---|---|
| 65' Lift w/ Dump Body | $26.13 | $26.65 | $27.18 | $27.73 | $28.28 |
| 2 Ton Split Dump | $13.78 | $14.06 | $14.34 | $14.62 | $14.92 |
| Chain Saw | $1.06 | $1.06 | $1.10 | $1.12 | $1.14 |
| Brush Chipper 12" (Non Self Feed) | $6.85 | $6.99 | $7.13 | $7.27 | $7.41 |
| Disc Chipper 12" (Self Feed) | $7.21 | $7.35 | $7.50 | $7.65 | $7.80 |
| Disc Chipper 15" (Self Feed w/ winch) | $10.24 | $10.44 | $10.65 | $10.86 | $11.08 |
| Disc Chipper 18" (Self Feed w/ winch) | $12.43 | $12.68 | $12.93 | $13.19 | $13.46 |
| Jarraff (Rubber Tire) | $82.16 | $83.80 | $85.48 | $87.19 | $88.93 |
| Jarraff (Track) | $84.90 | $86.59 | $88.33 | $90.09 | $91.89 |
| Support Truck with Trailer | $22.24 | $22.68 | $23.13 | $23.60 | $24.07 |
| 1/2 Pick Up 2x4 | $11.87 | $12.11 | $12.35 | $12.59 | $12.85 |
| 1/2 Pick Up 4x4 | $12.39 | $12.64 | $12.89 | $13.15 | $13.41 |
| 3/4 Ton Pick Up 2x4 | $12.26 | $12.50 | $12.75 | $13.01 | $13.27 |
| 3/4 Ton Pick UP 4x4 | $13.42 | $13.69 | $13.96 | $14.24 | $14.53 |
| ATV | $4.80 | $4.90 | $4.99 | $5.09 | $5.20 |
| ATV w/ Sprayer | $5.14 | $5.25 | $5.35 | $5.46 | $5.57 |
| UTV | $6.40 | $6.53 | $6.66 | $6.79 | $6.93 |
| UTV w/ Sprayer | $6.88 | $6.99 | $7.13 | $7.28 | $7.42 |
| 300 Gallon Spray Tank | $7.22 | $7.37 | $7.51 | $7.66 | $7.82 |
| 4x4 Spray Truck | $19.50 | $19.89 | $20.29 | $20.69 | $21.11 |
| Backpack Sprayer | $1.27 | $1.29 | $1.32 | $1.34 | $1.37 |
| Tree Mower < 120 HP | $58.75 | $59.93 | $61.12 | $62.35 | $63.59 |
| Tree Mower 120-150 HP | $65.03 | $66.33 | $67.65 | $69.01 | $70.39 |
| Tractor w/ Brown Cutter | $30.58 | $31.17 | $31.79 | $32.43 | $33.07 |
| Tractor w/ Bushhog+A48 | $30.56 | $31.17 | $31.79 | $32.43 | $33.07 |
| Pole Chain Saw | $1.39 | $1.42 | $1.45 | $1.47 | $1.50 |
| Stump Grinder | $34.17 | $34.85 | $35.55 | $36.26 | $36.98 |
| Crane | $277.78 | $283.33 | $289.00 | $294.78 | $300.68 |
| Truck w/ Prentice Loader | $46.03 | $46.95 | $47.89 | $48.85 | $49.82 |
| Foliar Mix #1 per Gallon | $3.33 | $3.40 | $3.47 | $3.54 | $3.61 |
| Foliar Mix #2 per Gallon | $1.67 | $1.70 | $1.73 | $1.77 | $1.80 |
| Aquatic Mix per Gallon | $1.93 | $1.97 | $2.01 | $2.05 | $2.09 |
| Vine Mix | $37.33 | $38.08 | $38.84 | $39.62 | $40.41 |
|  |  |  |  |  |  |
| 55' Lift Truck w/ Dump | $19.71 | $20.10 | $20.50 | $20.91 | $21.33 |
| Backhoe w/ Trailer | $45.83 | $46.75 | $47.69 | $48.64 | $49.61 |
| 60' Lift Truck Flat Bed | $33.25 | $33.92 | $34.60 | $35.29 | $36.00 |
| Min Skid Steer w/ Grapple and Trailer | $11.25 | $11.25 | $11.48 | $11.70 | $11.94 |
| Back Yard Lift  w/ Trailer | $42.50 | $43.37 | $44.25 | $45.16 | $46.08 |
| Back Yard Jarraff  w/ Trailer | $48.75 | $49.74 | $50.76 | $51.80 | $52.85 |

BB_3.16

EXHIBIT A

MLGW 000022

CONTRACT NAME:  Line Clearance

CONTRACT NO:  12977

BIDDING BLANK

| 65 | % Labor |
| 35 | % Equipment |
| 0 | % Material |

NEXT PAGE

BB - 4

EXHIBIT A

MLGW 000023

In submitting the list of subcontractors below, the bidder agrees:

1. MLGW shall have the final approval of all subcontractors listed.
2. The bidder shall provide proof that each of the bidder's subcontractors has not been federally debarred and that each bidder is registered to do business in Tennessee at http://tnbear.tn.gov/Ecommerce/FilingSearch.aspx. See #3 on page BB – 30.
3. The bidder acknowledges that past poor performance of any subcontractor may prohibit that subcontractor from performing on this Contract.
4. The bidder shall provide within seven (7) work days, a replacement for any subcontractor not approved by MLGW.
5. No substitute will be allowed unless approved by MLGW.
6. When requested, each subcontractor shall provide insurance certificates, reflecting coverage proportionate to that required of the Contractor.
7. Only the work actually performed by a minority-, woman-, or locally-owned small business enterprise ("MWBE/LSB") with the MWBE/LSB's own forces will be counted as MWBE/LSB participation. An MWBE/LSB's participation can only be counted if the MWBE/LSB performs a commercially useful function on the Contract.
8. The bidder, if awarded a contract, must submit signed copies of all subcontractor agreements to MLGW at the pre-commencement meeting.
9. All subcontractors listed must attend the pre-commencement meeting.

*See the Definitions of Recognized Ownership Classifications article on page BB-8.*

---

Contractor: Bean & Prince Contractors, Inc.
Contact Name: Lee A. Bean
Address: 1996 Danielson Place, Memphis, TN 38114
Phone Number: 901-774-5237
Email: president@beanandprince.com
License No.: 00028566
Registered with Secretary of State: Yes X  No__
MWBE/LSB Certified: Yes X  No__
Dollar Amount 1,050,000  % of Total Bid 30 %
References Attached (circle) Yes __ No X
Ethnicity of Owner: African American
Male X  Female __
Description of Subcontracted Work: Labor, workforce, equipment to perform line clearance duties.

Contractor: PS Energy Group, Inc.
Contact Name: Roger Murray, CFO
Address: 4480 North Shallowford Ln, Dunwoody, Ga
Phone Number: 770-350-3000
Email: Roger.Murray@PSEnergy.com
License No.: W030044
Registered with Secretary of State: Yes X  No__
MWBE/LSB Certified: Yes X  No__
Dollar Amount 200,000  % of Total Bid 6 %
References Attached (circle) Yes __ No X
Ethnicity of Owner: Caucasian
Male __ Female X
Description of Subcontracted Work:
Fuel supplier

*Use additional sheets if necessary.*

---

Contractor: Xtreme Clean, Inc.
Contact Name: Ronnie Johnson
Address: 3750 Hacks Cross Rd. Memphis, TN
Phone Number: 901-219-1725
Email: Xtreme.Cleaning@yahoo.com
License No.: 106005839
Registered with Secretary of State: Yes X  No__
MWBE/LSB Certified: Yes X  No__
Dollar Amount 615,000  % of Total Bid 18 %
References Attached (circle) Yes __ No X
Ethnicity of Owner: African American
Male X  Female __
Description of Subcontracted Work: Supply labor @ groundperson and trimmer positions

Contractor: Sutton Ford
Contact Name: Michael Miller
Address: 21315 Central Ave., Matteson, IL
Phone Number: 855-425-8890
Email: MMiller@suttonford.com
License No.: 10080042
Registered with Secretary of State: Yes X  No__
MWBE/LSB Certified: Yes X  No__
Dollar Amount 200,000  % of Total Bid 6 %
References Attached (circle) Yes __ No X
Ethnicity of Owner: Caucasian
Male X  Female __
Description of Subcontracted Work:
Vehicle supplier

BB - 5

EXHIBIT A

MLGW 000024

In submitting the list of subcontractors below, the bidder agrees:

1. MLGW shall have the final approval of all subcontractors listed.
2. The bidder shall provide proof that each of the bidder's subcontractors has not been federally debarred and that each bidder is registered to do business in Tennessee at https://tnbear.tn.gov/Ecommerce/FilingSearch.aspx. See #3 on page BB – 30.
3. The bidder acknowledges that past poor performance of any subcontractor may prohibit that subcontractor from performing on this Contract.
4. The bidder shall provide within seven (7) work days, a replacement for any subcontractor not approved by MLGW.
5. No substitute will be allowed unless approved by MLGW.
6. When requested, each subcontractor shall provide insurance certificates, reflecting coverage proportionate to that required of the Contractor.
7. Only the work actually performed by a minority-, woman-, or locally-owned small business enterprise ("MWBE/LSB") with the MWBE/LSB's own forces will be counted as MWBE/LSB participation. An MWBE/LSB's participation can only be counted if the MWBE/LSB performs a commercially useful function on the Contract.
8. The bidder, if awarded a contract, must submit signed copies of all subcontractor agreements to MLGW at the pre-commencement meeting.
9. All subcontractors listed must attend the pre-commencement meeting.

*See the Definitions of Recognized Ownership Classifications article on page BB-8.*

Contractor: SEC Auto Solutions
Contact Name: Stephen St. Andre'
Address: 640 N. 1st St. Dixon CA
Phone Number: 707-310-9890
Email: support@secautosolutions.com
License No.: 0000004455
Registered with Secretary of State: Yes X  No __
MWBE/LSB Certified: Yes X  No __
Dollar Amount 200,000 % of Total Bid 6 %
References Attached (circle) Yes ___  No X
Ethnicity of Owner: Caucasian
Male ___  Female X
Description of Subcontracted Work:
        Vehicle supplier

Contractor:
Contact Name:
Address:
Phone Number:
Email:
License No.:
Registered with Secretary of State: Yes ___  No __
MWBE/LSB Certified: Yes ___  No __
Dollar Amount _____ % of Total Bid __ %
References Attached (circle) Yes ___  No ___
Ethnicity of Owner:
Male ___  Female ___
Description of Subcontracted Work:

Contractor: Shore to Door, LLC
Contact Name: Christine Cohen
Address: P.O. Box 72678, Marietta, GA
Phone Number: 878-978-5775
Email: CChoen@shoretodoorllc.com
License No.: 13050017
Registered with Secretary of State: Yes X  No __
MWBE/LSB Certified: Yes X  No __
Dollar Amount 100,000 % of Total Bid 3 %
References Attached (circle) Yes ___  No X
Ethnicity of Owner: Caucasian
Male ___  Female X
Description of Subcontracted Work:
        Safety supplies

Contractor:
Contact Name:
Address:
Phone Number:
Email:
License No.:
Registered with Secretary of State: Yes ___  No __
MWBE/LSB Certified: Yes ___  No __
Dollar Amount _____ % of Total Bid __ %
References Attached (circle) Yes ___  No ___
Ethnicity of Owner:
Male ___  Female ___
Description of Subcontracted Work:

*Use additional sheets if necessary.*

BB - 5

EXHIBIT A

MLGW 000025

Under the conditions of the Notice to Bidders, attached is a Surety Company Bid Bond for 5% of bid price or in lieu, a certified check. If this bid is accepted, the bidder must execute the Contract and furnish a satisfactory performance and payment bond within 14 days from notification of award. Failure to do so may cause MLGW to declare that the bidder has abandoned the Contract. This bid shall be null and void. The bid bond or certified check accompanying this bond shall be forfeited to and shall become the property of MLGW. Otherwise the check shall be returned to the bidder or the bid bond shall be cancelled by MLGW.

In case a business entity shall be a bidder, all statements contained shall apply to the entity and to each partner, member or officer.

In making the awards, consideration will be given to the experience of the bidder in performing the required work, the facilities for doing this work, any exceptions noted by the bidder in the bidder's bid, ability to complete the work as required by MLGW, compliance with the MLGW Supplier Diversity Policy and cost.

Failure to furnish information solicited in this document will be grounds for dismissal of the bid.

All bids must be made in duplicate upon the blank form of the bid attached to the Contract. Each price shall be in writing and numbers, and in case of variance, the price in writing shall prevail. The duplicate bid must be marked "DUPLICATE." In case of discrepancy between the original and duplicate bid, as filed, the original shall govern.

Replies will be issued to all bidders of record by addenda and will become part of the Contract. Neither MLGW nor MLGW's representatives will be responsible for oral clarification. Questions must be received by the MLGW Representative at least five (5) work days before the Bid Opening date. No addenda will be issued less than 48 hours before the Bid Opening date.

The undersigned, as Bidder, acknowledges receipt of the following addenda:

Addendum No: ____None____    Dated:_____

Addendum No: _____    Dated:_____

Addendum No: _____    Dated:_____

**LAST ITEM ON PAGE**

BB - 6

EXHIBIT A                                    MLGW 000026

## SUPPLIER DIVERSITY

This section provides the following valuable information on the MLGW Supplier Diversity Program. The information contained in this section is governed by the MLGW Supplier Diversity Policy effective January 1, 2014. For a complete copy of the policy, please visit www.mlgw.com/SDPolicy. Please read the entire section to ensure you fully understand what paperwork is required based on the level of Supplier Diversity participation included in your bid.

The following subsections are contained:
- o Program Intent
- o Program Components
- o Definitions of Ownership Classifications Recognized
- o Agencies Whose Certifications are Accepted
- o Bidder Responsibilities
- o Required Documentation Based on Proposed Supplier Diversity Participation
- o Supplier Diversity Goal for this Project
- o Supplier Diversity Participation Transmittal
- o Required Forms Provided:
  - o MLGW Minority, Women, and Locally Owned Small Business Enterprise Assurance Statement for Subcontracting
  - o MLGW Minority, Women, and Locally Owned Small Business Enterprise Assurance Statement for Prime Contracting
  - o Non-Attainment Justification Letter
  - o MLGW Supplier Diversity and Subcontractor Bid Summary Form

**Program Intent**

The MLGW Board of Commissioners intends to encourage the growth of minority, women and locally owned small business enterprises (collectively "MWBE/LSB") by providing them with the opportunity to furnish MLGW with goods and services through MLGW's Supplier Diversity Program. More specifically, it is the expressed intent of this program to address present effects of historical discrimination against minority contractors and suppliers, obstacles faced by women-owned businesses in gaining access to procurement opportunities, and barriers to scalability faced by local small businesses ("LSB"). It is the responsibility of MLGW to ensure that such businesses are provided fullest consideration to compete under the competitive bidding provisions of MLGW.

It is the expressed intent of MLGW that all business classifications covered under this policy have the maximum practicable opportunity to participate in the performance of purchase orders, contracts, and subcontracts. And, in furtherance of this policy, the posture of all MLGW staff shall be proactive to ensure supplier diversity.

**Program Components**

Procurement opportunities may be determined for solicitation between Sheltered Market or Unrestricted Market participants. Sheltered Market opportunities will only be open for competition by and between LSBs. A sheltered market procurement of a single acquisition or a class of acquisitions may be total or partial. To be eligible to participate in sheltered market procurement opportunities, an LSB must perform at least a given percentage of the Contract. This provision

BB - 7

EXHIBIT A

MLGW 000027

limits the amount of subcontracting a LSB may enter into with other firms when performing these types of contracts. The sheltered market procurement requirement will only apply when there is a reasonable expectation that offers will be obtained from three (3) or more LSBs that are competitive in terms of market prices, quality and delivery. If only one (1) acceptable offer is received from a responsible LSB, the sheltered market procurement will be withdrawn and the product or service, if still needed, will be solicited on an unrestricted basis. Unrestricted Market opportunities will be open to all bidders in the marketplace. Unrestricted Market opportunities may have Supplier Diversity participation goals.

**Definitions of Recognized Ownership Classifications**

**Minority Business Enterprise ("MBE")** is defined as a business enterprise which is at least 51% owned, operated and independently controlled by a person or persons who is/are minority group members. For these purposes, minority group members are: African Americans, Native Americans, Hispanic Americans, and Asian-Pacific Americans, who is/are United States citizens.

**Woman Business Enterprise ("WBE")** is defined as a business which is at least 51% owned, operated and controlled by United States citizens who are female or a group of females.

**Locally Owned Small Business ("LSB")** is defined as a business enterprise with its headquarters and physical principal office located in Shelby County, Tennessee which had gross annual sales in the previous year less than the Standard Industrial Classification ("SIC") category limits for the business SIC code found in 13 CFR, Part 121.601, and who is an independent and continuing enterprise for profit, performing a commercially useful function, which is at least 51% owned, operated, and independently controlled by a resident or residents of the Memphis Metropolitan Statistical Area who is/are United States citizen(s).

**Accepted Agency Certifications**

MLGW accepts the certification of any recognized organization that certifies businesses covered under the MLGW Supplier Diversity Program definitions for MWBE/LSBs, and managed by a person or persons who represent one (1) of the three (3) business classifications outlined in the program definitions. The MWBE/LSB certification must be current at the time of submission of the bid.

The bidder must provide a copy of the certificate of certification for each company submitted with the bid. MLGW reserves the right not to accept certifications if the company does not meet the criteria for certification outlined in the policy.

Certifying organizations include, but are not limited to:

*Mid-South Minority Business Council Continuum's Uniform Certification Agency
*Women's Business Enterprise National Council
*Tri-State Minority Supplier Development Council
*National Minority Supplier Development Council
*City of Memphis
*Shelby County Government

BB - 8

EXHIBIT A                                    MLGW 000028

**Bidder Responsibilities**

All bidders on any eligible project for construction, architectural and engineering services, professional services, and other services or goods and supplies in which a Supplier Diversity participation goal has been set must complete and submit the required Supplier Diversity documents as provided in the solicitation document.

Bidders not meeting the stated Supplier Diversity project participation goal must document their good faith efforts and thoroughly complete any provided Non-Attainment Justification documents.

Bidders are required to document their activities in the solicitation and selection of subcontractors to ensure the process is carried out in a nondiscriminatory manner.

The apparent Lowest and Best Bidder must submit to MLGW, within 10 days of receipt of the fully executed contract from MLGW, copies of all executed contracts with MWBE/LSB subcontractors listed in the bid. Upon receipt of the fully executed subcontracts, MLGW will issue a Notice to Proceed Letter to the prime contractor. The Contractor will report to the Supplier Diversity Coordinator ("SDC") any MWBE/LSB that will not be able to perform as provided in the bid documents. The SDC must approve the replacement subcontractor.

When requesting payment, prime contractors must complete and submit all invoice processing and Supplier Diversity participation documents provided by MLGW along with copies of invoices from MWBE/LSB subcontractors included in the Contract.

Failure of a prime contractor to complete and submit the required Supplier Diversity reporting documents and copies of the prime contractor's subcontractor's invoices may result in a delay or non-payment of the prime contractor's invoices.

When requesting annual renewals of contracts, the prime contractor must submit updated certification certificates for all MWBE/LSBs listed in the Contract at the time the renewal is requested.

**Required Documentation Based on Supplier Diversity Participation**

The bidder must submit the combination of documents based on the level of Supplier Diversity participation in the bidder's bid.

Upon award, these documents shall become a part of the Contract and subject to noncompliance penalties. Sample documents are included. If there is no goal for this Contract, documentation is not required.

Submission of falsified documentation will be grounds for rejection of the bid. The bid will be deemed nonresponsive and will not be forwarded for further review or evaluation. In addition, both the prime contractor and the subcontractor may be debarred from contracting with MLGW. Discovery of false information concerning Supplier Diversity during the contract period will be grounds for termination of the Contract. MWBE/LSB Certification status will be verified for all subcontractors and suppliers. Suppliers and subcontractors misrepresented as a certified firm will

BB - 9

EXHIBIT A

MLGW 000029

not be considered toward fulfillment of Supplier Diversity goals and the bid will be deemed nonresponsive.

## MWBE/LSB Assurance Statements

The bidder shall submit, with the bidder's bid, MWBE/LSB Assurance Statement(s) for Subcontracting ("Assurance Statement") for each subcontractor being used to meet the Supplier Diversity goal for this bid. Each Statement must be complete with the names of MWBE/LSB providers, contact information, a description of the work each performs, dollar value of work and signature of bidding parties of each proposed MWBE/LSB subcontractor. Bidders are reminded of the specific prohibition against agreements between a bidder and a MWBE/LSB in which the MWBE/LSB promises not to provide subcontracting quotations to other bidders. The information in this Assurance Statement will be evaluated by MLGW to determine compliance with the Supplier Diversity goal and bid responsiveness.

There must be one (1) Assurance Statement for each proposed MWBE/LSB subcontractor properly completed and signed by the MWBE/LSB and the bidder. If Bidder's Assurance Statement proposes to attain an MWBE/LSB percentage higher than the established goal, the proposed goal stated on the Assurance Statement will become the contractual requirement subject to penalties for noncompliance. If the primary bidder is a certified MWBE/LSB, the primary bidder should complete the MWBE/LSB Assurance Statement(s) for Prime Contractor.

If the subcontractors submitted with the bid are NOT certified during bid submission or if assurance statements are not complete and accurate, the bid will be deemed nonresponsive and will not be further considered for contract award unless a Non-attainment Justification Letter is provided and deemed responsive.

If the bidder's MWBE/LSB Assurance Statement(s) for Subcontracting proposes an MWBE/LSB percentage less than the stated goal, the Bidder must complete the Non-Attainment Justification Letter outlining why the balance of the goal was not met. Use the form letter in this document.

## Non-Attainment Justification

Bidders may complete the form in the bid documents or replicate the form on company letterhead and submit it with the bid response. Acceptance of the Non-Attainment Justification Letter is at the sole discretion of MLGW.

If, in MLGW's sole evaluation of the Non-Attainment Justification Letter, MLGW finds the justification invalid, the bid will be deemed nonresponsive and will not be further considered for review, evaluation or Contract award. If, however, MLGW finds the justification valid, the bidder's bid will be responsive. If MLGW enters into a Contract based on the written Non-Attainment Justification Letter, the MWBE/LSB percentage accepted by MLGW will become a contractual requirement subject to penalties for noncompliance.

**NEXT PAGE**

BB - 10

EXHIBIT A                                        MLGW 000030

**Supplier Diversity Goal for this Project: 0%**

The MLGW Board of Commissioners intends to encourage the growth of minority, women and locally owned small business enterprises (collectively "MWBE/LSB") by providing them with the opportunity to furnish MLGW with goods and services through MLGW's Supplier Diversity Program. If a Supplier Diversity participation goal is set for this project, it may be achieved by partnering or subcontracting with certified MWBE/LSB to perform or provide any combination of work, materials/supplies, equipment and/or other ancillary services required to fulfill the work to be done for this project. **The goal for this project is outlined on the Bidding Blank found on page BB - 2 of this solicitation.**

The percentage of participation is defined as the dollar value of subcontracts awarded to certified MWBE/LSBs divided by the total proposed bid amount. If the bidder is a certified MWBE/LSB, then the Supplier Diversity participation goal for this solicitation shall be deemed met at 100%. One (1) or a combination of several MWBE/LSBs may be utilized to meet the established goal stated on page BB - 2. Companies providing responses to this solicitation are to offer their best response in completing this project including the requested Certified MWBE/LSB representative.

You may contact recognized agencies who certify businesses covered under the MLGW Supplier Diversity Program definitions (MWBE/LSB) for companies who may provide the services needed for this project. The certification must be based on the business being at least 51% owned, controlled, operated and managed by a person or persons who represent one (1) of the three (3) business classifications outlined in the Definitions of Recognized Ownership Classifications subsection. Agencies whose certification is accepted include, but are not limited to those listed under Accepted Agency Certifications.

Bids received from or including certified MWBE/LSB companies in bid responses shall be deemed as an effective response to solicitations in MLGW's effort to make awards based on "best bid." Best Bid is defined as the most responsive proposal, solicitation or offer that meets required specifications including, if applicable, any Supplier Diversity goal as set in the Contract Documents. Award decisions will be made based on evaluating bids in compliance with the Best Bid definition. All forms should be filled in with information requested or "N/A" (not applicable).

If you have questions or need additional information, please contact the Supplier Diversity Department at (901) 528-4635.

**\*Failure to recognize and address the Supplier Diversity Policy and the goal for this project found on the Bidding Blank on page BB - 2 of this solicitation, when applicable, by not including the required documentation will cause your bid to be deemed nonresponsive and your bid will not be further reviewed, evaluated or considered for award.\***

**NEXT PAGE**

BB - 11

EXHIBIT A

MLGW 000031

**Unrestricted Market or Partial Sheltered Market**
**Supplier Diversity Participation Transmittal**
*(This transmittal and the applicable forms shall be completed and submitted with the bid.)*

Contract No: 12877

Contract Name: Line Clearance

Bidder's Name: __Asplundh Tree Expert, LLC__

Please check the section below that describes the Supplier Diversity participation for this bid and include the applicable required documents. Submission alone of the documents listed below will neither guarantee compliance nor advancement to Phase II of the evaluation process as outlined in the Evaluation Criteria and Procedures article of this bid. For clarification regarding the required documentation outlined in the sections below, please carefully review the Required Documentation Based on Supplier Diversity Participation article in this bid.

Bidders are to ensure all blanks are filled with: (a) specific terms or responses; (b) a straight line to indicate nothing goes in the blank; or (c) "N/A" (Not Applicable). Failure to address every blank or question with the specific terms or response, a strike through (straight line), or "N/A" (not applicable) may render the bid nonresponsive and ineligible for further consideration.

__X__ Section I:  Supplier Diversity Participation meets or exceeds the stated goal
    The following documents are attached:

__X__ Assurance Statements for Unrestricted or Partial Sheltered Market Subcontracting for each subcontractor;
____ Copies of Certification certificates for each subcontractor;
____ Assurance Statement for Unrestricted or Partial Sheltered Market Prime Contractor
____ Copy of Certification certificate for the Prime Contractor
__X__ MLGW Supplier Diversity and Subcontractor Bid Summary Form

____ Section II:  Supplier Diversity Participation does not meet the stated goal:
    The following documents are attached:

____ Assurance Statements for Unrestricted or Partial Sheltered Market Subcontracting for each subcontractor
____ Copies of Certification certificates for each subcontractor
____ Non-Attainment Justification Letter addressing why the balance of the goal was not met.
____ MLGW Supplier Diversity and Subcontractor Bid Summary Form.

____ Section III:  There is no Supplier Diversity Participation in this bid to meet the stated goal:
    The following documents are attached:

____ Non-Attainment Justification Letter

BB - 12

EXHIBIT A

MLGW 000032

# Supplier Diversity Forms

BB - 13

EXHIBIT A

MLGW 000033

MLGW Minority, Women and Locally Owned Small Business Enterprise
Assurance Statement for Unrestricted or Partial Sheltered Market Subcontracting

Date: 3/14/19

Memphis Light, Gas and Water Division
P.O. Box 430
Memphis, TN 38101-0430

Contract No: 12077

Contract Name: Line Clearance

Asplundh Tree Expert, LLC  ("Bidder") having submitted a bid for the above referenced Memphis Light, Gas and Water Division of the City of Memphis, Tennessee contract, advises that, contingent upon award of the contract to our company as successful bidder, we have agreed to utilize the services of the following certifying entity's certified minority, women, or locally owned small business enterprise ("MWBE/LSB").

**MWBE/LSB Subcontractor**

Company Name:  Bean & Prince Contractors, Inc.

Address: 1896 Davidson Place                Phone Number: 901-774-6237

City:  Memphis                    State:  TN        Zip:  38114

Detailed description of Work to be performed:  Labor, additions, equipment

To perform line clearance duties.

Dollar Value:  $1,050,000.00

The undersigned has agreed to perform work with the above project as a:

☒  Subcontractor        ☐    Consultant        ☐    Supplier

Certification Classification: ☒MBE  ☐WBE  ☐LSB Certification Number

Certification Agency:

Please attach a copy of the certificate
Ethnicity of Owner:  African American        Male  X    Female
See the Definitions of Recognized Ownership Classifications article.

Contact Name:  Lee A. Bean            Title:  President/CEO

MWBE/LSB Signature:  Lee A. Bean    Date:  4-18-19

**NEXT PAGE**

BB - 14

EXHIBIT A

MLGW 000034

The total dollar value of MWBE/LSB participation listed above is $ 1,050,000.00  which is
1.07 % of the total bid amount.

The undersigned will enter into a written agreement with the above MWBE/LSB contractor for the
work described upon award and execution of a contract with Memphis Light, Gas and Water
Division of the City of Memphis, Tennessee.

Sincerely,

By: _____  ("Bidder's Officer")
Print Name:  Gregg S. Asplundh
Title:  Executive Vice President

Signatures of all parties are required. Failure to sign will not be considered a Minor Irregularity.

**LAST ITEM ON PAGE**

BB - 15

EXHIBIT A

MLGW 000035



# Uniform Certification Agency
## CERTIFIED MINORITY BUSINESS ENTERPRISE
Presented To

Bean & Prince Contractors, Inc.

HAS SUCCESSFULLY MET ALL REQUIREMENTS AS ESTABLISHED BY THE MMBC CONTINUUM AND THE UNIFORM CERTIFICATION AGENCY FOR CERTIFICATION AS A MINORITY BUSINESS ENTERPRISE. THIS CERTIFICATE RELATES TO MBE STATUS AND IS NOT CERTIFICATION OF EXPERTISE IN ANY PARTICULAR TRADE OR FIELD.

**Director of Certification**

387483

03/03/2020

Certificate Number

Expiration Date

EXHIBIT A

MLGW 000036

MLGW Minority, Women and Locally Owned Small Business Enterprise
Assurance Statement for Unrestricted or Partial Sheltered Market Subcontracting

Date __3/14/19__

Memphis Light, Gas and Water Division
P.O. Box 430
Memphis, TN 38101-0430

Contract No: 12077

Contract Name: Lime Clearance

Asplundh Tree Expert, LLC _____ ("Bidder"), having submitted a bid for the above referenced Memphis Light, Gas and Water Division of the City of Memphis, Tennessee contract, advises that, contingent upon award of the contract to our company as successful bidder, we have agreed to utilize the services of the following certifying entity's certified minority, women, or locally owned small business enterprise ("MOWBE/LSB").

MWBE/LSB Subcontractor

Company Name: __PS Energy Group, Inc.__

Address: __4480 N. Shallowford Road, Suite 100__     Phone Number: __770-350-3000__

City: __Dunwoody__     State: __GA__     Zip: __30338__

Detailed description of Work to be performed: __Fuel supplier__

Dollar Value: __$200,000__

The undersigned has agreed to perform work with the above project as a:

☐ Subcontractor     ☐ Consultant     ☒ Supplier

Certification Classification: ☐ MBE ☐ WBE ☐ LSB Certification Number _____

Certification Agency: __NMSDC/GMSDC - MBE Cert. #AT01406; WBENC - WBE Cert. #249736__

Please attach a copy of the certificate
Ethnicity of Owner: __Hispanic__     Male ___ Female __X__
See the Definitions of Recognized Ownership Classifications article.

Contact Name: __Roger W. Murray__     Title: __Chief Operating Officer__

MWBE/LSB Signature: _[signature]_     Date: __4/5/2019__

EB-14.1

EXHIBIT A

MLGW 000037

The total dollar value of MWBE/LSB participation listed above is $ 200,000.00 _____ which is
.20 % of the total bid amount.

The undersigned will enter into a written agreement with the above MWBE/LSB contractor for the
work described upon award and execution of a contract with Memphis Light, Gas and Water
Division of the City of Memphis, Tennessee.

Sincerely,

By: _____    ("Bidder's Officer")
Print Name:    Gregg G. Asplundh
Title:    Executive Vice President

Signatures of all parties are required. Failure to sign will not be considered a Minor Irregularity.

**LAST ITEM ON PAGE**

BB - 15 - 1

EXHIBIT A

MLGW 000038

THIS CERTIFIES THAT

# PS Energy Group, Inc.



**NMSDC**
National Minority Supplier
Development Council

* Nationally certified by the: **GEORGIA MINORITY SUPPLIER DEVELOPMENT COUNCIL**

*NAICS Code(s): 924230; 541614; 517410; 424720; 221210; 237130; 424710; 454310; 488410; 488490

* Description of their products/services as defined by the North American Industry Classification System (NAICS)

| | |
|---|---|
| 01/04/2019 | A701408 |
| Issued Date | Certificate Number |
| | |
| 02/28/2020 | Stacey Key, President and CEO |
| Expiration Date | |

Adrienne Trimble

By using your password (NMSDC Issued only), authorized users may log into NMSDC Central to view the entire profile: http://nmsdc.org

Certify, Develop, Connect, Advocate.
* MBEs certified by an Affiliate of the National Minority Supplier Development Council, Inc.®

EXHIBIT A

MLGW 000039



# WBENC

**WOMEN'S BUSINESS ENTERPRISE**
**NATIONAL COUNCIL**

hereby grants

## National Women's Business Enterprise Certification

to

### PS Energy Group, Inc.

who has successfully met WBENC's standards as a Women's Business Enterprise (WBE).
This certification affirms the business is woman-owned, operated and controlled; and is valid through the date herein.

WBENC National WBE Certification was processed and validated by
Greater Women's Business Council, a WBENC Regional Partner Organization.

Certification Granted: June 13, 2008
Expiration Date: June 30, 2019
WBENC National Certification Number: 349736



Authorized by Roz Lewis, President & CEO
Greater Women's Business Council



GREATER
WOMEN'S
BUSINESS
COUNCIL

NAICS: 237120, 237130, 324110, 424710, 424720, 424910, 488510, 519110, 541614
UNSPSC: 15101500, 15101504, 15101505, 15101703, 15101506, 45217122, 43232003, 50161506, 93101501

          

EXHIBIT A

MLGW 000040

MLGW Minority, Women and Locally Owned Small Business Enterprise
Assurance Statement for Unrestricted or Partial Sheltered Market Subcontracting

Date: 4/14/19

Memphis Light, Gas and Water Division
P.O. Box 430
Memphis, TN 38101-0430

Contract No: 12077

Contract Name: Vehicle Clearance

Authentic Tree Forest LLC ., ("Bidder"), having submitted a bid for the above referenced Memphis Light, Gas and Water Division of the City of Memphis, Tennessee contract, states that, contingent upon award of the contract to our company as Successful bidder, we have agreed to utilize the services of the following qualifying entity's certified minority, women, or locally owned small business enterprises ("MWBE/LSB").

**MWBE/LSB Subcontractor:**

Company Name:  Sutton Ford

Address: 1315 Central Ave.              Phone Number:  888-492-9681

City:  Matteson                State:  IL              Zip:

Detailed description of Work to be performed:

    Vehicle supplier

Dollar Value:  $200,000

The undersigned has agreed to perform work with the above project as a:

☐ Subcontractor      ☐ Consultant      ☒ Supplier

Certification Classification: ☐MBE  ☐WBE  ☐LSB Certification Number:

Certification Agency:

*Please attach a copy of the certificate*
Ethnicity of Owner:_Caucasian___ Male X__ Female__
See the Definitions of Recognized Ownership Classifications article.

Contract Name:  Michael Miller          Title:  FLEET MANAGER

MWBE/LSB Signature:                     Date:  4/5/19

NEXT PAGE

BB-14 - 2

The total dollar value of MWBE/LSB participation listed above is $ 200,000.00 which is 20 % of the total bid amount.

The undersigned will enter into a written agreement with the above MWBE/LSB contractor for the work described upon award and execution of a contract with Memphis Light, Gas and Water Division of the City of Memphis, Tennessee.

Sincerely,

By: _____  ("Bidder's Officer")
Type Name:    Gregg B. Asplundh
Title:    Executive Vice President

Signatures of all parties are required. Failure to sign will not be considered a Minor Irregularity.

**LAST ITEM ON PAGE**

BB-15. 2

EXHIBIT A

MLGW 000042



**Chicago**
Minority Supplier
Development Council

October 8, 2018

Mr. Nathaniel Sutton
Owner
SUTTON FORD, INC.
21315 Central Avenue
Matteson, IL. 60443

Dear Mr. Sutton:

We are pleased to inform you that your firm continues to meet the eligibility criteria and has been certified as a Minority Business Enterprise (MBE) of the Chicago Minority Supplier Development Council, Inc.

MBE Certification is granted annually and means that your term is effective through October 31, 2019. It is the obligation of your firm to apply for re-certification before your certification expiration date. In the interim, it is your responsibility to notify ChicagoMSDC of any change in the status or operation or operation of your company that might result in disqualification. Your firm's commodity/service will be listed in ChicagoMSDC's online GREATER CHICAGO MINORITY BUSINESS DIRECTORY as follows:

DISTRIBUTOR OF MOTOR VEHICLES

Your company's participation in other areas requires certification.

We would like to take this opportunity to thank you for your cooperation in our certification procedure which we feel, will strengthen the Council's programs to assist your firm in its efforts to market to major corporations in Chicago and nationally.

Sincerely,

Angie Alonso
Certification Specialist
Chicago Minority Supplier Development Council (ChicagoMSDC)

EXHIBIT A

MLGW 000043



THIS CERTIFIES THAT

**SUTTON FORD, INC.**

* Nationally certified by the: **CHICAGO MINORITY SUPPLIER DEVELOPMENT COUNCIL**

* NAICS Code(s): 441110

* Description of their product/services as defined by the North American Industry Classification System (NAICS)

Certificate Number

CH02386

Adrienne Trimble

Sheila C. Morgan

10/31/2018

**Issued Date**

10/31/2019

**Expiration Date**

By using your password (NMSDC issued only), authorized users may log into NMSDC Central to view the entire profile: http://nmsdc.org

Certify, Develop, Connect, Advocate.

* MBEs certified by an Affiliate of the National Minority Supplier Development Council, Inc.

EXHIBIT A

MLGW 000044

**MLGW Minority, Women and Locally Owned Small Business Enterprise**
**Assurance Statement for Unrestricted or Partial Sheltered Market Prime Contractor**

N/A

Date _____

Memphis Light, Gas and Water Division
P.O. Box 430
Memphis, TN 38101-0430

Contract No: 12077

Contract Name: Line Clearance

_____, ("Bidder"), having submitted a bid for the above referenced Memphis
Light, Gas and Water Division of the City of Memphis, Tennessee contract advises that, our
company is certified as a minority, women or locally owned small business enterprise
("MWBE/LSB").

Certification Classification:  ☐ MBE ☐ WBE ☐ LSB       Certification # _____
Certification Agency:_____
*Please attach a copy of the certificate*

Ethnicity of Owner: _____    Male_____ Female _____  _____
*See the Definitions of Recognized Ownership Classifications article.*

_____(Prime Contractor), will fulfill_____% of the
total contract for a total dollar value of $_____.

Sincerely,

By: _____("Bidder's Officer")
Print Name: _____
Title: _____

Signatures of all parties are required. Failure to sign will not be considered a Minor Irregularity.

**LAST ITEM ON PAGE**

BB - 16

EXHIBIT A

MLGW 000045

## NON-ATTAINMENT JUSTIFICATION LETTER

MLGW welcomes participation in MLGW's procurement process for services vital to the ongoing operations within MLGW. Under the requirements for Participants under the Supplier Diversity Program, and in consideration of the opportunity to submit proposals on contracts funded, in whole or in part, by MLGW,

I/We,              N/A

( _____ ),
( _____ ),
Name(s) Title(s)
( _____ )
Name of Administrator's Company

Attest that I/We have exercised the following good faith efforts in addition to my/our regular and customary solicitation process:

1.   I/We have delivered written notice to at least three (3) available certified MWBE/LSBs for each potential subcontracting or supply category in the Contract AND all potential subcontractors/suppliers which requested information on the Contract. (*List three (3) companies in each subcontracting and supply category.)  Use additional sheets if necessary.

Yes _____  No _____

Name of subcontractor/supplier _____    Contact Person _____

Date contacted _____    Method of contact _____

Certification:  ☐ MBE  ☐ WBE  ☐ LSB

Description of work and Percentage offered _____

Reason for declining _____

Name of subcontractor/supplier _____    Contact Person _____

Date contacted _____    Method of contact _____

Certification:  ☐ MBE  ☐ WBE  ☐ LSB

Description of work and Percentage offered _____

Reason for declining _____

BB - 17

EXHIBIT A

MLGW 000046

Name of subcontractor/supplier _____ Contact Person _____

Date contacted _____ Method of contact _____

Certification:  ☐ MBE  ☐ WBE  ☐ LSB

Description of work and Percentage offered _____

Reason for declining _____

2.    I/We have provided all potential subcontractors/suppliers with adequate information as to plans, specifications, relevant terms and conditions of the Contract, and the last date and time for receipt of price quotations.

Yes _____    No _____; Date _____; Time _____.

3.    I/We have, in accordance with normal industry practices, divided the contract into economically feasible segments that can be performed by a MWBE/LSB.

Yes _____    No _____

Please Explain:

_____
_____
_____

4.    I/We have included the name of the firm proposed to be awarded the subcontract or supply agreement (where price competitiveness is not the reason for rejection).

Yes _____    No _____

Name of subcontractor/supplier _____ Contact Person _____

Date contacted _____ Method of contact _____

Certification:  ☐ MBE  ☐ WBE  ☐ LSB

Description of work and Percentage offered _____

Reason for declining _____

**NEXT PAGE**

BB - 18

EXHIBIT A

MLGW 000047

5.  I/We have actively solicited, through sending letters, electronic mail or initiating personal contact, MWBE/LSBs in all feasible and appropriate categories to offer subcontracting opportunities for the contract under consideration. I/We have provided the same willingness to assist the MWBE/LSBs as has been extended to any other similarly situated subcontractor/supplier/partner. (*Provide information below for all companies contacted. Use additional sheets if necessary.)

Yes _____    No _____

Name of subcontractor/supplier _____    Contact Person _____

Date contacted _____    Method of contact _____

Certification: ☐ MBE  ☐ WBE  ☐ LSB

Description of work and Percentage offered _____

Reason for declining _____

Name of subcontractor/supplier _____    Contact Person _____

Date contacted _____    Method of contact _____

Certification: ☐ MBE  ☐ WBE  ☐ LSB

Description of work and Percentage offered _____

Reason for declining _____

Name of subcontractor/supplier _____    Contact Person _____

Date contacted _____    Method of contact _____

Certification: ☐ MBE  ☐ WBE  ☐ LSB

Description of work and Percentage offered _____

Reason for declining _____

<u>NEXT PAGE</u>

BB - 19

EXHIBIT A

MLGW 000048

6.   I/We have utilized the services of available community organizations and associations,
     contractor groups, and trade associations known to publicize contracting and procurement
     opportunities, for the purpose of obtaining assistance in the contacting and recruiting of
     MWBE/LSBs for the MLGW contract under consideration.

Yes  __X__        No _____

**Name of Organization**              **Contact Person**              **Date Contacted**

1. Manhood University           _____        _____

2. Shelby County Schools        _____        _____

3. Job Corps                    _____        _____

4. Memphis Urban League         _____        _____

   WIN Memphis

Respondents should thoroughly complete Items 1-6 of the Non-Attainment Justification
Letter.  The Supplier Diversity Coordinator will confirm the validity of the responses
provided.  Submission of falsified documentation will be grounds for rejection of the
proposal. The proposal will be deemed non-responsive and will not be forwarded for further
review or evaluation. In addition, both the prime contractor and the subcontractor may be
debarred from contracting by MLGW.

*Failure to include names of companies/organizations and requested information will result
in your proposal/bid being deemed non-responsive and your proposal/bid will not be further
considered for award. *

**NEXT PAGE**

BB - 20

EXHIBIT A

MLGW 000049

Concluding statement/summary of reasons why the supplier diversity goal was not achieved:

N/A

_____

_____

_____

_____

I/We affix my/our signature to this document to attest that I/We have exercised the above-indicated supplier diversity solicitation efforts to promote MWBE/LSB participation on the Contract under consideration and to comply fully with the provisions of MLGW's Supplier Diversity Program.

Printed Name of Company Official                                    Date    3/13/19

Larry M. Moore, Senior Vice President

Signature                                              Title of Company Official

Full Company Name          Asplundh Tree Expert, LLC

Mailing Address          708 Blair Mill Road

City, State, Zip          Willow Grove, PA   19090-1784

Area Code/ Phone Number          615-979-1850

Email Address          GHayden@Asplundh.com  (Gene Hayden)

This form MUST be returned in the proposal packet or the exact same information may be submitted on company/firm letterhead. Failure to include this information or complete subcontractor assurance statements will deem the submission non-responsive and the proposal will not be further considered for award.

Please contact the Supplier Diversity Department at (901) 528-4635 regarding any questions.

BB - 21

EXHIBIT A                                              MLGW 000050

# *INTENTIONALLY LEFT BLANK*

BB - 22

EXHIBIT A

MLGW 000051

MLGW Supplier Diversity and Subcontractor BRU/Proposal Summary Form
*To be Submitted with Bid/Proposal*

**Supplier Diversity Goal** _____ 1.07 %

| Contract Number | 12077 |
|---|---|
| Contract Name | Line Clearance |
| Prime Contractor | Asplundh Tree Expert, LLC |
| Total Bid Amount | |

| Prime/Subcontractor* (Supplier Diversity Participant) | Minority and Gender | Services | Amount | % of Bid |
|---|---|---|---|---|
| Bean & Prince Contractors, Inc. | African American | Labor, workforce, equipment to perform line clearance duties | 1,050,000 | 1.07 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **Subcontractor Total** | | | $ | % |

**Proposed Diversity Totals**

| Classification | Total Amount | % of Total Bid |
|---|---|---|
| MBE | 1,050,000 | 1.07 |
| WBE | | |
| LSB | | |

BB - 23

*PAWRU/LSB Subcontractor Assurance Statements for each subcontractor listed above must be attached to this form and included with the bid.

EXHIBIT A

MLGW 000052

**MLGW Supplier Diversity and Subcontractor Bid/Proposal Summary Form**
*To be Submitted with Bid/Proposal*

| | |
|---|---|
| **Contract Number** | 12977 |
| **Contract Name** | Line Clearance |
| **Prime Contractor** | Asplundh Tree Expert, LLC |
| **Total Bid Amount** | |

**Supplier Diversity Goal** _____ .20 %

| Prime/Subcontractor*<br>(Supplier Diversity Participant) | Ethnicity and Gender | Services | Amount | % of Bid |
|---|---|---|---|---|
| PS Energy Group, Inc. | Caucasian | Fuel supplier | 200,000 | .20 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **Subcontractor Total** | | | $ | % |

**Proposed Diversity Total**

| Classification | Total Amount | % of Total Bid |
|---|---|---|
| MBE | | |
| WBE | 200,000 | .20 |
| LSB | | |

*A WBE/LSB Subcontractor Assurance Statements for each subcontractor listed above must be attached to this form and included with the bid.

BB - 23 - 1

EXHIBIT A

MLGW 000053

**MLGW Supplier Diversity and Subcontractor Bid/Proposed Summary Form**
To be Submitted with Bid/Proposal

Contract Number: 12077

Contract Name: Line Clearance

Prime Contractor: Asplundh Tree Expert, LLC.

Total Bid Amount:

Supplier Diversity Goal: _____ %  _3%_

| Prime/Subcontractor* (Supplier Diversity Participant) | Ethnicity and Gender | Services | Amount | % of Bid |
|---|---|---|---|---|
| Sutton Ford | Caucasian | Vehicle supplier | 200,000 | 30 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| Subcontractor Total | | | | |

| Classification | Proposed Diversity Totals | |
|---|---|---|
| | Total Amount | % of Total Bid |
| MBE | 200,000 | 30 |
| WBE | | |
| LSB | | |

*M/WBE/LSB Subcontractor Assurance Statements for each subcontractor listed above must be attached to this form and included with the bid.

BB - 23 - 2

EXHIBIT A

MLGW 000054

## EXCEPTIONS:

The undersigned understands that exceptions are considered by MLGW as part of the bid for evaluation purposes. Only exceptions submitted by the bid due date will be considered. The undersigned declares that the following list states any and all variations from and exceptions to the Contract Documents and that, otherwise, it is the intent of this bid that the work be performed in strict accordance with the Contract Documents. The Bidder shall not attach the Bidder's contracts or agreements as an Exception. Acceptance of an Exception is at the sole discretion of MLGW. *MLGW will not accept any exceptions after the bid due date.*

Please see cover letter

BB - 24

EXHIBIT A                                                    MLGW 000055

In submitting this bid, the bidder agrees:

1.  To hold the bid open for 120 days from the date of the bid opening;
2.  To enter into and execute a contract, if awarded, on the basis of this bid and to furnish the required bonds;
3.  To accomplish the Work under the Contract Documents;
4.  To start the Work within 60 calendar days of Notice to Proceed;
5.  To complete the Work within 1095 calendar days of Notice to Proceed.
    (365 days x 3 years = 1095)

The full names and addresses of all persons and parties interested in this bid as principals on Contract No. 12077 are:

NAME:                    TITLE:                    ADDRESS:

see attached list

NAME OF COMPANY:                    Asplundh Tree Expert, LLC

SIGNATURE OF BIDDER:

PRINT NAME OF BIDDER:               Larry M. Moore

TITLE OF BIDDER:                    Senior Vice President

ETHNICITY OF OWNER:*                Caucasion

MALE  X  FEMALE ___ *

EMAIL ADDRESS OF BIDDER:            GHayden@Asplundh.com (Gene Hayden)

BUSINESS ADDRESS OF BIDDER:         708 Blair Mill Road, Willow Grove, PA   19090-1784

TELEPHONE NUMBER OF BIDDER:         615-979-1850

MOBILE TELEPHONE NUMBER OF BIDDER:  615-979-1850

FAX NUMBER OF BIDDER:               615-353-2191

DATE:                               3/13/19

*See the Definitions of Recognized Ownership Classifications article.

BB - 25

EXHIBIT A

MLGW 000056

**CONTRACTOR'S TENNESSEE LICENSE CERTIFICATION:**

The Bidder certifies that the Bidder is a licensed contractor as required by Tennessee Code Annotated Sections 62-6-102 through 62-6-125, as may be amended, relating to the licensing of General Contractors, as follows:

We/I, Larry M. Moore ("Contractor"), of Asplundh Tree Expert, LLC (City, County, and State), certify that we/I alone possess a current Tennessee license bearing the number 12252 with an expiration date of 10/31/20 registered in Davidson County, Tennessee and that the license covers the classification and value of work under these specifications on which this bid is being submitted."

Contractor: Asplundh Tree Expert, LLC

By: _____

Print Name: Larry M. Moore

Title: Senior Vice President

Contractor's classification and monetary limit within which this work will be performed: _____
Unlimited - BC-28; HC-5

**LAST ITEM ON PAGE**

BB - 26

EXHIBIT A

MLGW 000057



ASPLUNDH TREE EXPERT, LLC
708 BLAIR MILL RD.
WILLOW GROVE, PA  19090



EXHIBIT A

MLGW 000058





TN Department of Agriculture
*Solicitor Card*

Charter#
1845                                    96047

ASPLUNDH TREE EXPERT CO
GENE HAYDEN
1007 PEACHTREE
STREE-CHATTANOOGA TN
6949 CHARLOTTE PIKE, STE 263
NASHVILLE TN 37209
Expires: 12/31/2018

EXHIBIT A

MLGW 000059

# CONTRACT

C - 1

EXHIBIT A

MLGW 000060

## CONTRACT

### TABLE OF CONTENTS

| ARTICLE | DESCRIPTION | PAGE |
|---------|-------------|------|
| I. | PARTIES | C-4 |
| II. | COVENANT | C-4 |
| III. | WORK TO BE DONE | C-4 |
| IV. | DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION | C-4 |
| V. | TERM AND TERMINATION OF CONTRACT | C-5 |
| VI. | NON-APPROPRIATION | C-5 |
| VII. | PAYMENT | C-6 |
| VIII. | NOTICES | C-6 |
| IX. | CONTRACT INCLUDES | C-7 |
| X. | ASSIGNMENT OF CONTRACT; SUCCESSORS | C-7 |
| XI. | LAWS AND ORDINANCES; INDEMNIFICATION | C-7 |
| XII. | CONTRACTOR EMPLOYEES | C-7 |
| XIII. | LOCAL BIDDING PREFERENCE AND PRESENCE | C-8 |
| XIV. | BONDS AND INSURANCE | C-9 |
| XV. | TAXES | C-13 |
| XVI. | AUTHORITY OF MLGW | C-13 |
| XVII. | BREACH OF CONTRACT | C-13 |
| XVIII. | PROVISIONS FOR EMERGENCIES | C-14 |
| XIX. | MODIFICATIONS | C-14 |
| XX. | RELEASE OF LIABILITY | C-15 |
| XXI. | PRIOR AGREEMENTS, CAPTIONS AND CAPITALIZATIONS | C-15 |
| XXII. | NO WAIVER OF RIGHTS | C-15 |
| XXIII. | PRICING OF CONTRACT CHANGE ORDERS | C-15 |
| XXIV. | RATE OF PROGRESS AND TIME OF COMPLETION | C-19 |
| XXV. | EXTENSION OF TIME | C-20 |
| XXVI. | LABOR | C-20 |
| XXVII. | EQUAL OPPORTUNITY CLAUSE | C-21 |
| XXVIII. | AUDIT CLAUSE | C-22 |
| XXIX. | INDEPENDENT CONTRACTOR | C-24 |
| XXX. | SUPPLIER DIVERSITY POLICY | C-24 |
| XXXI. | SUPPLIER DIVERSITY REPORTING AND TRACKING | C-24 |
| XXXII. | DRUG FREE WORKPLACE | C-25 |
| XXXIII. | APPLICABLE LAW | C-25 |
| XXXIV. | COUNTERPARTS | C-25 |
| XXXV. | BACKGROUND CHECKS | C-25 |
| XXXVI. | BUSINESS ETHICS | C-25 |
| XXXVII. | STANDARDS OF BUSINESS CONDUCT | C-26 |
| XXXVIII. | CONFIDENTIAL INFORMATION | C-28 |
| XXXIX. | DEBARMENT | C-28 |
| XL. | ELGIBILITY OF FORMER EMPLOYEES | C-30 |

C - 2

EXHIBIT A

MLGW 000061

XLI.    MINOR IRREGULARITY                                          C-30

        SIGNATURE PAGE                                             C-31
        PERFORMANCE BOND                                          C-32
        CONTRACTOR'S LABOR AND MATERIALS PAYMENT BOND             C-37
        EXHIBIT A - ATTESTATION REGARDING PERSONNEL
            USED IN CONTRACT PERFORMANCE                          C-41

**NEXT PAGE**

C - 3

EXHIBIT A                                    MLGW 000062

MEMPHIS LIGHT, GAS AND WATER

CITY OF MEMPHIS

MEMPHIS, TENNESSEE

CONTRACT NAME: LINE CLEARANCE

CONTRACT NO. 12077

CONTRACT

**I.    PARTIES:**

THIS AGREEMENT ("Contract") made and entered into this __30th__ day of August __,
2019__ by and between the Memphis Light, Gas and Water Division ("MLGW" or "Division")
of the City of Memphis, Tennessee and Asplundh Tree Expert, LLC
("Contractor").

**II.    COVENANT:**

WITNESSETH: In consideration of the mutual agreements, covenants, promises and
representations and other good and valuable considerations the receipt and sufficiency of which
are acknowledged, the parties intending to be legally bound agree, as follows:

**III.    WORK TO BE DONE:**

The Contractor shall furnish supervision, labor, transportation, equipment and material  in-
cluding equipment, tools, and supplies as required to trim and or remove all trees and brush.
Also, to trim trees using the most arborcultural techniques, and perform other utility forestry
services including chemical spraying, transmission right of way clearing and mowing, clean up
and disposal of materials, and to provide clearance for the electric conductors of MLGW. In
addition, this contract may include emergency storm work. -------------------------------
------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------
------------------------------------------------------------------------------------------

("Work"). The Work will be of good quality, free from faults and defects, all as called for in
strict accordance with the Contract Documents (as defined). The Contractor is to fully
understand the facilities, difficulties and restrictions attending and execution of the work
required.  The Work under this Contract will be performed in its entirety during the allocated
time for the Work. MLGW will have the right to specify to the Contractor the sequence of the
tasks performed.  All Work performed by the Contractor will be subject to the inspection of the
MLGW Representative (as defined).

EXHIBIT A

MLGW 000063

## IV.    DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION:

The date of commencement of the Work shall be the date of this Contract unless a different date is stated in a Notice to Proceed Letter issued by MLGW.

The Contract time shall be measured from the date of commencement.

## V.    TERM AND TERMINATION OF CONTRACT:

This Contract is for a term of 60 months from the date of the notice to proceed.

Intentionally Blank

MLGW may terminate the Contract without cause by first giving 90 days prior written notice of MLGW's intention to do so. This Contract may also be terminated by MLGW for any reason described in the Breach of Contract Article. If the Contract is so terminated, MLGW may, according to law, enter upon and take possession of the Work or any part, and by purchase of necessary materials and equipment complete said Work with MLGW's own forces or MLGW may cause said Contract to be completed by other persons by contract without advertising, or MLGW may re-advertise and re-let the uncompleted portions of said Contract. All expenses or financial loss to MLGW by any of the above methods of completing said Contract shall be deducted by MLGW out of monies then due, or to become due, the Contractor under this Contract. In case such expense shall exceed the amount which would have been payable under this Contract had the Contractor completed the Work, the Contractor or the Contractor's sureties shall pay such excess to MLGW. Should such expense be less than the amount payable under this Contract, had the Contractor completed the Work, the Contractor shall receive the difference after deducting the amount retained.

## VI.    NON-APPROPRIATION:

The State of Tennessee statutes prohibit the obligation and expenditure of public funds beyond the fiscal year for which a budget has been approved.  Contracts, purchases or other obligations that may arise beyond the end of the current fiscal year shall be subject to approval of budget funds.

EXHIBIT A

MLGW 000064

**VII.**    <u>PAYMENT</u>:

The Contractor shall present electronically or via mail in duplicate to the MLGW User Area Representative as well as via email to cminvoices@mlgw.org on a weekly, bi-weekly or monthly basis:

    1.    An error-free original invoice for work completed and accepted by the MLGW Representative;

    2.    A completed Supplier Diversity Activity Report Form (if applicable); and

    3    Copies of subcontractor invoices (if applicable).

The Contractor's invoice shall be an amount as established by the bid price as set out in the bid. Each invoice should show the company name and remittance address of the Contractor, Contract Number, the Contractor's invoice number and date.

In consideration of performance by the Contractor of all conditions and provisions of the Contract Documents to MLGW's satisfaction, MLGW shall pay monthly within 30 days of approval by MLGW, less 5% retainage (if applicable). Retainage will be paid for acceptable work at the completion of the Contract.

MLGW reserves the right to withhold payment to the Contractor if any contractual obligations do not comply such as, but not limited to, non-conforming work; repairs and/or corrective work made necessary by the actions or inactions of the Contractor; failure to provide ethics reports, drug testing reports, or diversity reports; and for credits for overpayments, and non-complying insurance certificates and coverage. Payment will be withheld for any work not complying with the Contract Documents, including incomplete and inaccurate documentation of the Work, until such defects and/or omissions are corrected to the satisfaction of the MLGW Representative. MLGW reserves the right to withhold payments until total indebtedness of the Contractor to MLGW is paid in full including indebtedness to MLGW by any subcontractor(s).

**VIII.**    <u>NOTICES</u>:

All notices required or given pursuant to this Contract shall be deemed to have been duly served if delivered in person to an authorized representative or sent by electronic mail ("email") or registered or certified first class United States mail, postage prepaid, returned receipt requested, to the following address:

As to MLGW:

Memphis Light Gas and Water Division
Contracts Management Department
220 South Main Street (38103)
P. O. Box 430
Memphis, TN 38101-0430
Email: state@mlgw.org

As to Contractor:

Asplundh Tree Expert, LLC
C/O: Gene Hayden
708 Blair Mill Road
Willow Grove, PA  19090
Email: ghayden@asplundh.com

C - 6

EXHIBIT A

MLGW 000065

## IX.   CONTRACT INCLUDES:

It is understood and agreed that the bid, Contract, General, Supplementary and other Conditions and specifications which may be furnished by MLGW for the guidance and assistance of the Contractor, are each and all included in the Contract ("Contract Documents"). The Contract Documents comprising the complete contract should supplement, but not duplicate each other and together constitute one (1) complete set of Specifications. Any work exhibited in the one and not in the other shall be executed just as if it had been presented in both. The Work shall be completed in every respect, according to the complete designs as decided and determined by MLGW.

## X.   ASSIGNMENT OF CONTRACT; SUCCESSORS:

All of the terms, covenants, representations, warranties and conditions of this Contract shall bind upon and inure to the benefit of, and be enforceable by, the parties and the parties' respective successors.

The Contractor shall not assign the Work or any part without the previous written consent of MLGW. The Contractor shall not assign, by power of attorney or otherwise, the monies payable under this Contract without the previous written consent of MLGW.

If the Contractor, with the consent of MLGW, assigns all or any part of this Contract, the Contractor shall continue to be fully responsible to MLGW under the terms and provisions of the Contract, if not fully performed by assignee(s) and for the acts, omissions and performance of the assignee(s).

## XI.   LAWS AND ORDINANCES; INDEMNIFICATION:

The Contractor shall comply with all laws, ordinances and regulations pertaining to the Work and shall, with legal counsel acceptable to MLGW, defend MLGW and the City of Memphis and their employees, officials, representatives and agents against any and all claims, loss, damage, injury, expenses, judgments, costs and attorney's fees, to the proportionate extent such is caused by the negligent Work by the Contractor, the Contractor's agents, representatives, subcontractors, employees and assignees of this Contract whether or not such claim, damage, loss or expense is caused in part by a party or person indemnified.

MLGW is subject to the Tennessee Public Records Act. As such the Contractor's proposal and Contract may be examined by the public after it has been evaluated by MLGW and a decision has been made.

## XII.   CONTRACTOR EMPLOYEES:

The Contractor will furnish the personnel that shall be required to complete the Work in a timely manner and within the Contract amount. The Contractor, at the Contractor's sole cost and expense, will train employees prior to the start of the Work and shall submit documentation to the MLGW Representative that the Contractor's employees have been trained to the satisfaction of MLGW.

EXHIBIT A

MLGW 000066

## XIII.  LOCAL BIDDING PREFERENCE AND PRESENCE:

### Local Bidding Preference:

MLGW shall give Local Bidding Preference in the awarding of contracts and making purchases whenever applying such a preference is reasonable in light of the dollar-value of the bids received in relation to such expenditures.

**Definitions as used in this article have the following meanings:**

Contract shall mean any contract, purchase order, or agreement (other than a lease, collective bargaining agreement, a contract funded by federal monies supplied under any federal grant program or plan, contracts for purchased power and gas, loans, grants, financial assistance, and banking contracts), awarded under the MLGW Procurement Policy and whose cost is paid from funds belonging to or administered by MLGW.

Local Business shall mean that the supplier, consultant or contractor has a valid domestic type Shelby County and Tennessee business license, issued at least one (1) year prior to the bid or proposal opening date, to do business in said locality that authorizes the business to provide the goods, services, or construction to be purchased, and the physical principal business address located within the city limits of Memphis, Tennessee, in an area zoned for the conduct of such business, from which the Contractor operates or performs the majority of the Contractor's business on a day-to-day basis, and also from which the Contractor conducts 100% of the necessary functions to maintain or fulfill the Contract with MLGW. Post Office boxes are not verifiable and shall not be used to establish said address.

### Eligibility and Application:

To be eligible for the Local Bidding Preference, the supplier, consultant, or contractor must provide a copy of the Shelby County business license and must also provide proof that City of Memphis personal property and real estate taxes were appropriately paid. Proof of payment includes a copy of the receipt issued by the Treasurer for the City of Memphis or a screenshot from the Treasurer's website evidencing payment of the taxes. The web address is: http://epayments.cityofmemphis.org.

### Application of Local Bidding Preference:

In the bidding of, or letting contracts for procurement of supplies, materials, equipment and services, with a total price of $15,000 or more, Local Bidding Preference shall mean that if the lowest responsive bidder is a regional or non-Local Business, then all bids received from responsive Local Businesses are decreased by 5%. The original bid is not changed; the 5% decrease is calculated only to determine the Local Bidding Preference. The Local Bidding Preference cost differential is not to exceed $100,000.

If a tie occurs between a Local Business and one (1) or more non-Local Businesses meeting specifications, the ties shall be broken in favor of the Local Business.

**NEXT PAGE**

C - 8

EXHIBIT A

MLGW 000067

**Local Bidding Presence:**

If there is no Local Bidding Preference designation, either due to non-participation or non-eligibility after the 5% differential, then Local Bidding Presence will be considered.

**Eligibility and Application:**

Local Bidding Presence will be demonstrated by the total number of individuals a business employs within Shelby County, Tennessee. For procurement, a 5% differential not to exceed $100,000 shall be granted for the business that demonstrates the highest number of total employees located within Shelby County, Tennessee at the time of the bid response.

If a tie occurs between a Local Business and one (1) or more non-Local Businesses meeting specifications, the ties shall be broken in favor of the Local Business.

**Exceptions to Local Bidding Preference and Local Bidding Presence:**

The Local Bidding Preference or Local Bidding Presence established in no way prohibits the right of MLGW from making awards based on applying the MLGW Supplier Diversity Policy or law. The Local Bidding Preference or Local Bidding Presence criteria shall not apply to purchases or contracts which are funded, in whole or in part, by a governmental entity and the laws, regulations, or policies governing such funding prohibit application of the Local Bidding Preference or Local Bidding Presence. Nor shall the Local Bidding Preference or Local Bidding Presence apply to purchases made or contracts let under emergency or noncompetitive situations.

Application of the Local Bidding Preference or Local Bidding Presence criteria to a purchase, contract or category of contracts for which MLGW is the awarding authority may be waived upon written justification regarding the character, responsibility and fitness of all persons, firms, or corporations submitting bids or proposals.

Further, the Local Bidding Preference or Local Bidding Presence established does not prohibit MLGW from giving any other preference permitted by law or policy besides the authorized preference.

Application of the Local Bidding Preference or Local Bidding Presence to a purchase or contract may be waived by the Board of Commissioners ("Board" or "Commissioner(s)") upon recommendation by the applicable Vice President and approval by the President.

## XIV.   BONDS AND INSURANCE:

1.   **Bonds** - The Contractor shall furnish a performance bond for 100% of the contract price (form attached) executed by a surety company acceptable to MLGW duly authorized to do business in Tennessee. **Note: The performance bond shall be the annual cost of the estimated contract value for each year.** The Contractor shall furnish a labor and materials payment bond for 25% of the contract price if over $100,000 (form attached) executed by a surety company acceptable to MLGW duly authorized to do business in Tennessee. The bonds shall continue for the duration of the warranty period as security for the payment of all persons performing labor and furnishing materials for this Contract.

C - 9

EXHIBIT A                                MLGW 000068

2. **Insurance Requirements** – Before commencing Work under this Contract, the Contractor shall furnish MLGW with an original certificate of insurance from a company acceptable to MLGW licensed to do business in Tennessee and having an A.M. BEST FPR rating of no less than A:IX. The insurance certificate shall name MLGW, MLGW's officials, employees, agents, as additional insureds except for workers' compensation and professional liability all to the extent of the contractor's obligations under the Contract. The additional insureds shall fully cooperate with the Contractor, its representatives and insurers on any claim. The certificate shall clearly show this Contract Number. **Proof of additional insured status must be provided with a copy of the additional insured endorsement from the Contractor's insurance carrier.**

The insurance certificate shall state waivers of subrogation have been provided by endorsement to the Workers' Compensation and Employer's Liability Insurance, Commercial General Liability Insurance and Business Automobile Liability Insurance policies as required by Section XIV paragraphs 3, 4, and 5. Failure to maintain the required insurance may cause termination of the Contract. Liability, umbrella and excess policies must contain no cross liability exclusions all to the extent of the Contractor's obligations under the Contract.

If insurance coverage will expire prior to completing the Contract, the Contractor shall furnish a certificate of insurance evidencing renewal of the coverage to MLGW. The certificate of insurance shall show this Contract number.  Should MLGW require copies, the copies will be certified by the insurance company and mailed to MLGW within 30 days of request.  Should any policies be canceled before the expiration date, the Contractor shall mail 30 days written notice of cancellation and non-renewal to MLGW by certified  or registered first class United States mail, postage prepaid, return receipt requested. The Contractor shall cause the Contractor's new insurance company to furnish a certified certificate of insurance to MLGW evidencing the coverage listed above within 10 days after notice of cancellation and non-renewal. Failure to furnish evidence of insurance shall be a material breach.

If the Contractor has any self-insured retentions under the minimum required coverage, the Contractor must identify on the certificate of insurance the nature and amount of such self-insured retentions and provide satisfactory evidence of financial responsibility for such obligations. All self-insured retentions will be the Contractor's sole responsibility.

The Contractor shall allow no subcontractor to commence performance under this Contract until the insurance certificates of the subcontractor(s), reflecting coverage proportionate to that required of the Contractor, have been obtained, submitted and approved by the MLGW Contracts Management Department.

Failure by MLGW to review certificates of insurance and endorsements will not relieve the Contractor from the Contractor's requirements to maintain the required insurance nor be construed as a waiver of the Contractor's obligation to maintain such insurance. MLGW may obtain certified copies of the Contractor's policies applicable to this Contract.

**Insurance Coverage**: Unless modified by the MLGW Contracts Management Department, the insurance coverage described in Sections XIV 3 – 7 is required.

C - 10

EXHIBIT A

MLGW 000069

3. **Workers' Compensation and Employer's Liability Insurance:** The Contractor shall obtain and maintain during the life of this Contract workers' compensation insurance in statutory limits, including occupational disease, covering all employees acting within the course and scope of their employment. Coverage shall also include employer's liability insurance at the following limits:

A.  Bodily injury by accident        $500,000 each accident;

B.  Bodily injury by disease        $500,000 each employee;

C.  A waiver of subrogation in favor of MLGW and MLGW's commissioners, officers, agents, and employees to the extent of the Contractor's obligations under the contract.

4. **Commercial General Liability Insurance:**

A.  The Contractor shall maintain occurrence version commercial general liability insurance. Such insurance shall cover bodily injury including death and property damage, providing the following limits:

    i.    Each occurrence                                    $1,000,000;

    ii.   General aggregate                                  $2,000,000;

    iii.  Products and Completed Operations aggregate        $2,000,000;

    iv.   Personal Injury                                    $1,000,000.

B.  Coverage shall be on ISO occurrence form CG 00 01 (or substitute form providing equivalent or greater coverage) and include:

    i.    Premises and Operations Liability Coverage;

    ii.   Personal Injury and Advertising Injury Liability Coverage;

    iii.  Coverage for liability assumed under insured contracts, for independent contractors, for damage to premises rented to the Contractor, and, a "separation of insureds" clause;

    iv.   Products and Completed Operations Liability Coverage;

    v.    A Designated Location(s) General Aggregate Limit endorsement covering all MLGW locations where contracted work and services will be performed;

    vi.   A waiver of subrogation in favor of MLGW and MLGW's commissioners, officers, agents, and employees to the extent of the Contractor's obligations under the contract.

C - 11

EXHIBIT A

MLGW 000070

5. **Business Automobile Liability Insurance:**

   A. The Contractor shall maintain occurrence version business automobile liability insurance in the minimum limits stated below. If the insurance contains a general aggregate limit, it shall apply separately to this Contract or be no less than two (2) times the occurrence limit. The insurance shall include coverage for bodily injury, including death and property damage, providing the following limit:

      i. Each accident          $1,000,000.

   B. Business automobile coverage shall be written on ISO form CA 00 01, CA 00 05, CA 0012, CA 00 20 (or substitute form providing equivalent or greater coverage) and include:

      i. Coverage for liability arising out of any auto (including owned, hired or non-owned automobiles);

      ii. Coverage for liability assumed under insureds contracts;

      iii. Additional insured endorsement (primary and non-contributory) naming MLGW and MLGW's commissioners, officers, agents, and employees to the extent of the Contractor's obligations under the contract;

      iv. A waiver of subrogation in favor of MLGW and MLGW's commissioners, officers, agents, and employees to the extent of the Contractor's obligations under the contract.

6. **Umbrella Liability Policy:**

   A. The Contractor shall maintain during the life of this Contract, umbrella liability insurance providing limits in excess of the Contractor's scheduled underlying insurance policies, which shall include, but not be limited to:

      i. Commercial general liability insurance policy;

      ii. Business automobile liability insurance policy;

      iii. Employer's liability coverage provided by the scheduled workers' compensation policy.

   B. The umbrella liability insurance policy will provide limits of not less than $2,000,000 above the scheduled underlying policies. The coverage will:

      i. Contain pay on behalf wording;

      ii. Have an effective date concurrent with the commercial general liability policy.

EXHIBIT A                                           MLGW 000071

7.  **Other**: MLGW reserves the right, during the term of the Contract, to review the type, nature and amount of insurance provided and to require the Contractor to provide insurance of the type, nature and amount customarily provided for such work, if not previously provided.

## XV.  TAXES:

The Contractor shall be exclusively liable for the payment of all federal, state and local taxes. MLGW shall reimburse the Contractor for any base sales and use taxes, arising because of the use by the Contractor of MLGW materials and supplies to perform this Contract, exclusive of any penalties including, but not limited to, interest penalties, enforcement fees, costs or expenses.

## XVI.  AUTHORITY OF MLGW:

MLGW shall designate a project representative ("MLGW Representative") who shall have the final decision whether or not the Work complies with the Contract Documents. The MLGW Representative shall, during the term of the Contract, be able to stop the Work in whole or part if in the MLGW Representative's opinion; the work does not comply with the Contract Documents. If in the opinion of the Contractor, the decision made is not under the meaning and intent of the Contract Documents, the Contractor and MLGW agree to adhere to the Contractor Appeals Process. Such direction shall not relieve the Contractor from performing the Work under the Contract Documents.

The MLGW Representative may enter any facility or worksite that the Contractor uses to perform this Contract to ensure that the Work is being conducted as required by the Contract Documents. The Contractor shall promptly furnish all reasonable assistance required by the MLGW Representative.

## XVII.  BREACH OF CONTRACT:

Should the Contractor, in the opinion of the MLGW:

1.  Fail or refuse to perform the Work in whole or part after notice by MLGW to proceed;

2.  Abandon the Work;

3.  Assign this Contract or any part thereof without previous written consent of MLGW;

4.  Allow any official or employee of the City of Memphis or MLGW at any time to become directly or indirectly interested in this Contract through furnishing supplies or performing services;

5.  Unnecessarily or unreasonably delay the Work at any time;

6.  Willfully or negligently violate any provisions of this Contract;

C - 13

EXHIBIT A                                             MLGW 000072

7. Fail or refuse to fully complete the Work within the time specified or extension of time granted by MLGW;

8. Try to intimidate MLGW employees, representatives or agents;

9. Make material misstatements on any documents submitted with the bid or after award of contract;

10. Make significant deviations from subcontractor or supplier participation commitments;

11. Fail or refuse to comply with the terms and provisions of the Contract and or Contract Documents;

12. Fail to complete the work within the specified time allotted for completion of Work as set forth in the proposal and otherwise as set forth in the Contract Documents;

MLGW may terminate this Contract by notifying the Contractor in writing. MLGW will then have the right to exercise any of the rights and remedies granted to MLGW in Article V. Term and Termination Agreement above.

Should any monies be due to MLGW, such money shall be promptly paid to MLGW. MLGW shall recover from the Contractor of all cost of collection, including attorney fees, if monies are not timely paid. In such case, the Contractor shall also be liable for interest on the outstanding amount due at the maximum rate allowed by law.

## XVIII.  PROVISIONS FOR EMERGENCIES:

Whenever, in the opinion of MLGW, the Contractor has not taken sufficient actions to protect the safety and performance of the Work and MLGW facilities, MLGW may perform those activities and furnish those materials MLGW deems necessary to protect the safety and performance of the Work and the MLGW facilities. Such actions shall not relieve the Contractor of the Contractor's obligation to comply with the terms and provisions of the Contract Documents. The cost and expense of such actions and materials shall be borne by the Contractor and shall be deducted from any amounts due the Contractor if not paid by the Contractor.

## XIX.  MODIFICATIONS:

Modifications to this Contract shall only be effective when made in writing and signed by both parties. The Contractor agrees MLGW shall have the right, when in MLGW's opinion it becomes necessary in prosecution of the Work, to make alterations or modifications in the Work covered by this Contract. Alterations or modifications shall only be made by the order of MLGW. The order shall be of no effect until the price to be paid for the Work or material under such altered or modified contract has been agreed upon in writing and signed by the Contractor and MLGW. The Contractor shall not be allowed to recover anything for work or materials caused by any alterations or modifications of this Contract, unless an order is made and

C - 14

EXHIBIT A

MLGW 000073

agreement signed. Nor shall the Contractor be allowed to recover more for the Work and materials than the agreed price.

## XX. RELEASE OF LIABILITY:

Before receiving final payment for the Work, the Contractor shall complete a Release of Liability and a Fair Employment Release in a form satisfactory to MLGW. The acceptance by the Contractor of the final payment shall operate as a full release and waiver to MLGW and MLGW's representatives, employees, commissioners and agents from all claims and liabilities against MLGW.

## XXI. PRIOR AGREEMENTS, CAPTIONS AND CAPITALIZATIONS:

The written terms and provisions of this Contract shall supersede all prior agreements of MLGW, or MLGW's representatives, employees, and agents. The captions and capitalizations used in the Contract Documents are for reference only and are not part of the Contract Documents.

## XXII. NO WAIVER OF RIGHTS:

The failure of both parties to exercise any rights in the Contract Documents shall not be construed as a waiver of such rights or the right to assert such terms or rights in the future.

## XXIII. PRICING OF CONTRACT CHANGE ORDERS:

The contract in this section will supplement and take precedence over all other change order pricing contract provisions in the Contract Documents provided by MLGW. These contract provisions will govern the pricing and administration of all change order proposals to be submitted by the Contractor and all other lower tier sub-subcontractors (all referred to as Contractor). If a conflict arises between the other contract documents used for the project, the change order pricing contract provisions in this section shall govern.

The Contractor agrees the Contractor will incorporate this section into all agreements with lower tier contractors. These change order pricing provisions apply to all types of contracts and subcontracts, including lump sum (or fixed price contracts), unit price contracts, and cost plus contracts with or without a guaranteed maximum. It is further understood these change order provisions will apply to all methods of change order pricing, including lump sum change order proposals, unit price change order proposals, and cost plus change order proposals.

Whenever change order proposals to adjust the contract price become necessary, MLGW will select the method of pricing to be used by the Contractor under the pricing provisions found in this section. The option will be:

1.    For lump sum change order proposals, the Contractor will submit a properly itemized proposal covering the additional work or the work to be deleted. This proposal will be itemized for the components of work and segregated by labor, material, and equipment in

C - 15

EXHIBIT A                                           MLGW 000074

a detailed format satisfactory to MLGW. MLGW will require itemized change orders on all change order proposals from the Contractor, subcontractors, and sub-subcontractors regardless of tier. Details to be submitted will include detailed line item estimates showing detailed materials quantity take-offs, material prices by item and related labor hour pricing information and extensions (by line item or by drawing).

2. Estimated labor costs to be included for self-performed work shall be based on the actual cost per hour paid by the Contractor for those workers or crews of workers who the Contractor reasonably anticipates will perform the change order work. Estimated labor hours shall include hours only for those workers and working foremen directly involved in performing the change order work. Supervision above the level of working foremen (such as general foremen, superintendent, project manager, etc.) is included in the markup percentage as outlined later in this section. Note: No separate allowance for warranty expense will be allowed as a direct cost of a change order. Costs attributed to warranty expenses will be covered by the markup percentages as outlined later in this section.

3. Labor burden allowable includes employer's net actual cost of payroll taxes (FICA, Medicare, SUTA, FUTA), net actual cost for employer's cost of union benefits (or other usual and customary fringe benefits if the employees are not union employees), and net actual cost to employer for workers' compensation insurance taking into consideration applicable premium adjustments such as adjustments for experience modifiers, premium discounts, dividends, rebates, expense constants, assigned risk pool costs, net cost reduction due to policies with deductibles for self-insured losses, and assigned risk rebates. The Contractor shall reduce the Contractor's standard payroll tax percentages to properly reflect the effective cost reduction due to the estimated impact of the annual maximum wages subject to payroll taxes. (An estimated percentage for labor burden may be used for pricing change orders. However, the percentage used for labor burden in price change orders will be examined when the project is concluded and an adjustment to the approved change orders will be processed if it is determined that the actual labor burden percentage should have been more or less than the estimated percentage used.)

4. Estimated material change order costs shall reflect the Contractor's reasonably anticipated net actual cost for the purchase of the material needed for the change order work. Estimated material costs shall reflect cost reductions available to the Contractor due to "non-Cash" discounts, trade discounts, free material credits, and/or volume rebates. "Cash" discounts (e.g., prompt payment discounts of 2% or less) available on material purchases for change order work shall be credited to MLGW if the Contractor is provided MLGW funds in time for the Contractor to take advantage of any such "Cash" discounts. The portion of any "Cash" discounts greater than 2% will not be considered "non-Cash" discount for this section. Price quotations from material suppliers must be itemized with unit prices for each specific item to be purchased. "Lot pricing" quotations will not be sufficient substantiating detail.

5. Allowable equipment change order estimated costs may include an amount for rental of major equipment specifically needed to perform the change order work (defined as tools

C - 16

EXHIBIT A

MLGW 000075

and equipment with an individual purchase cost of more than $750). For Contractor owned equipment, the "bare" equipment rental rates to be used for pricing change order proposals shall be 75% of the monthly rate in the most current publication of The AED Green Book divided by 176 to arrive at a maximum hourly rate to apply to the hours the equipment is used performing the change order work. For Contractor owned equipment the aggregate equipment rent charges for any single piece of equipment used in all change order work shall be limited to 150% of the fair market value of the piece of equipment when the first change order is priced involving usage of the piece of equipment. Fuel, necessary to operate the equipment will be considered as a separate direct cost associated with change order work.

6.  The maximum markup percentage fee to be paid to any contractor (regardless of tier) on self-performed work shall be a single markup percentage not-to-exceed 15% of the net direct cost of:

> A. Direct labor and allowable labor burden costs applicable to the change order or extra work;

> B. The net cost of material and installed equipment incorporated into the change or extra work; and

> C. Net rental cost of major equipment and related fuel costs necessary to complete the change in the Work.

The markup computed using the above formula shall be allocated 2/3 to cover overhead costs directly attributable to the field overhead costs related to processing, supervising and performing, the change order work, and the remaining 1/3 to cover home office overhead costs and profit.

7.  Regarding pricing of the portion of the change order proposals involving work performed by lower tier contractors, the maximum markup percentage fee allowable to the contractor supervising the lower tier contractor's work shall not exceed 5% of the net of all approved change order work performed by all subcontractors combined for any change order proposal.

The markup computed using the above formula shall be allocated 2/3 to cover overhead costs directly attributable to the field overhead costs related to processing, supervising and performing of the change order work, and the remaining 1/3 to cover home office overhead costs and profit.

8.  Change order cost adjustments due to increase or decrease in bond or insurance costs (if applicable) shall not be subject to any markup percentage fee.

9.  As a further clarification, the agreed upon markup percentage fee is intended to cover the Contractor's profit and all indirect costs associated with the change order work. Items intended to be covered by the markup percentage fee include, but are not limited to:

EXHIBIT A

MLGW 000076

home office expenses, branch office and field office overhead expense of any kind; project management; superintendents, general foremen; estimating, engineering; coordinating; expediting; purchasing; detailing; legal, accounting, data processing or other administrative expenses; shop drawings; permits; auto insurance and umbrella insurance; pick-up truck costs; and warranty expense costs. The cost for the use of small tools is also to be covered by the markup percentage fee. Small tools shall be defined as tools and equipment (power or non-power) with an individual purchase cost of less than $750.

10.    The application of the markup percentages referenced in the preceding paragraphs will apply to both additive and deductive change orders. With a deductive change order, the credit will be computed by applying the sliding scale percentages as outlined previously so a deductive change order would be computed as an additive and deductive work. The additions and deductions will be netted and the markup percentage adjustments will apply to the net amount.

11.    In no event will any lump sum or percentage amounts for "contingency" be allowed to be added as a separate line item in change order estimates. Unknowns attributable to labor hours will be accounted for when estimating labor hours anticipated to perform the Work. Unknowns attributable to material scrap and waste will be estimated as part of material costs.

12.    The Contractor's proposals for changes in the contract amount or time shall be submitted within seven (7) calendar days of MLGW's request, unless MLGW extends such period of time due to the circumstances. If such proposals are not received in a timely manner, if the proposals are not acceptable to MLGW, or if the changed work should be started immediately to avoid damage to the project or costly delay, MLGW may direct the Contractor to proceed with the changes without waiting for the Contractor's proposal or for the formal change order to be issued. When the Contractor's proposal is unacceptable, MLGW may direct the Contractor to proceed with the changed work on a cost-plus basis with an agreed upon "not-to-exceed" price for the work to be performed. Such directions to the Contractor by MLGW shall be confirmed in writing by a "Notice to Proceed on Changes" letter within seven (7) calendar days. The cost, credit, or time extensions will be determined by the parties as soon as possible and incorporated in a Change Order to the Contract.

13.    If the Contractor has been required to provide insurance and bonds as part of the base contract price, a final contract change order will be processed to account for the Contractor's net increase or decrease in insurance or bond premium costs associated with change orders to the Contractor's base contract price.

14.    As an alternative to lump sum change order proposals, MLGW or the Construction Manager acting with the approval of MLGW may choose the option to use Contract Unit Prices. Agreed upon contract unit prices shall be the same for added quantities. Unit Prices are not required to be used for pricing change orders where other methods of pricing change order work are more equitable.

C - 18

EXHIBIT A

MLGW 000077

The Contractor will submit, within seven (7) days after receipt of MLGW's written request for a unit price proposal, a written unit price proposal itemizing the quantities of each item of work for which there is an applicable contract unit price. The quantities must be itemized in relation to each specific contract drawing.

Contract unit prices will net differences of quantities of the same item. Such contract unit prices will be considered to cover all direct and indirect costs of furnishing and installing the item including the subcontractor's markup percentage fee. Adjustments to unit rates will apply to each unit uniformly.

15. The Contractor agrees that the Contractor is responsible for submitting accurate cost and pricing data to support the Contractor lump sum change and cost plus change order proposals or other contract price adjustments under the Contract. The Contractor further agrees to submit change order proposals with cost and pricing data which is accurate, complete, current, and under the terms regarding pricing of change orders.

16. The Contractor agrees that any designated MLGW Representatives will have the right to examine, copy or scan the records of the Contractor, and any lower tier contractors during the contract period and up to three (3) years, or longer if required by law, after final payment is made on the Contract to verify the accuracy and appropriateness of the pricing data used to price all change order proposals and claims. The Contractor agrees that if MLGW determines the cost and pricing data submitted (whether approved or not) was inaccurate, incomplete, not current, or not in compliance with the terms regarding pricing of change orders, a contract price adjustment will be made. Such post-approval contract price adjustments will apply to all levels of contractors and subcontractors and to all types of change order proposals including lump sum change orders, unit price change orders, and cost-plus change orders.

17. The Contractor shall require all lower tier contractors to provide a breakdown of allowable labor and labor burden cost information as outlined in this section. This information will evaluate the potential cost of labor and labor burden related to change order work. The Contractor represents this information is an accurate estimate of the Contractor's actual labor and labor burden cost components. This information is not intended to establish fixed billing or change order pricing labor rates. However, when change orders are priced, the submitted cost data for labor rates may price change order work. The accuracy of any agreed upon labor cost components used to price change orders will be subject to later audit. Approved change order amounts may be adjusted later to correct the impact of inaccurate labor cost components if the agreed upon labor cost components are determined to be inaccurate.

## XXIV.  RATE OF PROGRESS AND TIME OF COMPLETION:

The Contractor agrees to complete each portion of the Work by the date specified in Contract Documents or by MLGW, with time being of the essence. The Work shall begin in a timely manner and be continued through completion during normal working hours unless otherwise specified by the MLGW Representative. The Contractor shall maintain and operate a workforce

C - 19

EXHIBIT A                                    MLGW 000078

sufficient to meet the requirements of this provision. The Work is completed when proper documentation is submitted to and accepted by the MLGW Representative.

The Contractor expressly covenants and agrees that in completing the Work within the time specified, the Contractor has considered and made allowances for all of the ordinary and reasonably anticipated delays and hindrances. This includes weather normally occurring or reasonably anticipated to occur in the metropolitan geographic area of Shelby County, Tennessee during the time of performance of this Contract, incident to such Work, whether growing out of delays in securing workers, or otherwise.

## XXV.  EXTENSION OF TIME:

Should the Contractor be delayed in performing the Work due to matters not reasonably expected to occur and not within the Contractor's reasonable control including, but not limited to:

1.    Severe weather not normally occurring or anticipated to occur in the metropolitan geographic area of Shelby County, Tennessee during the time of performance of the Contract;

2.    Government directives;

3.    Shortage of material due to direct supplier breach;

The Contractor shall be entitled to such extension of time as granted by MLGW in writing. However, the request for extension of time shall be made to MLGW in writing within two (2) days from the time when such alleged cause for delay shall occur. Extension of time shall be the Contractor's sole remedy for the delay.

## XXVI.  LABOR:

The Contractor will furnish the personnel that shall be required to complete the Work in a timely manner and within the Contract amount. The Contractor at the Contractor's sole cost and expense will train employees prior to the start of the Work and shall submit documentation to the MLGW Representative that the Contractor's employees have been trained to the satisfaction of MLGW.

The Contractor shall, under the United States Immigration Reform and Control Act of 1986 ("IRCA"), as amended, and with all regulations, verify the identity and employment eligibility of all persons hired for work under this Contract, which includes completing and retaining the Employment Eligibility Verification Form ("I-9") to ensure employers are hiring individuals authorized to work in the United States. Further, the Contractor shall indemnify and hold harmless MLGW and MLGW's agents from violation of immigration laws. MLGW at MLGW's discretion may review such forms as provided for in the Audit Clause of this Contract.

Under Tennessee Code Annotated Section 50-1-103 neither party shall knowingly employ, recruit or refer for a fee for employment, an illegal immigrant.

EXHIBIT A

MLGW 000079

The Contractor shall acknowledge MLGW is prohibited by law and policy from hiring illegal immigrants. The Contractor represents and warrants that the Contractor has not and will not knowingly utilize the services of illegal immigrants to perform this Contract and will not knowingly utilize the services of any subcontractor, if permitted under this Contract, who will utilize the services of illegal immigrants to perform this Contract. The Contractor has, as of this Contract, completed and submitted an attestation to MLGW on the form, Attestation Regarding Personnel Used in Contract Performance ("Attestation"), attached as Exhibit A and incorporated by this reference. Such attestation shall remain in effect through the term (including any renewal term) of this Contract.

If any contractor is discovered to have breached the Attestation, MLGW's Procurement and Contracts Department shall declare that contractor to be prohibited from contracting for or submitting a bid for any contract to supply goods or services to MLGW for a period of one (1) year, or longer if required by law, from discovery of the usage of illegal immigrant services to perform a contract to supply goods or services to MLGW. If any contractor feels that the contractor may have been treated unfairly, the contractor may file a written statement outlining those facts. This statement is filed with the Manager of Procurement and Contracts. The contractor may appeal the decision of the Manager of Procurement and Contracts to MLGW's President. MLGW will work to resolve the complaint within 60 days and respond to the contractor in writing regarding the findings. A copy of the letter of complaint and the resolution will be forwarded to the members of MLGW's Board of Commissioners.

The Contractor agrees to indemnify and hold harmless MLGW from any and all any fines, penalties, claims, demands, losses, causes of action, damages, lawsuits, judgments, including attorney's fees and costs, associated with any violation of this section or the Attestation.

## XXVII. EQUAL OPPORTUNITY CLAUSE:

While performing this Contract, the Contractor agrees:

1. The Contractor shall not discriminate against any employee because of sex, race, creed, religion, color, national origin, age, or disability. The Contractor will take affirmative action to ensure the Contractor's employees are treated, during performance of this Contract, without regard to their sex, race, creed, religion, color, national origin, age or disability. The action shall include, but not be limited to: employment, upgrading, demotion, termination, decrease in rates of pay or other forms of compensation, and selection for training, including apprenticeship.

2. The Contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices summarizing the provisions of this Equal Opportunity Clause.

3. The Contractor agrees, warrants, and assures that no person shall be excluded from participation in, be denied benefits of or be otherwise subjected to discrimination in the performance of this Contract or in the employment practices of the Contractor on the grounds of disability, sex, race, creed, religion, color, national origin, age, disability, or any other classification protected by federal or state constitutional or statutory law. Such

EXHIBIT A

MLGW 000080

laws shall include, but not be limited to: Title VI of the Civil Rights Act of 1964; Section 504 of the Rehabilitation Act of 1973; and Title II of the American with Disabilities Act of 1990. The Contractor shall, upon request, show proof of such nondiscrimination and shall post in conspicuous places, available to all employees and applicants, notices of nondiscrimination.

4.    The Contractor shall, in all solicitations or advertisements for employees placed by or for the Contractor, state that the Contractor is an equal opportunity employer.

5.    The Contractor understands it is the policy of MLGW to ensure equitable economic opportunities for persons or businesses that desire to do business with MLGW, including women owned business enterprises, minority owned business enterprises, and locally owned small business enterprises.

6.    The Contractor shall permit access by MLGW to any of the Contractor's reports and documents to ensure compliance with this Article.

7.    The Contractor shall not obstruct or hinder MLGW from fulfilling duties and responsibilities imposed by this Article and its related policies and regulations.

8.    The Contractor and each of the Contractor's subcontractors shall include a summary of this Article in their contracts.

9.    The Contractor and subcontractor shall abide by the requirements of 41 CFR Section 60-1.4(a), 60-300.5(a), and 60-741.5(a) and Executive Order 13672. These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race, color, religion, sex, sexual orientation, gender identity or national origin. These regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, protected veteran status or disability.

## XVIII.    AUDIT CLAUSE:

Whenever MLGW enters into any contractual arrangement including, but not limited to, lump sum contracts (e.g., fixed price or stipulated sum contracts), unit price, cost plus or time and material contracts with or without guaranteed maximum or not-to-exceed amounts, the Contractor's, subcontractors' and sub-subcontractors' "records" shall, upon reasonable notice, be open to inspection and subject to audit and reproduction during normal business working hours. Such audits may be performed by an MLGW Representative or an outside representative engaged by MLGW. MLGW or MLGW's designee may conduct such audits or inspections throughout the term of this Contract and for three (3) years after final payment or longer if required by law. MLGW's representatives may (without limitation) conduct verification such as counting employees at the work site, witnessing payroll distribution, and verifying information and amounts through interviews and written confirmations with the Contractor's employees, field and agency labor, subcontractors, and suppliers.

EXHIBIT A

MLGW 000081

The Contractor's "records" as referred to in this Contract shall include all information, materials and data of every kind and character including, without limitation, records, books, papers, documents, subscriptions, recordings, agreements, purchase orders, leases, contracts, commitments, arrangements, notes, daily diaries, superintendent reports, drawings, receipts, vouchers and memoranda and all other agreements, sources of information and matters that pertain to any matters, rights, duties or obligations under or covered by any Contract Documents. Such records shall include hard copy, and computer readable data (if it can be provided) written policies and procedures; time sheets; payroll registers; payroll records; cancelled payroll checks; subcontract files (including proposals of successful and unsuccessful bidders, bid recaps, etc.); original estimates; estimating work sheets; correspondence; change order files (including documentation covering negotiated settlements); back charge logs and supporting documentation; invoices and related payment documentation; general ledger; records detailing cash and trade discounts earned; insurance rebates and dividends; and any other contractor records which may affect matters of interest to MLGW in connection with the contractor's dealings with MLGW (all foregoing "Records") to the extent necessary to adequately permit evaluation and verification of any or all of:

- Compliance with contract requirements for deliverables
- Compliance with approved plans and specifications
- Compliance with MLGW's business ethics expectations
- Compliance with the Contract provisions regarding the pricing of change orders
- Accuracy of the Contractor's representations regarding the pricing of invoices
- Accuracy of the Contractor's representations related to claims submitted by the Contractor or the Contractor's payees.

The Contractor shall require all payees (examples include subcontractors and material suppliers) to comply with this section by including the requirements in a written contract between the Contractor and the payee. The requirements shall include flow-down right of audit provisions in contracts with payees and will also apply to subcontractors and sub-subcontractors, material suppliers, etc. The Contractor will cooperate fully and will cause all of the Contractor's subcontractors (including those entering into lump sum subcontracts) to cooperate fully in furnishing or in providing to MLGW from time to time whenever requested, in an expeditious manner, all such information, materials and data.

MLGW's authorized representative or designee shall have reasonable access to the Contractor's facilities, shall be allowed to interview all current or former employees to discuss matters pertinent to performing this Contract, and shall be provided adequate and appropriate work space, to conduct audits in compliance with this Article.

If an audit inspection or examination under this section, discloses overpricing or overcharges (of any nature) by the Contractor to MLGW over 1% of the total contract billings or $200,000, whichever is less, besides making adjustments for the overcharges, the reasonable actual cost of MLGW's audit shall be reimbursed to MLGW by the Contractor. Any adjustments and payments made because of any such audit or inspection of the Contractor's invoices and records shall be made within 90 days from presentation of MLGW's findings to the Contractor.

C - 23

EXHIBIT A

## XXIX.  INDEPENDENT CONTRACTOR:

The Contractor shall be considered an independent contractor in performing the Work and shall have the right to control the activities of the Contractor's employees, agents and subcontractors in performing the Work except as provided for in this Contract. The Contractor shall be solely responsible for the compensation, benefits, workers' compensation insurance, contributions and taxes of the Contractor's employees, subcontractors or agents.

## XXX. SUPPLIER DIVERSITY POLICY:

It is the express intent of MLGW that minority, women and locally owned small suppliers and contractors have the maximum practicable opportunity to participate in the award and performance of MLGW's purchase orders, contracts and subcontracts. MLGW's Board of Commissioners encourages the growth of minority owned business enterprises ("MBE"), women owned business enterprises ("WBE") and locally owned small businesses ("LSB") (collectively "MWBE/LSB") by providing them the opportunity to furnish MLGW with goods and services and to contract or subcontract with MLGW. It is the goal of MLGW that such businesses should compete under the competitive bidding provisions of MLGW and be able to supply a representative portion of purchases and contracts with MLGW.

Bids received by MWBE/LSB certified companies in bid responses shall be deemed as an effective response to solicitations in MLGW's effort to make awards based on "best bid." Best Bid is defined as the most responsive proposal, solicitation or offer that meets required specifications including, if applicable, any Supplier Diversity goal as set in the Contract Documents.

## XXXI.  SUPPLIER DIVERSITY REPORTING AND TRACKING:

MWBE/LSB participation shall be recorded on a Supplier Diversity Activity Report ("SDAR"), if applicable. Where applicable, a completed SDAR shall be submitted with the Contractor's invoice under Section VII. PAYMENT. Failure to include completed Supplier Diversity Activity Reports will cause non-payment of submitted invoices. Where applicable, a SDAR form will be given to the successful bidder.

To ensure that all obligations under subcontracts awarded to MWBE/LSBs are met, MLGW will review the successful bidder's MWBE/LSB involvement efforts during contract performance, if applicable. The Contractor shall bring to the attention of MLGW any situation in which regularly scheduled progress payments are not made to the Contractor's MWBE/LSB subcontractors and suppliers.

Petitions to substitute or replace MWBE/LSB certified subcontractors must be made in writing with documented reasons for the request and submitted to the Supplier Diversity Department at least 30 days before the expected termination date. The Supplier Diversity Department may schedule a hearing or negotiation meetings with the parties before accepting or declining the request.

EXHIBIT A

MLGW 000083

**XXXII.  DRUG FREE WORKPLACE:**

MLGW has adopted a policy in observation of the Drug Free Work Place Act. Therefore, it is unlawful to manufacture, distribute, disperse, possess, or use any controlled substance in the MLGW workplace.

MLGW requests that the attached Drug Free Workplace Affidavit accompany the Contractor's bid response if the Work will be performed on MLGW's properties or in its facilities. MLGW under the Drug Free Workplace Act has adopted this form (see Exhibit B).

**XXXIII.  APPLICABLE LAW:**

This Contract shall be governed and enforced according to the laws of Tennessee, regardless of choice of law. All actions, whether sounding in contract or in tort, relating to the validity, construction, interpretation and enforcement of this Contract shall be instituted and litigated in the courts in Shelby County, Tennessee and in no other. The parties to this Contract submit to the jurisdiction of the courts in Shelby County, Tennessee.

**XXXIV.  COUNTERPARTS:**

This Contract may be executed in one (1) or more counterparts. Each counterpart shall be deemed an original. All counterparts shall together constitute one (1) and the same agreement.

**XXXV.  BACKGROUND CHECKS:**

The Contractor agrees to comply with all directives and policies of MLGW pertaining to the safety and security of MLGW property. The Contractor agrees to allow MLGW to conduct such background checks and security measures as MLGW in MLGW's sole discretion deems appropriate. The Contractor agrees to execute the waivers.

**XXXVI.  BUSINESS ETHICS:**

The Contractor acknowledges the receipt of MLGW's Code of Business Conduct policies and other applicable personnel policies. The Contractor agrees to adhere to and be bound by them in the conduct of the Work.

While pursuing contracts with MLGW and while performing contract work under this Contract, the Contractor agrees to maintain business ethics standards aimed at avoiding any impropriety or conflict of interest, which could be construed to have an adverse impact on the dealings with MLGW.

The Contractor shall take reasonable steps to prevent any actions or conditions that could cause a conflict with MLGW's best interests. These obligations shall apply to the activities of the Contractor, the Contractor's employees, agents and subcontractors. For example, the Contractor's employees, agents, subcontractors, material suppliers (or their representatives) should not make or provide to be made any employment, gifts, extravagant entertainment,

EXHIBIT A                                             MLGW 000084

payments, loans, free work, substantially discounted work, or other considerations to MLGW's representatives, employees or their relatives. Similarly, the Contractor, the Contractor's employees, agents or subcontractors (or their relatives) should receive no commissions, gifts, extravagant entertainment, payments, loans, free work, substantially discounted work or any other considerations from representatives of subcontractors, or material suppliers performing work on this project.

The Contractor agrees to notify an appropriate MLGW Representative (e.g., the Senior Internal Auditor or the Manager of Procurement and Contracts) as soon as possible after the Contractor learns of any instance where there has been a failure to comply with this Article.

Upon request by MLGW, the Contractor agrees to provide a Management Representation Letter in a form agreeable to MLGW stating the Contractor understands that MLGW has a Code of Business Conduct Policy which provides that no MLGW employee nor member of the employee's family shall accept anything of value from contractors, suppliers, vendors or others transacting or seeking to transact business with MLGW, and the Contractor is not aware of any situations violating policy not previously reported to MLGW as provided in the paragraph above. The Contractor agrees to include this clause in all contracts with subcontractors and major material suppliers used for this project.

The Contractor shall permit interviews of employees, reviews and audits of accounting or other records by MLGW Representative(s) to evaluate compliance with the Code of Business Conduct. Such reviews and audits will encompass all dealings and activities of the Contractor, the Contractor's employees, agents, representatives, vendors, subcontractors, and other third parties paid by the Contractor in relation with MLGW's current or former employees or employees' relatives.

## XXXVII.  STANDARDS OF BUSINESS CONDUCT:

The MLGW Standards of Business Conduct policy exists to reaffirm the strong company commitment to the highest standards of legal, ethical and professional conduct in MLGW's business practices and among MLGW's employees, and to ensure that all employees observe the highest standards of ethical business conduct in all work-related situations.

The following definitions apply to this policy:

1. Conflict of Interest: For this policy, conflict of interest is a situation where an employee must decide between the employee's personal interests and the interests of the company.

2. Directly Interested: Any contract or subcontract with a commissioner, officer, agent or employee personally or with any business in which the commissioner, officer, agent or employee is a sole proprietor, an officer, a partner or the person having the controlling interest.

**NEXT PAGE**

C - 26

EXHIBIT A                                    MLGW 000085

3. Controlling Interest: The owner or the individual with the ownership or control of the largest number of outstanding shares, limited partnership interests, or limited liability company membership interests owned by any single individual or corporation.

4. Indirectly Interested: Any contract or subcontract in which the commissioner, officer, agent or employee is interested but not directly so. This includes contracts or subcontracts with entities where:

   A. A person or persons, who are related by blood or marriage to a commissioner, officer, agent or employee, are directly interested;

   B. A commissioner, officer, agent, employee or a person or persons, related by blood or marriage, have an ownership interest in the entity equal to 5% or more, but less than a Controlling Interest.

Normal employment compensation paid to a person, related by blood or marriage to a commissioner, officer, agent or employee, whose regular, ongoing employer or business has a contractual arrangement with MLGW shall not be considered an ownership interest for this definition. This applies provided the commissioner, officer, agent or employee did not assist their relative in securing the contract with MLGW.

For this policy, related by blood or marriage will be defined as:

1. Blood Relative: A blood relative is connected with another person by blood (i.e., descent from a common ancestor). Blood relatives shall include children, parents, brothers and sisters. The policy treats relationships created by legalized adoptions as blood relatives.

2. Relative by Marriage: A relative by marriage is connected with another person by marriage. Relatives by marriage shall include a spouse, a spouse's children, parents, brothers, sisters, and the employee's son-in-law or daughter-in-law. This policy treats step relatives and half relatives as relatives by marriage.

**Procedure for Bidding, Purchases and Contracts:**

No commissioner, officer, agent or employee of MLGW who has a direct or indirect interest shall pass upon, authorize payment for, supervise or control any work for MLGW or any purchase, contract, renewal or change order or subcontract for any material or service for MLGW where such work is performed by or such materials or service are purchased from or through any contract or subcontract in which the commissioner, officer, agent or employee is directly or indirectly interested.

No commissioner, officer, agent or employee of MLGW shall bid on, sell or offer for sale any merchandise, equipment, or similar commodity or service to MLGW during their tenure with MLGW.

**NEXT PAGE**

C - 27

EXHIBIT A

MLGW 000086

No commissioner, officer, agent or employee shall be directly interested in any contract or subcontract with MLGW or hold controlling interest in any entity contracting with MLGW.

No commissioner, officer, agent or employee shall be indirectly interested in any contract, subcontract, change order or renewal with MLGW unless the officer, agent or employee publicly acknowledges the commissioner's, officer's, agents or employee's interest prior to the execution of such contract, renewal or change order. The acknowledgement shall be made by public disclosure to the Board prior to a vote on the contract by the Board. Contracts or subcontracts in which any commissioner, officer, agent or employee is indirectly interested must be approved by the Board regardless of the value of the contract.

**Method of Filing Complaint and Confidentiality:**

All complaints of ethical violations received from MLGW customers, suppliers, employees, advisors and members of the communities in which MLGW's operations are located will be reported to MLGW's General Counsel. Such reports should include dates and times of the alleged violations of ethical business principles and inappropriate behavior and the name(s) of the employee(s) involved, with any other available pertinent data.

## XXXVIII.  CONFIDENTIAL INFORMATION:

During the term of this Contract and for a period of at least five (5) years, or longer if required by law, from this Contract's termination, or such longer period as may be required by law, the Contractor will regard and preserve as confidential all information related to the business of MLGW, any successor company, subsidiaries or affiliated companies and its or their clients that may be obtained from any source because of this Contract. The Contractor will not, without first obtaining MLGW's written consent, disclose to any person, firm or enterprise, or use for the Contractor's benefit, any information relating to the pricing, methods, processes, financial data, lists, apparatus, statistics, programs, research, development or related information of MLGW, any successor company, subsidiaries or affiliated companies or its or their clients, concerning past, present or future business activities of said entities.

## XXXIX.  DEBARMENT:

**Federal Debarment:**

Debarment by an agency under FAR 9.406.2, GPO Instructions 110-11A, or PS Publication 41 will occur for:

1. Conviction of or civil judgment for fraud violation of antitrust laws, embezzlement, theft, forgery, bribery, false statements, or other offenses indicating a lack of business integrity;

2. Violation of a Government contract, such as a willful failure to perform under its terms or a history of failure to perform; or

C - 28

EXHIBIT A

MLGW 000087

3. Any other cause of a serious and compelling nature affecting responsibility. (See Code N – Debarment under FAR 9.406 2(b)(2) Drug Free Workplace Act of 1988.)

Contractors, who have been debarred, are excluded from receiving contracts. MLGW will not solicit offers from, and award contracts to renew or otherwise extend the duration of current contracts, or consent to subcontracts with these contractors, unless the MLGW President or a designee determines there is a compelling reason for such action. Government prime contractors, when required by the terms, shall not enter into any subcontract equal to or over $25,000 with a contractor debarred, suspended, or proposed for debarment, unless there is a compelling reason to do so. Debarments are for a specified term as determined by the debarring agency and as in the listing.

**Supplier Diversity Debarment:**

MLGW may debar a prime contractor, manufacturer, subcontractor, supplier, owner or principal (at the time of debarment), and those owners or principals of future companies, from participating in the bid process and from contract awards for a period of five (5) years, or longer if required by law, from the date of the Notice of Debarment. Debarment is not meant to be punitive, but a procedure to ensure that the Supplier Diversity Program is conducted legally with responsible parties, maintaining the integrity of the MLGW procurement process.

Prime contractors, subcontractors, and suppliers found to have committed any of the following offenses shall be issued a Notice of Debarment:

1. Failure to submit, in writing, documented reasons to substitute or replace certified subcontractors or suppliers listed in the bid documents to the Supplier Diversity Department prior to the start of the work to be performed by the subcontractor or supplier.

2. Contractors awarded contracts based on the inclusion of MWBE/LSBs as subcontractors to satisfy Supplier Diversity participation goal not utilizing the MWBE/LSBs to perform the Work.

3. Submission of falsified documentation concerning Supplier Diversity during the bid process and contract period.

4. Submission of bids including the use of business enterprises as conduits, fronts, or participation in fronting activity.

5. Refusal to provide pricing to MWBE/LSB distributors and resellers.

6. Contractors, manufacturers, suppliers, distributors, and any other business enterprise with a conviction of or civil judgment for fraud, violation of antitrust laws, embezzlement, theft, forgery, bribery, false statements, or other offenses indicating a lack of business integrity.

C - 29

EXHIBIT A

MLGW 000088

7.  Violation of the terms of a government contract, such as a willful failure to perform in accordance with the government contract's terms or a history of failure to perform.

**Debarment Appeals Process:**

Contractors may appeal a Notice to Debarment via the MLGW Procurement Complaint and Appeals Process.  A copy of the process can be found at www.mlgw.com/protests or by calling the Manager of Procurement and Contracts at (901) 528-4381.

## XL.   ELIGIBILITY OF FORMER EMPLOYEES:

Former employees that apply for work with an MLGW contractor must be pre-approved by MLGW for eligibility to work on MLGW facilities or contracts. Those individuals who resigned while under investigation or were discharged from MLGW are ineligible to work on MLGW facilities or contracts.

## XLI.  MINOR IRREGULARITY:

A variation from the solicitation that neither affects the price of the contract nor gives a bidder an advantage or benefit not enjoyed by other bidders, nor adversely impacts the interests of the contracting party may be considered a "Minor Irregularity".  Failure to sign the bid document or any documents contained therein will not be considered a Minor Irregularity.

**SIGNATURE PAGE TO FOLLOW**

EXHIBIT A

MLGW 000089

**IN WITNESS WHEREOF,** the parties have caused these presents to be executed by their duly authorized representatives on the day and year first above written.

| MEMPHIS LIGHT, GAS AND WATER DIVISION | CONTRACTOR |
|---|---|
| City of Memphis, Memphis, Tennessee | NAME OF COMPANY:<br>*Asplundh Tree Expert, LLC* |
| By: | SIGNATURE OF AUTHORIZED SIGNEE: |
| Jari "J.T." Young<br>**President and Chief Executive Officer** | PRINT NAME OF AUTHORIZED SIGNEE:<br>*Gregg G. Asplundh* |
| Date: | TITLE OF AUTHORIZED SIGNEE:<br>*Executive Vice President* |
|  | BUSINESS ADDRESS OF CONTRACTOR:<br>*1853 Charlotte Pike #402, Nashville, TN 37209* |
| **Attest:** | EMAIL ADDRESS OF SIGNEE:<br>*ghayden@asplundh.com* |
| **Dana Jeanes**<br>**Sr. Vice-President, Chief Financial Officer and Secretary-Treasurer** | TELEPHONE NUMBER OF CONTRACTOR:<br>*615-346-7256* |
| **Approved:** | MOBILE NUMBER OF CONTRACTOR:<br>*615-979-1850* |
| **Geoffrey Lewis**<br>**Attorney, Board of Light, Gas and Water Commissioners** | ETHNICITY OF OWNER:<br>*Caucasian* |
|  | MALE OR FEMALE:<br>*Male* |
| **Intentionally Blank** | FAX NUMBER OF CONTRACTOR:<br>*615-353-2191* |
|  | DATE *10/17/19* |

**This Contract was approved by the Council of the City of Memphis under City Ordinance 5046 as reflected in Council minutes dated:** _____ July 16, 2019 _____ .

C - 31

EXHIBIT A

MLGW 000090

Bond No. 107114240

## PERFORMANCE BOND

**STATE OF** Pennsylvania

**COUNTY OF** Philadelphia

### KNOW ALL BY THESE PRESENTS, THAT:

**WE,** Asplundh Tree Expert, LLC _____ (**"Principal"**), a Limited Liability Company _____ (form of business organization), organized and existing under and by virtue of the laws of the State of Pennsylvania _____ ; and Travelers Casualty and Surety Company of America ("Surety"), a Company _____ (form of business organization), organized and existing under and by virtue of the laws of the State of Connecticut _____ _____ and licensed to engage in the surety business in the State of Tennessee; do hereby bind ourselves, successors, assigns, heirs and personal representatives for the use and benefit of Memphis Light, Gas and Water Division of the City of Memphis, Tennessee, ("Obligee") in the sum of Nineteen Million Four Hundred Eighty Three Thousand Eight Hundred Four and 85/100 Dollars ($19,483,804.85) for the payment of which will and truly to be made, in lawful money of the United States.

**WHEREAS,** the Obligee, has engaged the Principal, for the sum of Nineteen Million Four Hundred Eighty Three Thousand Eight Hundred Four and 85/100 Dollars ($19,483,804.85), which represents an annual bond to equal 20% of the 60-month Contract price to provide machinery, apparatus, equipment and all material and labor for Contract No. 12077 the necessary more fully described in a written Contract bearing date of August 30, 2019 [12077], which Contract, including all writing therein referred to, is by reference hereby made a part hereof, and it is the desire of the Obligee, that the Principal shall assure all undertakings under the Contract. The bond shall be extended by continuation certificate for additional periods from the expiry date hereof.

**NOW, THEREFORE,** the condition of this obligation is such that, if the above named Principal shall promptly and faithfully perform all undertakings and obligations under the Contract, and shall fully indemnify and save harmless the Obligee from all costs and damages which it may suffer by any failure by the Principal so to do, and shall fully reimburse and repay the Obligee any and all outlay and expense which it may incur in making good any such default, then this obligation shall be null and void; otherwise, it shall remain in full force and effect.

If the Principal performs the Contract, to the satisfaction of MLGW, the Surety and the Principal shall have no obligation under this Performance Bond.

Provided there is no default by the Obligee, the Surety's obligation under this Performance Bond shall arise after:

A.     The Obligee has notified the Principal and the Surety in writing (at the address described on the signature page) that the Obligee is considering declaring the Principal in default of the Contract and has requested and attempted to arrange a

C-32

EXHIBIT A

MLGW 000091

conference with the Principal and the Surety to be held not later than 15 days after receipt of such notice to discuss methods of performing the Contract. If the Obligee, the Principal, and the Surety agree, the Principal shall be allowed a reasonable time to perform the Contract, but such agreement shall not waive the Obligee's right subsequently to declare the Principal in default; and

B.    The Obligee has declared the Principal in default of the Contract and formally terminated the Principal's right to complete the Contract. Such Default shall not be declared earlier than 20 days after the Principal and the Surety have received the notice as provided in A; and

C.    The Obligee has agreed to pay the balance of the contract price to the Surety under the terms of the Contract or to a contractor selected to perform the Contract under the terms of the Contract with the Obligee.

When the Obligee has satisfied the conditions aforesaid, the Surety shall promptly and at Surety's expense take one (1) of the following actions:

A.    Arrange for the Principal, with consent of the Obligee, to perform and complete the Contract; or

B.    Perform and complete the Contract itself, through the Surety's agents or through independent contractors; or

C.    Obtain bids or negotiate proposals from qualified contractors acceptable to the Obligee for a contract for performance and completion of the Contract, arrange for a contract to be prepared for execution by the Obligee and the contractor selected with the Obligee's concurrence, to be secured with performance and payment bonds, executed by a qualified surety equivalent to the bonds issued on the Contract, and pay to the Obligee the damages over the balance of the Contract price incurred by the Obligee resulting from the Principal's default; or

D.    Waive the Surety's right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances, after investigation, determine the amount for which the Surety may be liable to the Obligee and, as soon as practicable after the amount is determined, tender payment to the Obligee; or

E.    Deny liability in whole or in part and notify the Obligee in writing, citing reasons.

If the Surety does not proceed with reasonable promptness, the Surety shall be deemed in default on this Performance Bond 15 days after receipt of an additional written notice from the Obligee to the Surety demanding the Surety perform the Surety's obligations under this Performance Bond, and the Obligee shall be entitled to enforce any remedy available to the Obligee. If the Surety proceeds as provided above and the Obligee refuses the payment tendered or the Surety has denied liability, in whole or in part, without further written notice the Obligee shall be

C- 33

EXHIBIT A

MLGW 000092

entitled to enforce any remedy available to the Obligee including the Obligee's costs, expenses, and attorney's fees.

After the Obligee has terminated the Principal's right to complete the Contract, and if the Surety elects to act under the aforesaid subparagraphs A through E above, then the responsibilities of the Surety to the Obligee shall not be greater than those of the Principal under the Contract, and the responsibilities of the Obligee to the Surety shall not be greater than those of the Obligee under the Contract. To the limit of this Performance Bond, but subject to the commitment by the Obligee of the balance of the Contract price to mitigation of costs and damages on the Contract, the Surety is obligated without duplication for:

A.    The responsibilities of the Principal for correction of defective work and completion of the Contract;

B.    Additional legal, design, professional and delay costs resulting from the Principal's default, and resulting from the actions or failure to act of the Surety under the preceding paragraph; and

C.    Liquidated damages, or if no liquidated damages are specified in the Contract, actual damages caused by delayed performance or nonperformance of the Principal.

When this Performance Bond has been furnished to comply with a statutory or other legal requirement in the location where the Contract was to be performed, any provision in this Performance Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated. The intent is this Performance Bond shall be construed as a statutory bond and not as a common law bond.

And, for value received, it is stipulated and agreed that no change, extension of time, alteration or addition to the terms or to the work to be performed or the Specifications accompanying the same shall in anywise affect the obligations under this obligation or bond, and notice is waived of any such change, extension of time, alteration or addition to the terms or to the work or to the Specifications.

**SIGNATURE PAGE TO FOLLOW**

C   34

EXHIBIT A

MLGW 000093

IN WITNESS WHEREOF, the Principal has affixed the principal's signature and the Surety
has affixed the Surety's signature and seal, by their duly authorized officers, on the ___8th___ day
of ___August___ , 20 19 ___.

Asplundh Tree Expert, LLC
PRINCIPAL

BY: PRINT NAME  Ann P. Ercolani

 Asst. Secretary(Ins./Bonds)
TITLE

708 Blair Mill Road, Willow Grove, PA 19090-1784
ADDRESS

Travelers Casualty and Surety Company of America
SURETY

BY: PRINT NAME    Kaitlyn Malkowski

Attorney-In-Fact
TITLE

One Tower Square, Hartford, CT 06183
ADDRESS

## ACKNOWLEDGEMENT PAGE TO FOLLOW

C- 35

EXHIBIT A                                MLGW 000094

## ACKNOWLEDGEMENT OF PRINCIPAL

**STATE OF** __Pennsylvania__
**COUNTY OF** __Montgomery__

Personally appeared before me, a Notary Public in and for the above referenced State and
County, the undersigned, __Laura Ann Wilson__ ; Ann P. Ercolani with whom I am
acquainted and made oath that he or she is the __Asst. Secretary(Ins./Bonds)__ of
__Asplundh Tree Expert, LLC__ , that he or she is duly authorized
to execute the foregoing Performance Bond in that capacity, and that he or she executed the
same.

Witness my hand and seal this __09th__ day of __August__ , 20 __19__

My Commission Expires: _____

COMMONWEALTH OF PENNSYLVANIA - NOTARY SEAL
Laura Ann Wilson, Notary Public
Montgomery County
My Commission Expires 04/15/2023
Commission Number 1269615

## ACKNOWLEDGEMENT OF SURETY

**STATE OF** Pennsylvania
**COUNTY OF** Philadelphia

Personally appeared before me, a Notary Public in and for the above referenced State and
County, the undersigned, Kaitlyn Malkowski _____ , with whom I am
acquainted, and made oath that he or she is the Attorney-In-Fact _____ of
Travelers Casualty and Surety Company of America , a company licensed to engage in the surety business in
the State of Tennessee, and that he or she is duly authorized to execute the foregoing
Performance Bond in that capacity, and that he or she executed the same.

Witness my hand and seal this 8th day of August _____ , 20 19 .

My Commission Expires: 9/18/2021

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
WAYNE G. McVAUGH, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 18, 2021

C- 36

EXHIBIT A

MLGW 000095



**Travelers Casualty and Surety Company of America**
**Travelers Casualty and Surety Company**
**St. Paul Fire and Marine Insurance Company**

### POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS:** That Travelers Casualty and Surety Company of America, Travelers Casualty and Surety Company, and St. Paul Fire and Marine Insurance Company are corporations duly organized under the laws of the State of Connecticut (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint **KAITLYN MALKOWSKI**            of **PHILADELPHIA**
**Pennsylvania**                , their true and lawful Attorney-In-Fact to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF,** the Companies have caused this instrument to be signed, and their corporate seals to be hereto affixed, this **17th** day of **January, 2019.**

  

State of Connecticut

City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the **17th** day of **January, 2019,** before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Travelers Casualty and Surety Company of America, Travelers Casualty and Surety Company, and St. Paul Fire and Marine Insurance Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of said Companies by himself as a duly authorized officer.

**IN WITNESS WHEREOF,** I hereunto set my hand and official seal.

My Commission expires the 30th day of June, 2021

Anna P. Nowik, Notary Public

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Travelers Casualty and Surety Company of America, Travelers Casualty and Surety Company, and St. Paul Fire and Marine Insurance Company, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-In-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

**FURTHER RESOLVED,** that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

**FURTHER RESOLVED,** that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-In-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

**FURTHER RESOLVED,** that the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-In-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding on the Company in the future with respect to any bond or understanding to which it is attached.

I, Kevin E. Hughes, the undersigned, Assistant Secretary of Travelers Casualty and Surety Company of America, Travelers Casualty and Surety Company, and St. Paul Fire and Marine Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which remains in full force and effect.

Dated this **8th** day of **August**        , **2019** .

  

Kevin E. Hughes, Assistant Secretary

*To verify the authenticity of this Power of Attorney, please call us at 1-800-421-3880.*
*Please refer to the above-named Attorney-In-Fact and the details of the bond to which this Power of Attorney is attached.*

EXHIBIT A

MLGW 000096

Bond No. 107114240

## CONTRACTOR'S LABOR AND MATERIALS PAYMENT BOND

STATE OF Pennsylvania

COUNTY OF Philadelphia

KNOW ALL BY THESE PRESENTS, THAT:

WE, Asplundh Tree Expert, LLC, _____ "Principal"), a
Limited Liability Company _____ (form of business organization), organized
and existing under and by virtue of the laws of the State of Pennsylvania ; and Travelers Casualty
and Surety Company of America ("Surety"), a Company
(form of business organization), organized and existing under and by virtue of the laws of the
State of Connecticut and licensed to engage in the surety business in the State of
Tennessee; do hereby bind ourselves, successors, assigns, heirs and personal representatives for
the use and benefit of Memphis Light, Gas and Water Division of the City of Memphis,
Tennessee, existing under and by virtue of the laws of the State of Tennessee ("Obligee") in the
sum of Twenty Four Million Three Hundred Fifty Four Thousand Seven Hundred Fifty Six and 06/100
Dollars ($24,354,756.06) for the payment of which will and truly to be made, in lawful money of the
United States.

WHEREAS, the Obligee has engaged the said Principal, for the sum of Twenty Four Million Three
Hundred Fifty Four Thousand Seven Hundred Fifty Six and 06/100 Dollars ($24,354,756.06), to provide
the necessary machinery, apparatus, equipment, and all material and labor for Contract No. 12077 _ ,
more fully described in a written Contract bearing date of August 30, 2019 , a copy of
which said Contract, including all writing therein referred to, between Principal and Obligee
made a part hereof, and it is the desire of the Obligee, that the Principal shall assure all
undertakings under the Contract, and shall assure and protect all laborers and furnishers of
material on said work, both as provided by Sections 12-4-201 through 12-4-208 inclusive, of the
Tennessee Code Annotated, and also independently of said statutes.

NOW, therefore, the condition of this obligation is such that if the Principal shall
promptly pay all claimants, as hereinafter defined, for all labor, materials or equipment used by
the Principal or any immediate or remote subcontractor under the Principal in the prosecution of
the work provided for in the Contract, then this obligation shall be null and void; otherwise, it
shall remain in full force and effect. For this obligation, the term "claimant" shall mean an
individual or entity having a direct contract with the Principal or with a subcontractor of the
Principal to furnish labor, materials or equipment for use in performance of the Contract.

The Surety shall have no obligation under this Contractor's Labor and Materials Payment
Bond (Payment Bond) until:

A. Claimants who are employed by or have a direct contract with the Principal have
given written notice to the Surety (at the address described on the signature page)
and sent a copy of such notice to the Obligee stating a claim is being made under
this Payment Bond, and, with substantial accuracy, the amount of the claim; or,

C- 37

EXHIBIT A                                              MLGW 000097

B. Claimants who do not have a direct contract with the Principal have furnished written notice to the Principal and sent a copy of such notice to the Obligee, after such labor, materials or equipment is furnished, and within 90 days after the completion of the work under the Contract, stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was performed.

The Surety's total obligation shall not exceed this Payment Bond, and this Payment Bond shall be credited for any payments made in good faith by the Surety.

When this Payment Bond has been furnished to comply with a statutory or other legal requirement in the location where the work under the Contract was performed, any provision in this Payment Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is this Payment Bond shall be construed as a statutory bond and not as a common law bond.

Upon request by any person or entity appearing to be a potential beneficiary of this Payment Bond, the Principal shall promptly furnish a copy of this Payment Bond or shall permit a copy to be made.

**AND (FOR VALUE RECEIVED)**, it is stipulated and agreed that no change, extension of time, alteration or addition to the terms of the said Contract or to the work to be performed thereunder or the Specifications accompanying the same shall in anywise affect the obligations under this Payment Bond, and notice is hereby waived of any such change, extension of time, alteration or addition to the terms of the Contract or to the work or to the Specifications.

<u>**SIGNATURE PAGE TO FOLLOW**</u>

C- 38

EXHIBIT A

MLGW 000098

**IN WITNESS WHEREOF,** the Principal has hereunto affixed the Principal's signature and the Surety has hereunto affixed the Surety's signature and seal, by their duly authorized officers, on the __8th__ day of __August__ , 20 __19__ .

Asplundh Tree Expert, LLC
PRINCIPAL

BY: PRINT NAME    Ann P. Ercolani

Asst. Secretary(Ins./Bonds)
TITLE

708 Blair Mill Road, Willow Grove, PA 19090-1784
ADDRESS

Travelers Casualty and Surety Company of America
SURETY

BY: PRINT NAME    Kaitlyn Malkowski

Attorney-in-Fact
TITLE

One Tower Square, Hartford, CT 06183
ADDRESS

## ACKNOWLEDGEMENT PAGE TO FOLLOW

C- 39

EXHIBIT A                                        MLGW 000099

## ACKNOWLEDGEMENT OE PRINCIPAL

**STATE OF**  Pennsylvania

**COUNTY OF**  Montgomery

Personally appeared before me, a Notary Public in and for the above referenced State and County, the undersigned,  Laura Ann Wilson  ;Ann P. Ercolani with whom I am acquainted and made oath that he or she, is the  Asst. Secretary(Ins./Bonds)  of  Asplundh Tree Expert, LLC  , that he or she is duly authorized to execute the foregoing Contractor's Labor And Materials Payment Bond in that capacity, and that he or she executed the same.

Witness my hand and seal this  09th  day of  August  , 2019 .

My Commission Expires:

> COMMONWEALTH OF PENNSYLVANIA - NOTARY SEAL
> Laura Ann Wilson, Notary Public
> Montgomery County
> My Commission Expires 04/18/2023
> Commission Number 1289618

## ACKNOWLEDGEMENT OF SURETY

**STATE OF** Pennsylvania

**COUNTY OF** Philadelphia

Personally appeared before me, a Notary Public in and for the above referenced State and County, the undersigned,  Kaitlyn Malkowski  , with whom I am acquainted, and made oath that he or she is the  Attorney-in-Fact  of Travelers Casualty and Surety Company of America, a company licensed to engage in the surety business in the State of Tennessee, and that he or she is duly authorized to execute the foregoing Contractor's Labor And Materials Payment Bond in that capacity, and that he or she executed the same.

Witness my hand and seal this  8th  day of  August  , 20 19 .

My Commission Expires: 9/18/2021

> COMMONWEALTH OF PENNSYLVANIA
> NOTARIAL SEAL
> WAYNE G. McVAUGH, Notary Public
> City of Philadelphia, Phila. County
> My Commission Expires September 18, 2021

C- 40

EXHIBIT A

MLGW 000100

# GENERAL CONDITIONS

EXHIBIT A

MLGW 000101

## 1. PRINCIPLES AND CONDITIONS

These General Conditions shall apply to all parts of the Work and are included as part of the Contract or order unless otherwise noted.

Whenever the following words shall appear in the Contract, "Board," "Commissioners," "Division," "MLGW," "Light, Gas and Water Commissioners," and "Owner," they shall mean the Board of Light, Gas and Water Commissioners of the Memphis, Light, Gas and Water Division, City of Memphis, Memphis, Tennessee, duly appointed and holding office at the time the Contract was entered into or during the fulfillment thereof.

Wherever and whenever the term "Equipment" is used in these Specifications, it shall be understood to include trucks, trailers, winches, dollies, tools and other apparatus, owned and operated by the Contractor.

Wherever and whenever the term "MLGW Representative," "MLGW Engineer" or "MLGW Inspector" is used in these Specifications, it shall be understood to designate a duly authorized representative of the Memphis Light, Gas and Water Division.

MLGW and the Contractor are those named as such in the Contract.

The intention of the documents is to include all supervision, material, labor, transportation and equipment reasonably required for the proper execution of the Work.

Materials or work described in words which have a well-known or recognized technical or trade meaning shall be so interpreted when used in the Specifications.

Wherever and whenever the term "Contractor" is used in the Specifications, it shall be understood to designate the party or parties who will be awarded the Contract or order to furnish Work under these Specifications, and any suppliers or subcontractors engaged by the Contractor to furnish or perform portions of the Work under Contract or order or the Contractor's duly authorized agents.

Wherever and whenever the term "Work" or "Works" is used in the Specifications or Contract, it shall be understood to include all supervision, materials, labor, transportation and equipment. Reference to the Contractor, "Work" or "Works" refers to everything agreed to be done and furnished by the Contractor.

The words, "as directed," "as required," "as permitted," "as allowed," or phrases of like effect or import, as used herein shall mean that the direction, requirement, permission or allowance of MLGW is intended, and similarly the words "approved," "reasonable," "suitable," "properly," "satisfactorily," or words of like effect and import, unless otherwise particularly specified herein shall mean approved, reasonable, suitable, proper or satisfactory in the judgment of MLGW.

Written notice shall be deemed to be duly served if delivered in person to the individual or to a member of the firm or an office of the corporation for whom it is intended or if delivered at or sent

EXHIBIT A

MLGW 000102

by registered mail to the last business address known to the party who gives notice or if delivered to a MLGW field representative of the addressee.

## 2. CONTRACT

The successful bidder will execute a formal contract covering the Work.

## 3. DETAILS AND INSTRUCTIONS

Should it appear that the Work intended, or any of the matters relative thereto are not sufficiently detailed or explained in the Specifications, the Contractor shall apply to MLGW for such further explanations as may be necessary. The Contractor shall conform to the same as a part of this Contract, so far as they may be consistent with the original Specifications. In the event of any doubt or question arising respecting the true meaning of the Specifications, the matter shall be submitted to MLGW whose decision shall be final and conclusive.

No oral admission or neglect on the part of MLGW will be taken as an excuse for Work performed in accordance with the Contract.

## 4. WORK TO BE DONE

The Contractor shall furnish all supervision, labor, transportation, equipment and such material to trim and or remove all trees and brush, to trim trees using the most recent arboricultural techniques, and to perform other utility forestry services including chemical spraying, transmission right of way clearing and mowing, clean up and disposal of materials and to provide clearance for electric wires of MLGW. In addition, this contract may include emergency storm work.

## 5. CHARACTER OF WORKERS AND EQUIPMENT

Any person or persons employed by the Contractor or by any subcontractor, in the opinion of MLGW's authorized representative, who does not conduct themselves in a manner that adequately protects the Work and the MLGW's facilities, then MLGW has the right to request that such persons be removed from the worksite and from performing any other activities in furtherance of the Work.

Should the Contractor fail to remove such person or persons or fail to furnish suitable and sufficient machinery, equipment or workers necessary for the proper prosecution of the Work, the MLGW Representative may suspend the Work until there is compliance. No item of equipment or machinery, after once being placed on the job site, shall be removed without the consent of the MLGW Representative. All workers must have sufficient skill and experience to perform properly the work assigned them. All workers engaged on special work or skilled work in any trade, shall have had sufficient experience in such work to perform it properly and satisfactorily and proficiently operate the equipment involved.

GC 3

EXHIBIT A

MLGW 000103

## 6. RESPONSIBILITIES OF CONTRACTOR

The Contractor shall furnish all equipment needed for the performance of this Contract and shall be solely answerable for the same and for the safe, proper and lawful construction and maintenance and use thereof. The Contractor shall cover and protect the Work from damage. The Contractor shall make good all injury to the same, before the completion and acceptance of this Contract by MLGW. The Contractor shall be solely answerable for all damages to MLGW, the City of Memphis, Tennessee or their property, to other contractors, or other employees of MLGW, to the neighboring premises or to any public, private or personal property, *to the proportionate extent* due to the improper, illegal or negligent conduct of the Contractor or their subcontractors, employees or agents while performing the Work covered by this Contract. Barriers shall be kept in place at all times to protect persons from accident, and the Contractor will be held responsible for all accidents to persons through any negligence of the Contractor or their employees, agents and subcontractors. In the event of a chemical incident, meaning a toxic spill or release that occurs during the Contractor's performance of the Work, and which is determined by MLGW to be attributable to the Contractor or its subcontractors, employees or agents, the Contractor shall be responsible for all costs of environmental clean-up, correction, remediation, eradication, and other similar actions such as may be required by MLGW for safe operations generally, and such as may be specifically directed and/or required by federal, state and local authorities, laws and regulations.

In the event of an environmental incident, meaning a spill or release of hazardous substances that occurs during the Contractor's performance of the Work, and which is determined by MLGW to be attributable to the Contractor or its subcontractors, employees or agents, the Contractor shall be responsible for all costs of environmental clean-up, correction, remediation, eradication, and other similar actions such as may be required by MLGW for safe operations generally, and such as may be specifically directed and/or required by federal, state and local authorities, laws and regulations.

If at any time during the course and scope of the Project there shall be evidence of a claim for damage to Division properties or other properties owned by third parties for which the Division might be alleged liable and which is chargeable to the Contractor, then upon 30 days written notice by the Division Representative to the Contractor, the Division shall have the right to retain out of any payment then due or thereafter to become due, an amount sufficient for complete indemnification against the claim. In the event the Division has already paid to the Contractor all sums due under this Contract or the balance remaining unpaid is insufficient to protect the

Intentionally Blank

GC 4

EXHIBIT A

MLGW 000104

Division, the Contractor and the Contractor's surety shall be liable to the Division for any loss so sustained.

## 7. RESPONSIBILITIES OF MLGW

MLGW, through its representative, will be responsible for the drawing and furnishing of sketches as described in the specifications. MLGW will also be responsible for the inspection and verification of material installed and Work performed for payment of the Contractor's invoices.

## 8. IDENTIFICATION OF WORKERS

MLGW shall provide the Contractor's supervisory personnel, foreman and above, with a personalized identification badge that displays that person's picture, title or position, and the company for which the person works.

The Contractor shall provide all other employees with a personalized identification badge that displays that person's title or position and the company for which that person works. Each worker shall carry a badge at all times and display the same when requested by the public or a MLGW representative.

It shall be the responsibility of the Contractor to ensure its employees return all badges to MLGW upon the completion of the Work or the separation of employees.

## 9. UNAUTHORIZED WORK STOPPAGE

If at any time, there is any unauthorized work stoppage due to the actions of the Contractor or the Contractor's subcontractors' employees, agents or subcontractors, then the Contract shall be subject to immediate cancellation by MLGW.

## 10. CONTRACTOR'S OFFICE AND STORAGE SPACE

The Contractor shall furnish all office and shop space necessary for clerical and craft personnel to perform the required Work. The Contractor shall furnish all necessary storage space required for the storage of various materials used in the performance of work under this contract and the storage space required for the Contractor's vehicles.
The office facility shall include communications equipment able to provide uninterrupted clear communications with each crew any place in Shelby County, Tennessee and with the offices of MLGW and with the MLGW Representative and Inspectors while in the field.

The office facility shall be a permanent building with walls, roof, flooring, insulation, lighting, HVAC and utilities approved by the appropriate city and/or county inspection departments.

The storage facility, located at or near the office facility, shall be enclosed by fence or building walls on all sides with a gate or door securely locked when the Contractor's employees are not present. The storage area shall be lighted at night if not located inside a building.

## 11.  SAFETY REQUIREMENTS

The Contractor shall comply with all applicable safety regulations regulating the Work included in this Contract including but not limited to the Federal Occupational Health and Safety Act ("OSHA") and the Tennessee Occupational Health and Safety Act. The Contractor shall also observe all applicable parts of MLGW's Safety Policies and make them known to its employees through regular training at the Contractor's expense. Contractor shall insure all employees comply with Contractor's safety policies which shall meet or exceed MLGW Safety Policies. All safety equipment required and used by the Contractor shall be provided and maintained by the Contractor at the Contractor's expense. Prior to the start of Work, MLGW will require the Contractor's safety representative to attend a one day training session with the MLGW safety representative.

## 12.  EQUIPMENT

The Contractor's equipment shall be safe, efficient and adequate for Work and shall be kept in neat appearance and in good operating condition at all times. All motor trucks provided by the Contractor shall bear a company number and shall be well marked and identified with the Company insignia, designating these vehicles as operated by the above Contractor. Equipment age for start-up and future replacements shall be as stated or newer:

Bucket Truck  5 years
Split Dump    7 years
Chipper       7 years

## 13.  LICENSES AND PERMITS

The Contractor shall, at the Contractor's expense, obtain all licenses and permits for this installation that are required by laws, ordinances or codes of the City of Memphis, Shelby County, State of Tennessee and United States Government. The Contractor shall furnish satisfactory proof to the MLGW Representative that such licenses and permits have been obtained. The installation will not be considered complete until such license and permit documents are received by MLGW.

## 14.  CONTRACTOR OBLIGATION TO CHECK PLANS AND SCHEDULES

The Contractor shall check all dimensions and quantities shown on the specifications provided by the MLGW Representative, and shall notify the MLGW Representative of any discrepancy between the plans and conditions at the job site or any error or omission in plans, which the Contractor may discover in the course of the Work. The Contractor shall not be allowed to take advantage of any error or omission in the plans or Contract Documents. The MLGW Representative will furnish full instructions should such error or omission be discovered, and the Contractor shall carry out such instructions as if originally specified. The decision of the MLGW Representative shall be final.

MLGW 000106

## 15.  WORK IN PROGRESS

Work shall begin in a timely manner and be continued through completion during normal working hours unless otherwise specified by the MLGW Representative.  The Contractor shall maintain and operate a workforce sufficient to meet the needs of this provision.

The Contractor shall provide the MLGW Representative each workday morning with a schedule of crews and work locations for that day and a report of the status of Work scheduled the previous workday.  Work dispatched to crews during the day shall be added to the work schedule of that crew for the current day with proper notation of job status at the end of the workday.

The MLGW Representative shall have the right to enter any facility of the Contractor used for the execution of this contract and any worksite where Work is ordered under this Contact.

## 16.  FINAL CLEAN-UP

Final clean-up shall be performed in accordance with the provisions of this Contract.  The Contractor shall be responsible for disposing of all debris at the appropriate city or county dumpsites.  The Contractor shall be responsible for all dumping fees.

Before final inspection, the Contractor shall perform such touching up, cleaning of surfaces and other Work as directed by the MLGW Representative.

## 17.  TESTING OF COMPLETED WORK

The MLGW Representative may test any or all of the Work before acceptance for payment. Failure to test the Work prior to payment does not void the Contractor warranty. Any Work failing to meet Standards and Specifications, or in their absence commonly accepted norms of operation shall be corrected within the time specified by the MLGW Representative.  Corrections shall be made at the expense of the Contractor except when caused by material issued by MLGW to the Contractor in a faulty condition, but at the Contractor's expense when damaged through Contractor negligence.

## 18.  ACCEPTANCE

Work completed by the Contractor shall be inspected by the MLGW Representative or Inspector and all required adjustments made to the satisfaction of the MLGW Representative or Inspector before acceptance by MLGW.

## 19.  PROTECTION OF WORK

From the commencement of the Work until the Work is completed and accepted by MLGW, the Contractor shall be solely responsible for the protection of the properties, sidewalks, driveways and existing utilities.  Materials issued to or purchased by the Contractor and intended to be used in the Work and all injury, damage or loss of the same, from whatever cause, shall be made good

EXHIBIT A

MLGW 000107

at the Contractor's expense before final payment is made. All reasonable precautions shall be taken at all times to protect the materials intended for use in the Work in progress, and the completed Work from injury and damage from any cause. The methods used for this protection shall be subject to the approval of the MLGW Representative.

## 20.   CLAIMS FOR LABOR AND MATERIALS

The Contractor shall defend, indemnify and save harmless, MLGW and the City of Memphis from any and all claims, liens, demands, or actions, arising out of the services, labor and materials furnished by the Contractor or any subcontractors. The Contractor shall keep MLGW property free and clear of all liens, claims and encumbrances arising from the performance of the Work by the Contractor or the Contractor's subcontractor. The Contractor agrees to reimburse MLGW for all monies paid and expense incurred by MLGW in discharging such liens or in connection with any action or proceeding for removal or enforcement.

Before receiving final payment under the Contract for the Work, the Contractor shall certify and furnish proof satisfactory to MLGW that all materials, equipment, labor, and cost incurred thereon have been fully paid and discharged, and that there are no liens outstanding affecting the Work.

## 21.   CLAIMS FILED AGAINST THE CONTRACTOR

The Contractor, at its own expense, will conduct a thorough investigation of all claims filed by MLGW or a third party affecting or arising from the Work. MLGW shall have the right to bill the Contractor for any damages, costs and expenses concerning the claims. Upon receipt of such bill, the Contractor shall have 30 days from receipt of the bill to pay in full unless the Contractor's investigation reveals evidence that clearly negates the Contractor's responsibility and the Contractor or its insurance carrier disputes such bill. In such event, the Contractor or insurance carrier must provide to the MLGW Claims Department within 14 days from receipt of said bill a written statement in support of such dispute. Upon receipt of the statement, the Supervisor of Claims shall determine whether the Contractor's dispute is valid. If the Contractor's dispute is denied, the Contractor and/or its insurance carrier will be notified in writing and given 14 days to pay the claim in full.

## 22.   WORK HOURS

Workdays and hours shall be established in writing by the MLGW Representatives to meet current MLGW needs. Standard workweeks will consist of 40 hours made up of five (5) days of eight (8) hours each or of four (4) days of 10 hours each, subject to reduction due to inclement weather, lack of work or other cause. A standard four (4) day work week requires the Contractor to supply such crew(s) as requested by the MLGW Representative on the off fifth (5th) day to meet MLGW needs. Adjustments to the work week, day or hours by the MLGW Representative for reasons other than an emergency, weather conditions, or violations under the terms of this Contract shall be made in writing 24 hours in advance of the change.

EXHIBIT A

MLGW 000108

No Work shall be done on MLGW holidays, without the written approval or permission of the MLGW Representative in each case, except such work as may be necessary for the proper care, maintenance, or protection of Work already done or in the case of an emergency.

## 23.  OVERTIME WORK

Overtime work that results in a greater charge to MLGW than would have been made if the work were performed at straight time, shall not be performed hereunder.  Overtime Work that does not result in any such greater charge to MLGW may be performed hereunder provided the MLGW Representative shall have authorized the same.

## 24.  UNEXPECTED INTERFERENCE

The Contractor shall be responsible for locating any existing facilities prior to trenching to avoid any interruption in service.  The locations of present underground facilities in the immediate vicinity of the underground construction paths have been determined from existing records and may be shown on the sketch.  The existence and location of underground structures or facilities have not been verified by excavation and therefore cannot be guaranteed by the MLGW Representative.

The Contractor is advised that a free utility location service is available upon 72 hour's notice by calling 1-800-351-1111.  The Contractor shall comply with the Tennessee Underground Utility Damage Prevention Act found at T.C.A. §§ 65-31-101 to 65-31-113.

Idle crew time is the responsibility of the Contractor and shall not be billed to MLGW as an item or otherwise. Any delay or extra cost to the Contractor due to encountering surface or subsurface structures or utilities not shown, or in locations different from those indicated on the plans shall not constitute a claim for damages.

Where a conflict is encountered between the proposed Work and any existing subsurface appliance, improvement or structure, the conflict shall be reported immediately upon its discovery to the MLGW Representative, who shall make the decision as to the proper engineering solution of the conflict.

Insofar as practicable, shifting to one side or the other, and/or raising or lowering cable shall solve conflicts.  Where the solution of a conflict necessitates the removal, and/or relocation of a conflicting structure, the MLGW Representative will arrange to have the structure removed and/or relocated.

## 25.  WORK IN EASEMENTS AND RIGHTS-OF-WAY

MLGW will provide all permanent easements, rights-of-way, and other access necessary for the performance of this Contract.  MLGW shall also provide temporary construction easements and rights-of-way deemed necessary for Work performed under this Contract.

MLGW will use due diligence in acquiring the easements and rights-of-way access before construction work starts. However, should all or part of the easements or rights-of-way not be obtained before construction begins, the Contractor shall do no work in those easements or rights-of-way before permission is obtained. Copies of the easements shall be furnished to the Contractor, but the Contractor shall perform no excavations in the easements without the approval of the MLGW Representative. Should it be necessary or desirable for the Contractor to use, occupy or have access to property outside of the specified rights-of-way, the Contractor shall make arrangements with MLGW and the tenant of such property. The Contractor shall be solely responsible for any damages or claims resulting from the Contractor's operations. The Contractor shall repair or settle all such damage or claims to the full satisfaction of MLGW and the tenant of all property involved prior to final acceptance of the Work.

The Contractor shall restore all surfaces, structures, shrubs and fences within the easements and construction rights-of-way limits to a condition equal to or better than the original as soon as possible. The Contractor shall reseed all grass areas and resod all lawns that have been destroyed or damaged by the construction operations as soon as possible after the Work has been completed.

The Contractor shall be responsible for all damages to surfaces, structures, shrubs, trees, lawns, fences, crops and other property outside of the rights-of-way limits. The Contractors shall make satisfactory settlement for such damage directly with the property owner and tenant involved, as their interests in such damage may require.

## 26.    COORDINATION WITH OTHER CONTRACTORS AND DIVISION CREWS

The Contractor shall coordinate the Work in this Contract with the MLGW Representative to determine when to start and complete necessary portions. If there is a disagreement between the Contractor and any other Contractors or MLGW crews on the schedule of Work, the decision as to what should be done will be made by the MLGW Representative.

## 27.    UNFAVORABLE CONSTRUCTION CONDITIONS

During unfavorable weather, wet ground, or other unfavorable conditions for construction operations, the Contractor shall pursue only such portions of the Work, the satisfactory quality or efficiency of which will be unaffected by the conditions. The Contractor shall only perform the Work by special means or precautions approved by the MLGW Representative that guarantee the quality or efficiency of the Work.

## 28.    LEGAL ADDRESS OF CONTRACTOR

Both the business address of the Contractor given in the bid or proposal upon which this contract is founded and the Contractor's office at the site of the Work are hereby designated as the places to which all notices, letters and other communications to the Contractor may be mailed or delivered. The delivering at either of the above named addresses, or depositing in any mail box regularly maintained by the post office of any notice, letter or other communication to the Contractor shall be deemed sufficient service upon the Contractor. The date of the service shall be the date of such delivery or mailing. Such addresses may be changed at any time by an

GC 10

EXHIBIT A

MLGW 000110

instrument in writing executed by the Contractor and presented to MLGW. Nothing herein contained shall be deemed to preclude or render inoperative the service of any notice, letter or communication upon the Contractor personally.

## 29. SUPERINTENDENCE OF WORK

Each Contractor, either personally or by a duly authorized superintendent or other representative, shall provide and maintain continually on the site of the Work during its progress and until its completion, adequate and competent superintendence of all operations for and in connection with the Work being performed under this Contract. The superintendent or other representative of the Contractor on the Work, who has charge shall be fully authorized to act for the Contractor and to receive whatever orders as may be given for the proper prosecution of the Work. MLGW must approve the Contractor's General Superintendent on the project. The Contractor shall not remove or relocate an approved General Superintendent without the approval of MLGW.

## 30. MATERIALS AND SKILL

All materials furnished by the Contractor shall be subject to the approval of MLGW, whose decision thereon shall be final. It is the intent of these Specifications to describe definitely and fully the character of materials and skill required and to require first class materials and skill throughout. Should any unexpected features arise during the progress of the Work that are not fully covered herein, the Specifications shall be interpreted by MLGW to require first class materials and skill, and such interpretation shall be accepted by the Contractor.

When a material, equipment or system is specified or approved in an addendum, by name for one or more manufacturers, such material, equipment, or system shall become an essential element of the Contract. If the Contractor desires to use another material, equipment, or system in lieu thereof, the Contractor shall request approval in writing and shall submit samples and data as required for final judgment of the acceptability of the substitution. No substitution shall be made without authority in writing from MLGW.

By making requests for substitutions the Contractor:

1)       Represents that the Contractor has personally investigated the proposed substitute product and determined it is equal or superior in all respects to that specified;

2)       Represents that the Contractor will provide the same warranty for the substitute that the Contractor would have provided for that specified;

3)       Certifies that the cost data presented is complete and includes all related costs, and excludes MLGW's redesign cost, and waives all claims for additional costs related to the substitution which subsequently become apparent;

4)       Will coordinate the installation of the accepted substitute, making such changes as may be required for the Work to be complete in all respects.

GC 11
EXHIBIT A

MLGW 000111

The Contractor shall disclose the existence and extent of financial interests, whether direct or indirect, if the Contractor has any subcontractors and material suppliers, which the Contractor may propose for this project.

The Contractor shall employ only workers who are competent to perform the work assigned to them and, in the case of skilled labor, who are adequately trained and experienced in their respective trades and who do first class work. Local labor shall be given preference when available.

## 31. SCHEDULE OF OPERATIONS

Prior to beginning the Work, the Contractor shall submit for MLGW's approval a schedule of operations covering the Work to be done.

## 32. BASIS OF PAYMENT

All costs in connection with the Work to be performed under the Contract and in accordance with the Drawings and Specifications shall be included in unit prices as outlined in the proposal. Payment for Work done will be made on the basis of unit prices. In the event MLGW authorized changes in the Work shown on the Drawings or as specified, the cost for such authorized changes must be agreed upon in writing and signed by the Contractor and MLGW.

## 33. PROJECT SIGNS

No advertising signs or other signs are to be placed on the job site without the approval of MLGW, except signs warning against trespassing.

END

EXHIBIT A

MLGW 000112

# SPECIFICATIONS

EXHIBIT A

MLGW 000113

**CONTRACT NAME:  LINE CLEARANCE**

**CONTRACT NO. 12044**

**SPECIFICATIONS**

## 1. SCOPE OF WORK:

These specifications require the furnishing of all supervision, labor, transportation, materials, equipment, tools, and supplies as required to trim and/or remove all trees and brush, to trim trees in drop crotch and lateral cut trimming methods, to perform other utility forestry services, including chemical spraying, transmission right-of-way clearing and mowing, cleaning up and disposing of materials, and to provide clearance for the wires of MLGW, the location of which will be defined by Division work orders, within Memphis and Shelby County, Tennessee.  All work shall be done in accordance with MLGW line clearance policy.

If trees have two (2) sets of cuts, the Contractor shall clear to the cut that gives the most clearance.

Existing right-of-way shall be cleared to the same width as the previous clearing unless otherwise specified by MLGW.

On new construction, the right-of--way shall be cleared to the width stated on work orders furnished by MLGW.

Unless otherwise specified by MLGW, all cutting for existing and new right-of-way clearing shall be as close to the ground as the topography and type of soil will allow, with a maximum remaining height of four (4) inches for brush stubs and six (6) inches for tree stumps.  All cut tree stumps shall be sprayed with an approved herbicide.

Trees adjacent to a right-of-way that constitute a hazard to the wire shall be removed as directed by MLGW.

Brush and debris shall be handled in such a manner as to avoid obstructing roads, paths, or waterways.

Contractor shall exercise extreme care when cutting brush or trees that are close to or touching wires to prevent breaking or wrapping the wires together or otherwise interrupting service.  If any such trouble should result, MLGW shall be notified of the location of such trouble as quickly as possible. Individual requests by property owners for special handling of brush shall be granted where reasonable. If any doubt exists as to the action taken, the requests shall be referred to MLGW for instruction.

Where clearing includes the removal of trees, the logs and limbs shall be disposed of as designed by the permit, or if not designated, such logs and limbs shall be piled at the edge of the right-of-way in such a manner that they will not interfere with pedestrian or vehicular traffic.

Where clearing includes poisonous vegetation, necessary precautions shall be taken to eliminate the possibility of livestock being poisoned by eating brush and leaves.

EXHIBIT A

MLGW 000114

Contractor shall promptly remove all equipment upon completion of the work at each location and shall dispose of all brush and debris in accordance with the laws and ordinances of Municipal, State, and Federal authorities and can be met by the Contractor to the satisfaction of MLGW. Said cleaning shall be done at the expense of the Contractor. Each block in a section shall be worked in an organized way (west to east or map blocks 1-28).

## 2.  UNIT PRICE:

MLGW's whole distribution system will be trimmed on a 3 year cycle. A goal of 1400 miles/year must be trimmed.

1)  **Feeder Cycle** - All three (3) phase Backbone Feeders will be on a three (3) year Trimming Cycle. The unit pricing will be paid by pole miles. The entire distribution electrical system will be divided into five (5) regions; each will have its own cost/mile and will be paid accordingly. Invoicing will be paid upon completion of Feeder Miles. Partial payments may be paid on certain Feeders depending on mileage. Feeder pole miles will be invoiced and paid separately from tap lines.

2)  **Tap Cycle** – All Fused Tap lines will be on a three (3) year cycle. They will be trimmed on a grid system, using our Section and Blocks. Each section is divided into 28 Blocks. Invoicing will be paid upon completion of the Block.

The contractor will be required to report weekly, by work request number each crew that worked, number of man hours worked, and an accurate production.

Tree removals above 12 inches in diameter must be approved by the MLGW representative. Removals above 12 inches in diameter will be trimmed as part of base bid and if approved to be removed, the tree will be removed using labor and equipment rates. (Tree will not be skipped because of being a possible removal.)

## 3.  LABOR AND EQUIPMENT RATE:

All work, other than cycle trimming, will be done by using Labor and Equipment rates. The other types of work are, but not limited to, ticket work, emergency work, sketches, hot spotting etc.

The contractor will turn in a time sheet for all crews working on these types of jobs weekly.

All work being done using labor and equipment rates shall be done using four (4) man manual and two (2) man bucket crews unless authorized by MLGW Representative. If work is not authorized by a MLGW's Representative, the Contractor will be responsible for any excess.

MLGW 000115

## 4. LABOR TO BE FURNISHED BY THE CONTRACTOR:

The Contractor shall furnish for the successful and satisfactory completion of the work specified herein labor under personnel classification of trimmers, utility workers/trimmer helpers, working foremen or crew leaders and general foremen.

The tree trimmers shall be classified in three separate groups namely A, B, and C. Tree Trimmer C shall be a novice or a beginning tree trimmer, Tree Trimmer B shall be intermediately skilled tree trimmer and Tree Trimmer A shall be a highly experienced and skilled tree trimmer. Such experience shall be stated by the Contractor and given approval as such by an authorized representative of MLGW.

All general foreman and working foremen or crew leaders must be able to communicate in English. Also they must have the ability to communicate and deal with customers.

Tree Trimmer A - Must have the ability to perform all phases of tree work without supervision and be able to supervise a crew in the absence of the Foreman.

a. Meet the requirements of the Trimmer B.
b. They must know emergency rescue procedures and how to operate all equipment in an emergency situation.
c. Know major trees, shrubs, and poisonous plants in the area.
d. Be able to read and understand operating orders and work orders.
e. Be able to fill out daily and weekly time sheets.
f. Know reporting procedures.
g. Take command of crew when necessary.

Tree Trimmer B - Mush have the ability to top, trim, and remove all types of trees and be able to remove overhanging limbs from all types of electrical conductors.

a. Meet the requirements of the Trimmer C.
b. They will be required to operate tools and equipment used in line clearance operations, including:
    1) Speed saw, pole pruner, pole saw
    2) Gasoline-powered chain saw
    3) Hand tools

Tree Trimmer C - Must have the ability to perform all phases of tree trimming with supervision (including pulling overhanging limbs) and be able to tie all necessary tree trimming knots.

a. Must meet requirements of Trimmer H.
b. Must know the following methods:
    1) Directional Trimming.
    2) Drop Crotching.
    3) Side Clearing.
    4) Removal of Overhang Limbs.
    5) Felling and/or Topping of Danger Trees.

The utility worker/trimmer helpers shall serve in the capacity generally associated with assisting the tree trimmers in ground duties.

<u>Trimmer Helper</u>- Must have the ability to perform <u>any</u> and <u>all</u> ground work duties as assigned.

    a. Know proper operation of tools and equipment.
    b. Know climbing knots.
    c. Handle ropes to lower limbs to the ground.
    d. Clean debris and brush from the work area.

The working Foremen or Crew leaders shall be an experienced foreman in right-of-way clearance. Such experience shall be stated by the Contractor and given approval as such by an authorized representative of MLGW. Said Foreman shall be responsible for the supervision of the crew as well as performing any of the work functions called for within this Contract, as needed.

<u>Working Foreman A</u>- Must have the ability to perform all phases of tree work without supervision and be able to supervise a crew.

    a. Meet requirement of Trimmer A.
    b. This includes removals, all methods of pruning used in line clearance;   i.e., side trimming removal of overhanging limbs.
    c. Instruct others in safety, climbing practices, efficiency in pruning,   removals, equipment operation and maintenance.
    d. They must know all city, state, and federal regulations pertaining to line clearance and right-of-way clearance.

The General Foreman shall be responsible for the work performed by the crews of Foreman A in the performance of this Contract.

It shall be the responsibility of the labor classifications stated above to drive and operate the equipment as requested and specified within the contract documents so directed by the Contractor or working foreman/crew leader.

The Contractor shall furnish bucket crews consisting of one Foreman, one Trimmer or one Utility Worker/Trimmer Helper; or Manual Crews consisting of one Working Foreman, two Trimmers and one Utility Worker/Trimmer Helper. At no time shall a bucket crew have less than two (2) workers and a manual crew have less than three (3) workers. The number, composition, and combination of crew will be at MLGW's discretion. MLGW will have the right to take appropriate action, up to and including default, if the Contractor does not meet the required level of crews.

The Contractor shall be responsible to satisfying minimum personnel level requirements for all his crews at all times. When it is determined by MLGW that personnel absences within a crew provided by the Contractor will prohibit the effectiveness of that crew in performing the work as specified and that the Contractor is unable to supply a replacement for that personnel classification(s) then MLGW will have the right to discontinue the work performed by that crew, without and expense to MLGW, for a period of time until such time that the personnel requirements can be satisfied by the Contractor to MLGW.

5. **EQUIPMENT TO BE FURNISHED BY THE CONTRACTOR AND CREW TOOL INVENTORY:**

The Contractor shall furnish to his crews the following equipment:

A. Two and one half (2-1/2) Ton Trim Lift Sixty Feet (65'), or MLGW approved equal, 10-12 Yard Dump and Tools.

1.  Equipment to be furnished
    Contractor shall furnish to his crew the following equipment:
    a. Bucket Crew
       1-Complete set climbing gear (hand saw-scabbard, rope, and saddle)
       2-Extra hand lines
       2-Power saws
       1-Complete pruners
       1-Leaf Rake
       1-Street Broom
       1-Hydraulic Pruner
       1-Hydraulic Pole Saw
       1-Communication Device/ cell phone

       All safety equipment:
       Hard hats, glasses, cones, signs (2), safety vests

B. Two (2) Ton Special Line Clearance Truck, 14 Yard, Split Dump and Tools.
C.
    a.      Manual Crew

            4- Complete set of climbing gear (see above)
            2- Extra Hand lines
            3. Power saws
            4-Complete pruners
            1-Leaf Rake
            1-Street Broom
            1-Communication Device/ cell phone

            All Safety equipment

            Hard Hats, glasses, cones, signs (2), safety vests

D. Twelve inch (12") Chipper (Trailer Unit)
E. Power Saws

The equipment as requested by MLGW is to be subject to change at the discretion of MLGW.

## 6. TREE TRIMMING:

All trimming, both initial and re-trimming, shall be done in accordance with the best recognized and approved principles of modern arboriculture and tree surgery, with balance emphasis on current tree health and clearance.

All branches of limbs shall be cut at branch collar so that no stub is left. When a limb is to be partially removed it shall, if possible, be cut back to a limb at least 1/3 the diameter of the portion removed.

Contractor shall use linemen's climbers ONLY in trees being removed.

The amount of clearance to be obtained shall be determined on the job after position occupied by the wires in reference to trees, the varied rate of growth of different trees, and the desires of the property owners have been given proper consideration.

The Contractor shall secure maximum clearance with good economy and with due regard to the rights and interests of homeowners, and public owned properties. When adequate clearance cannot be obtained because of property owner objections or other factors, Notify a Division Representative.

Effort shall be made wherever possible to eliminate all tree parts and growth points beneath the wires, and all weak, diseased and dead limbs above the wires which may fall or blow into them.

All hanging and severed limbs shall be removed from the trees. The branches, brush and debris resulting from the trimming shall be collected and disposed of in suitable disposal areas. The premises of the property owner shall be left as neat as they were before the work started.

Vines growing on poles and wires shall be removed and cut off at ground level, and chemical used on the same as agreed with property owner.

## 7. TREE REMOVAL:

(Refer to Policy Manual): A cut stump herbicide application will be used on all appropriate stumps to prevent sprouting. Contractor can use any approved herbicide. Dye must be added to herbicide

## 8. GENERAL:

Spare sharp chains shall be provided by Contractor in order to provide quantity for work rather than slow down work to sharpen chains on job site.

No manual crew will be allowed to operate less than three (3) workers unless authorized by a Division representative or Engineer.

A breakdown in equipment and loss of time shall be reported to Division Engineer.

SPEC 6
EXHIBIT A

MLGW 000119

On excessively rainy days and during extreme inclement weather work must be stopped unless emergency conditions arise. Time lost can be made up after scheduled work days and on Saturdays. This will be made up at the discretion of Memphis Light, Gas, and Water. This make-up time shall not be at overtime rate.

Lunch time will be taken as near as possible to the middle of the day and lunch will be eaten at the job site.

The fueling and maintenance of equipment shall be done before the scheduled work day begins or after the scheduled work day ends.

No one can be promoted to higher classification without Division's permission and must meet job classification.

No crew personnel or equipment shall be removed from Division's property without Division's permission.

The minimum dump bed required on all trucks shall be 14 yard capacity.

Route sheets shall be called in as directed by MLGW.

MLGW will assign all areas and sections to be worked. Contractor's General Foreman shall call MLGW before designated work day begins for any emergency work in his area and during the work day period.

MLGW will expect full cooperation on emergency work during the day, night, or weekend.

## 9. USE OF CHEMICALS AND SPRAYS:

Unless otherwise specified by MLGW, the Contractor shall mix and apply the chemicals in accordance with the recommendations of the manufacturer, and the following general specifications in his area and during the work day period.

(a)    For Foliage Application: This method shall be used only on brush over three (3) feet in average height during the active plant growth period, generally between May and September 30. Chemical mixture shall be applied to completely wet the entire leaf, stem, and trunk surface of each plant.

(b)    For Basal Application: This method shall be used on brush of any size at any season of the year. Chemical mixture shall be applied to completely wet the entire surface of the stem or trunk from the root-crown up the stem eighteen inches, with emphasis on completely wetting the root-crown.

(c)    For Stump Application: This method shall be used on all new stumps at any season of the year. Stumps shall be sprayed as soon as practical, but always on the same day that the cutting is performed. Chemical mixture shall be applied in sufficient volume to completely wet the sapwood, bark area, root-crown, and any exposed roots.

SPEC 7

EXHIBIT A

MLGW 000120

No spraying shall be done within thirty minutes after fog, dew, or rain sufficiently heavy to cause run-off unless authorized by a Division representative or Engineer. Area shall be re-sprayed at Division's expense where rain occurs within thirty minutes after spraying.

Contractors shall not be obligated to spray any portion of a line where in his opinion damages to crops, orchards, or ornamental plants may result from chemical drift.

MLGW will have the right to specify when and where chemical application and/or chemical spraying will be used in rural area or otherwise.

The Contractor shall use chemicals in a prudent manner and shall be responsible for the use of chemicals.

## 10. WOOD CHIP DISPOSAL:

All wood chips will be delivered during normal work hours to a MLGW designated disposal site.

## 11. D.O.T. REQUIREMENTS:

Contractors' drivers shall meet all State and Federal D.O.T. requirements.

## 12. TRAVEL TIME/TEMPORARY WORK STOPPAGE:

Time of travel to and from the job site shall not exceed 20 minutes each way per day, except that normal travel from one job site to another during the daily course of work shall be considered as working time and billed accordingly. Should MLGW request the crew to report at a MLGW location at the beginning or end of a work day, it is understood that the working time of the crew shall begin or end at said location.

In the event that work is stopped in excess of 30 minutes due to mechanical failure, the affected crew(s) shall be shifted to other crew(s) until the equipment is repaired to allow work continuation.

If an MLGW Representative calls for a shut down because of weather and crews are already on the job site, the Contractor will be allowed 30 minutes to contact crews and shut them down. Time will stop at that time and not at the arrival time at home base.

Contractor may be allowed to work additional hours during the week and on Saturday to make up for lost time due to weather. Saturday work must be a minimum of four (4) hours. Lost time can only be made up with the approval of an MLGW Representative.

## 13. PERMISSION TO PROCEED:

Contractor shall obtain and be responsible for securing the necessary consent or permission of the proper public authorities and/or property owners or their authorized agents before trimming, removing or spraying any trees or brush, where mowing is involved, or performing any other work, unless such consent has been obtained by MLGW and furnished to the Contractor in writing. Should permission be refused, the Contractor shall exert all reasonable effort to overcome and, at the same time, retain the good public relations of MLGW, which shall be given the highest preference at all times. If permission is still refused, the report shall be submitted to MLGW showing the name and address of

SPEC 8

EXHIBIT A

MLGW 000121

the property owner and the amount of work needed to provide adequate clearance. Contractor shall not obligate MLGW for any payment to another party for trimming, removing, or spraying any trees or brush where payment is requested, or required, or expected and no work shall be done on such trees or brush without the written approval of MLGW. Complaints received from property owners or others shall be promptly reported by the Contractor to MLGW, together with a report of the actions taken by the Contractor to settle such complaint. Contractor agrees to save harmless and identify MLGW from and against the payment of any and all sums of money by failure of the Contractor to secure permission before performing any work.

## 14. STANDBY TIME:

The MLGW Representative shall instruct the Contractor when to hold over work crews during any emergency situation. Time and one-half will be paid for labor if standby occurs after the normal work day.

Contractor shall observe all MLGW holidays. Contractor is not permitted to work on these days unless so directed by MLGW. Contractor shall not be paid for these days unless work is allowed by MLGW.

In addition, MLGW shall pay only for one (1) hour if Contractor decides not to go to work, but if Contractor does decide to go to work after one (1) hour, MLGW will not pay for the standby time.

## 15. PROTECTION OF THE PROPERTIES OF EXISTING UTILITIES

The Work covered in this Contract is, in general, in close proximity to the overhead and underground circuits, leads, cables, conduits and other structures of the existing properties, works and structures of the existing power and light distribution system, telephone, telegraph, and other signal systems, gas, water, sewer, and other overhead and underground lines of every kind and character. The Contractor shall be solely responsible for all damages to the properties incurred during the performance of Work or any work related event. The Contractor shall at his own expense make restitution for the damages to the satisfaction of the owner.

## 16. PROTECTION OF SIDEWALKS AND DRIVEWAYS:

The Contractor shall be solely responsible for all damages to sidewalks and driveways incurred during the performance of Work or any Work related event. The Contractor shall, at his own expense, make restitution for the damages to the satisfaction of the Owner and MLGW.

## 17. BARRICADES AND TRAFFIC SAFETY:

The Contractor shall at all times be aware of any traffic problems. The Contractor shall post such barricades as necessary to insure the safety of both motorist and pedestrians. During working hours when machinery may interfere with the flow of traffic, it shall be the responsibility of the Contractor to provide necessary flagmen and warning devices to warn motorists. At night clearly visible markers shall be placed around all Work. If in the opinion of the MLGW Representative, such precautions have not been taken, the Contractor shall be required to immediately enforce them. As a safety precaution for the traveling public, the Contractor shall be required to post suitable "slow", "construction", and "truck crossing" warning signs along the construction route wherever construction is in progress or the Contractor's trucks are crossing or entering the highway. If any police/sherrif flagging are required, this will be billed at cost + 10%.

SPEC 9

EXHIBIT A

MLGW 000122

## 18.  WORK IN MAIN THOUROUGH ARES:

The Contractor shall take such precautions as necessary to unsure an even and uninterrupted flow of traffic along main traffic arteries.  Traffic control shall meet all applicable federal, state and local laws and regulations and the requirements of MLGW including, when required, lane control signs, barricades, traffic cones and flagmen plus any other traffic control and safety device deemed necessary to protect the public, workforce and Work.

## 19.  ADDITIONAL CREWS REQUESTED

All reasonable and appropriate expenses incurred by the contractor when requested by MLGW to import a work force for any limited purpose shall be negotiated in good faith by MLGW and the Contractor in advance. Submit emergency storm crew rates with contract bid.


**END**


SPEC 10

EXHIBIT A

MLGW 000123

EXHIBIT A

Bond No. 107114240

# PERFORMANCE BOND

**STATE OF** Pennsylvania

**COUNTY OF** Philadelphia

## KNOW ALL BY THESE PRESENTS, THAT:

**WE,** Asplundh Tree Expert, LLC **("Principal"),**
a Limited Liability Company (form of business
organization), organized and existing under and by virtue of the laws of the State of
Pennsylvania ; and Travelers Casualty and Surety Company of America ("Surety"),
a Company (form of
business organization), organized and existing under and by virtue of the laws of the State of
Connecticut and licensed
to engage in the surety business in the State of Tennessee; do hereby bind ourselves, successors,
assigns, heirs and personal representatives for the use and benefit of Memphis **Light, Gas and
Water Division of the City of Memphis,** Tennessee, ("Obligee") **in** the sum of Nineteen Million Four
Hundred Eighty Three Thousand Eight Hundred Four and 85/100 Dollars ($19,483,804.85) for the
payment of which will and truly to be made, in lawful money of the United States.

**WHEREAS,** the Obligee, has engaged the Principal, for the sum of Nineteen Million Four Hundred
Eighty Three Thousand Eight Hundred Four and 85/100 Dollars ($19,483,804.85), which
represents an annual bond to equal **20% of the 60-month Contract price** to provide the necessary
machinery, apparatus, equipment and all material and labor for **Contract No. 12077**
more fully described in a written Contract bearing date of July 30, 2019 12077 ,
which Contract, including all writing therein referred to, is by reference hereby made a part
hereof, and it is the desire of the Obligee, that the Principal shall assure all undertakings under
the Contract. The bond shall be extended by continuation certificate for additional periods from the
expiry date hereof.

**NOW, THEREFORE,** the condition of this obligation is such that, if the above named Principal
shall promptly and faithfully perform all undertakings and obligations under the Contract, and
shall fully indemnify and save harmless the Obligee from all costs and damages which it may
suffer by any failure by the Principal so to do, and shall fully reimburse and repay the Obligee
any and all outlay and expense which it may incur in making good any such default, then this
obligation shall be null and void; otherwise, it shall remain in full force and effect.

If the Principal performs the Contract, to the satisfaction of MLGW, the Surety and the Principal
shall have no obligation under this Performance Bond.

Provided there is no default by the Obligee, the Surety's obligation under this Performance Bond
shall arise after:

> A.    The Obligee has notified the Principal and the Surety in writing (at the address
> described on the signature page) that the Obligee is considering declaring the
> Principal in default of the Contract and has requested and attempted to arrange a

**C- 32**

# EXHIBIT B

conference with the Principal and the Surety to be held not later than 15 days after receipt of such notice to discuss methods of performing the Contract. If the Obligee, the Principal, and the Surety agree, the Principal shall be allowed a reasonable time to perform the Contract, but such agreement shall not waive the Obligee's right subsequently to declare the Principal in default; and

B.    The Obligee has declared the Principal in default of the Contract and formally terminated the Principal's right to complete the Contract. Such Default shall not be declared earlier than 20 days after the Principal and the Surety have received the notice as provided in A; and

C.    The Obligee has agreed to pay the balance of the contract price to the Surety under the terms of the Contract or to a contractor selected to perform the Contract under the terms of the Contract with the Obligee.

When the Obligee has satisfied the conditions aforesaid, the Surety shall promptly and at Surety's expense take one (1) of the following actions:

A.    Arrange for the Principal, with consent of the Obligee, to perform and complete the Contract; or

B.    Perform and complete the Contract itself, through the Surety's agents or through independent contractors; or

C.    Obtain bids or negotiate proposals from qualified contractors acceptable to the Obligee for a contract for performance and completion of the Contract, arrange for a contract to be prepared for execution by the Obligee and the contractor selected with the Obligee's concurrence, to be secured with performance and payment bonds, executed by a qualified surety equivalent to the bonds issued on the Contract, and pay to the Obligee the damages over the balance of the Contract price incurred by the Obligee resulting from the Principal's default; or

D.    Waive the Surety's right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances, after investigation, determine the amount for which the Surety may be liable to the Obligee and, as soon as practicable after the amount is determined, tender payment to the Obligee; or

E.    Deny liability in whole or in part and notify the Obligee in writing, citing reasons.

If the Surety does not proceed with reasonable promptness, the Surety shall be deemed in default on this Performance Bond 15 days after receipt of an additional written notice from the Obligee to the Surety demanding the Surety perform the Surety's obligations under this Performance Bond, and the Obligee shall be entitled to enforce any remedy available to the Obligee. If the Surety proceeds as provided above and the Obligee refuses the payment tendered or the Surety has denied liability, in whole or in part, without further written notice the Obligee shall be

C- 33

EXHIBIT B

entitled to enforce any remedy available to the Obligee including the Obligee's costs, expenses, and attorney's fees.

After the Obligee has terminated the Principal's right to complete the Contract, and if the Surety elects to act under the aforesaid subparagraphs A through E above, then the responsibilities of the Surety to the Obligee shall not be greater than those of the Principal under the Contract, and the responsibilities of the Obligee to the Surety shall not be greater than those of the Obligee under the Contract. To the limit of this Performance Bond, but subject to the commitment by the Obligee of the balance of the Contract price to mitigation of costs and damages on the Contract, the Surety is obligated without duplication for:

    A.    The responsibilities of the Principal for correction of defective work and completion of the Contract;

    B.    Additional legal, design, professional and delay costs resulting from the Principal's default, and resulting from the actions or failure to act of the Surety under the preceding paragraph; and

    C.    Liquidated damages, or if no liquidated damages are specified in the Contract, actual damages caused by delayed performance or nonperformance of the Principal.

When this Performance Bond has been furnished to comply with a statutory or other legal requirement in the location where the Contract was to be performed, any provision in this Performance Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated. The intent is this Performance Bond shall be construed as a statutory bond and not as a common law bond.

And, for value received, it is stipulated and agreed that no change, extension of time, alteration or addition to the terms or to the work to be performed or the Specifications accompanying the same shall in anywise affect the obligations under this obligation or bond, and notice is waived of any such change, extension of time, alteration or addition to the terms or to the work or to the Specifications.

**SIGNATURE PAGE TO FOLLOW**

C 34

EXHIBIT B

IN WITNESS WHEREOF, the Principal has affixed the principal's signature and the Surety
has affixed the Surety's signature and seal, by their duly authorized officers, on the ___8th___ day
of ___August___ , 20 19 ___ .


Asplundh Tree Expert, LLC
PRINCIPAL


BY: PRINT NAME


TITLE


708 Blair Mill Road, Willow Grove, PA 19090-1784
ADDRESS



Travelers Casualty and Surety Company of America
SURETY


BY: PRINT NAME        Kaitlyn Malkowski


Attorney-in-Fact
TITLE


One Tower Square, Hartford, CT 06183
ADDRESS


ACKNOWLEDGEMENT PAGE TO FOLLOW


C - 35


EXHIBIT B

## ACKNOWLEDGEMENT OF PRINCIPAL

**STATE OF** _____
**COUNTY OF** _____

Personally appeared before me, a Notary Public in and for the above referenced State and County, the undersigned, ___ _____ ; _____ , with whom I am acquainted and made oath that he or she is the _____ of _____ , that he or she is duly authorized to execute the foregoing Performance Bond in that capacity, and that he or she executed the same.

Witness my hand and seal this_____ day of _____ , 20 ____ .

_____
My Commission Expires:

## ACKNOWLEDGEMENT OF SURETY

**STATE OF** ___ Pennsylvania _____
**COUNTY OF** ___ Philadelphia _____

Personally appeared before me, a Notary Public in and for the above referenced State and County, the undersigned, Kaitlyn Malkowski _____ , with whom I am acquainted, and made oath that he or she is the Attorney-in-Fact _____ of Travelers Casualty and Surety Company of America , a company licensed to engage in the surety business in the State of Tennessee, and that he or she is duly authorized to execute the foregoing Performance Bond in that capacity, and that he or she executed the same.

Witness my hand and seal this___ 8th _____ day of ___ August _____ , 20 19 __ .

_____
My Commission Expires: 9/18/2021

C- 36

EXHIBIT B

Bond No. 107114240

## CONTRACTOR'S LABOR AND MATERIALS PAYMENT BOND

STATE OF Pennsylvania

COUNTY OF Philadelphia

KNOW ALL BY THESE PRESENTS, THAT:

WE, Asplundh Tree Expert, LLC, _____ "Principal"), a Limited Liability Company _____ (form of business organization), organized and existing under and by virtue of the laws of the State of Pennsylvania ; and Travelers Casualty and Surety Company of America ("Surety"), a Company _____ (form of business organization), organized and existing under and by virtue of the laws of the State of Connecticut _____ and licensed to engage in the surety business in the State of Tennessee; do hereby bind ourselves, successors, assigns, heirs and personal representatives for the use and benefit of Memphis Light, Gas and Water Division of the City of Memphis, Tennessee, existing under and by virtue of the laws of the State of Tennessee ("Obligee") in the sum of Twenty Four Million Three Hundred Fifty Four Thousand Seven Hundred Fifty Six and 06/100 Dollars ($24,354,756.06)for the payment of which will and truly to be made, in lawful money of the United States.

WHEREAS, the Obligee has engaged the said Principal, for the sum of Twenty Four Million Three Hundred Fifty Four Thousand Seven Hundred Fifty Six and 06/100 Dollars ($24,354,756.06), to provide the necessary machinery, apparatus, equipment, and all material and labor for Contract No. 12077 _ , more fully described in a written Contract bearing date of July 30, 2019 _____ , a copy of which said Contract, including all writing therein referred to, between Principal and Obligee made a part hereof, and it is the desire of the Obligee, that the Principal shall assure all undertakings under the Contract, and shall assure and protect all laborers and furnishers of material on said work, both as provided by Sections 12-4-201 through 12-4-208 inclusive, of the Tennessee Code Annotated, and also independently of said statutes.

NOW, therefore, the condition of this obligation is such that if the Principal shall promptly pay all claimants, as hereinafter defined, for all labor, materials or equipment used by the Principal or any immediate or remote subcontractor under the Principal in the prosecution of the work provided for in the Contract, then this obligation shall be null and void; otherwise, it shall remain in full force and effect. For this obligation, the term "claimant" shall mean an individual or entity having a direct contract with the Principal or with a subcontractor of the Principal to furnish labor, materials or equipment for use in performance of the Contract.

The Surety shall have no obligation under this Contractor's Labor and Materials Payment Bond (Payment Bond) until:

A. Claimants who are employed by or have a direct contract with the Principal have given written notice to the Surety (at the address described on the signature page) and sent a copy of such notice to the Obligee stating a claim is being made under this Payment Bond, and, with substantial accuracy, the amount of the claim; or,

C- 37

EXHIBIT B

B. Claimants who do not have a direct contract with the Principal have furnished written notice to the Principal and sent a copy of such notice to the Obligee, after such labor, materials or equipment is furnished, and within 90 days after the completion of the work under the Contract, stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was performed.

The Surety's total obligation shall not exceed this Payment Bond, and this Payment Bond shall be credited for any payments made in good faith by the Surety.

When this Payment Bond has been furnished to comply with a statutory or other legal requirement in the location where the work under the Contract was performed, any provision in this Payment Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is this Payment Bond shall be construed as a statutory bond and not as a common law bond.

Upon request by any person or entity appearing to be a potential beneficiary of this Payment Bond, the Principal shall promptly furnish a copy of this Payment Bond or shall permit a copy to be made.

**AND (FOR VALUE RECEIVED)**, it is stipulated and agreed that no change, extension of time, alteration or addition to the terms of the said Contract or to the work to be performed thereunder or the Specifications accompanying the same shall in anywise affect the obligations under this Payment Bond, and notice is hereby waived of any such change, extension of time, alteration or addition to the terms of the Contract or to the work or to the Specifications.

<u>**SIGNATURE PAGE TO FOLLOW**</u>

C- 38

EXHIBIT B

**IN WITNESS WHEREOF,** the Principal has hereunto affixed the Principal's signature and the Surety has hereunto affixed the Surety's signature and seal, by their duly authorized officers, on the __8th___ day of _August_____ , 20 _19_____ .

Asplundh Tree Expert, LLC
_____
PRINCIPAL

_____
BY: PRINT NAME

_____
TITLE

708 Blair Mill Road, Willow Grove, PA 19090-1784
_____
ADDRESS

Travelers Casualty and Surety Company of America
_____
SURETY

_____          Kaitlyn Malkowski
BY: PRINT NAME

Attorney-in-Fact
_____
TITLE

One Tower Square, Hartford, CT 06183
_____
ADDRESS

<u>**ACKNOWLEDGEMENT PAGE TO FOLLOW**</u>

**C- 39**

EXHIBIT B

## ACKNOWLEDGEMENT OE PRINCIPAL

**STATE OF**_____

**COUNTY OF**_____

Personally appeared before me, a Notary Public in and for the above referenced State and
County, the undersigned, _____, with whom I am
acquainted and made oath that he or she, is the _____ of
_____, that he or she is duly authorized
to execute the foregoing Contractor's Labor And Materials Payment Bond in that capacity, and
that he or she executed the same.

Witness my hand and seal this _____ day of _____ , 20_____ .


My Commission Expires:


## ACKNOWLEDGEMENT OF SURETY

**STATE OF** Pennsylvania

**COUNTY OF** Philadelphia

Personally appeared before me, a Notary Public in and for the above referenced State and
County, the undersigned,  Kaitlyn Malkowski , with whom I am
acquainted, and made oath that he or she is the  Attorney-in-Fact  of
Travelers Casualty and Surety Company of America, a company licensed to engage in the surety business in
the State of Tennessee, and that he or she is duly authorized to execute the foregoing
Contractor's Labor And Materials Payment Bond in that capacity, and that he or she executed
the same.

Witness my hand and seal this  8th  day of  August , 20 19  .


My Commission Expires: 9/18/2021


**C- 40**


EXHIBIT B



MICHAEL G. McLAREN, Attorney
Email: mmclaren@blackmclaw.com
Direct: (901) 270-6525

BLACK / MCLAREN / JONES / RYLAND / GRIFFEE

| MEMPHIS OFFICE | BRENTWOOD OFFICE |
|---|---|
| SUITE 360 | BUILDING 300, SUITE 313 |
| 530 OAK COURT DRIVE | 104 EAST PARK DRIVE |
| MEMPHIS, TENNESSEE 38117 | BRENTWOOD, TENNESSEE 37027 |
| PHONE (901) 762-0535 | PHONE (615) 815-1508 |

Fax: (901) 762-0539  /  www.bmjrglaw.com

November 29, 2022

VIA EMAIL
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Nathan Bicks, Esq.
Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

VIA EMAIL
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Asplundh Tree Experts, LLC
c/o Nathan Bicks, Esq.
c/o Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

VIA FEDERAL EXPRESS

Travelers Casualty and Surety Company of America
ATTN: Kaitlyn Malkowski
One Tower Square
Hartford, CT 06183

Re:    Asplundh / MLGW
       My File No. 2302.002

Dear Nathan, Doug, and Ms. Malkowski:

Following our last meeting, your client, Asplundh, was to have submitted a per-mile proposal to try to rectify the extreme deficiencies of tree cutting thus far this year.

EXHIBIT C

Nathan Bicks, Esq., et al.
November 29, 2022
Page 2

We have never received such a proposal. Consequently, pursuant to paragraph XVII of the Contract and paragraph A of the Performance Bond, MLGW is notifying Asplundh and the Surety that MLGW is considering declaring Asplundh in default of the Contract and is requesting and attempting to arrange another conference with Asplundh (and the Surety) to be held no later than December 14, 2022, to discuss methods of performing the Contract.

Note that MLGW is <u>not</u> terminating the contract at this time but, pursuant to Article V of the Contract, Article XVII of the Contract, and paragraph A of the Bond, is reserving its rights to declare the Contract in default, terminate the Contract, or act on any other remedies available to it under the Contract.

The Contract provides that notices to Asplundh shall be sent to:

> Asplundh Tree Experts, LLC
> c/o Nathan Bicks, Esq.
> c/o Douglas Halijan, Esq.
> BURCH PORTER & JOHNSON, PLLC
> 130 North Court Avenue
> Memphis, Tennessee 38103

And as to the Bond, notices shall be given to:

> Travelers Casualty and Surety Company of America
> ATTN: Kaitlyn Malkowski
> One Tower Square
> Hartford, CT 06183

MLGW would still welcome some resolution of the issues involved in this matter but is taking this step to fulfill its obligations under the Contract and the Bond.

Please call me at your convenience.

Sincerely,

Michael G. McLaren

John C. Ryland

MGM/clw

EXHIBIT C

FedEx Ship Manager - Print Your Label(s)

ORIGIN ID:NQAA          (901) 762-0535
MICHAEL G. MCLAREN
BLACK MCLAREN JONES RYLAND &GRIFFEE
530 OAK COURT DRIVE, SUITE 360

MEMPHIS, TN 38117
UNITED STATES US

SHIP DATE: 29NOV22
ACTWGT: 0.50 LB
CAD: 8577300/INET4530

BILL SENDER

TO **KAITLYN MALKOWSKI**
**TRAVELERS CASUALTY & SURETY CO**
**ONE TOWER SQUARE**

**HARTFORD CT 06183**
(901) 762-0535          REF: 2302.002
INV:
PO:                          DEPT:

591.I3/9/97/FE2D


FedEx
Express

**WED - 30 NOV 4:30P**
**STANDARD OVERNIGHT**

TRK#
0201   **7706 2385 6453**

06183
**BDL**
CT-US

# XE KXAA



11/29/22, 3:33 PM

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

EXHIBIT C

FedEx 146525 Rev. 1/19 RRDO 21

https://www.fedex.com/shipping/shipmentConfirmationAction.handle?method=doContinue

1/1



MICHAEL G. MCLAREN, Attorney
Email: mmclaren@blackmclaw.com
Direct: (901) 270-6525

BLACK / MCLAREN / JONES / RYLAND / GRIFFEE

| MEMPHIS OFFICE | BRENTWOOD OFFICE |
|---|---|
| SUITE 360 | BUILDING 300, SUITE 313 |
| 530 OAK COURT DRIVE | 104 EAST PARK DRIVE |
| MEMPHIS, TENNESSEE 38117 | BRENTWOOD, TENNESSEE 37027 |
| PHONE (901) 762-0535 | PHONE (615) 815-1508 |

Fax: (901) 762-0539  /  www.bmjrglaw.com

May 30, 2023

<u>VIA EMAIL</u>
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Nathan Bicks, Esq.
Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

Re:  **Notice of Breach of Contract**
     Asplundh / MLGW
     My File No. 2302.002

Dear Nathan and Doug:

Please consider this Memphis Light, Gas and Water's Notice of Breach of the contract titled "Contract Documents for Line Clearance, Contract No. 12077," by and between Memphis Light, Gas and Water Division, Board of Light, Gas and Water Commissioners and Asplundh Tree Expert, LLC, entered into the 30th day of August, 2019 ("Contract"). The particular contract is labeled "Line Clearance," and the parties thereto as specified in Article I are Memphis Light, Gas and Water Division of the City of Memphis, Tennessee ("MLGW") and Asplundh Tree Expert, LLC ("Asplundh").

The term of the Contract specified in Article V is for "60 months from the date of the notice to proceed." This is a Notice of Breach of that contract as required by Article VIII. Notice is specified to be given to Asplundh Tree Expert, LLC, c/o Gene Hayden, 708 Blair Mill Road, Willow Grove, PA 19090. However, since you have been acting as Asplundh's attorneys, I assume this notice can be appropriately accepted by you. Please let me know immediately if you cannot accept this notice for any reason.

There is also a bond on this Contract pursuant to Article XIV. The bond is a "performance bond for 100% of the contract price." My law partner John Ryland will be handling the issues with the bond and will send you a separate notice.

EXHIBIT D

Nathan Bicks, Esq.
Douglas Halijan, Esq.
May 30, 2023
Page 2

Recall that MLGW sent you and the bonding company a letter on November 29, 2022, indicating it was considering declaring a breach. Subsequently, Asplundh and MLGW continued meeting to discuss a resolution, which was not reached.

The breach of contract-specific provisions noted in the Contract that this notice covers are contained in Article XVII, titled "Breach of Contract." MLGW cites that entire paragraph in this Notice of Breach but calls particular attention to the following paragraphs:

1.  Fail or refuse to perform the Work in whole or in part after notice by MLGW to proceed;

2.  Abandon the Work;

3.  Unnecessarily or unreasonably delay the Work at any time;

6.  Willfully or negligently violate any provisions of the Contract;

7.  Fail or refuse to fully complete the Work within the time specified or extension of time granted by MLGW;

11. Fail or refuse to comply with the terms and provisions of the Contract and or Contract Documents;

12. Fail to complete the work within the specified time allotted for completion of Work as set forth in the proposal and otherwise as set forth in the Contract Documents;

MLGW also cites Article XXIV in this Notice of Breach. That section indicates that "the Work shall begin in a timely manner and be continued through completion … ." It also specifies that Asplundh "agrees to complete each portion of the Work by the date specified in Contract Documents … ."

MLGW has never granted an extension of time as specified in Article XXV of the Contract, nor has Asplundh ever requested one.

MLGW also cites Article XXVI in this Notice of Breach, which requires Asplundh to "furnish the personnel that shall be required to complete the Work in a timely manner and within the Contract amount." That same paragraph requires Asplundh, at Asplundh's sole cost and expense, to "train employees prior to the start of the Work … ."

EXHIBIT D

Nathan Bicks, Esq.
Douglas Halijan, Esq.
May 30, 2023
Page 3

In point of fact, the average number of crews at work for MLGW has dropped as follows:

2020 – 37
2021 – 27
2022 – 17
2023 – 16

The miles trimmed by Asplundh has also dropped precipitously:

2020 – 610
2021 – 552
2022 – 189.6
2023 (as of May 17, 2023) – 20.2

At this point, MLGW has notified in you, in writing, that MLGW is considering declaring you in default of the Contract. Formally, we are requesting a conference with you to be held not later than 15 days after the receipt of this notice to discuss methods of performing the Contract. I will point out, however, that this has previously been done, and an extension of time was granted while you, Asplundh, and MLGW and the Principal were asked to meet. MLGW excused the Surety from that meeting, but MLGW and Asplundh met several, several times in an effort to fulfill the terms of the Contract. If you (Asplundh) deem it necessary for appropriate bond coverage to have and schedule the meeting called for in the bond, please let us know immediately, and we will fully comply.

In the event there is no "cure" under the terms of the Contract, MLGW will terminate the Contract for cause and take any remedy which may be available to them, including reletting the Contract, bringing an action for breach, and any other remedies.

Also, please note that I am sending this by email to you. If you require certified mail or any other form of delivery, please let me know. Otherwise, we will consider your non-response as a waiver of any other method of service.

Sincerely,

Michael G. McLaren

MGM/clw
Attachment
cc:    John C. Ryland, Esq. (Via Email)

EXHIBIT D



**BLACK / MCLAREN / JONES / RYLAND / GRIFFEE**

MICHAEL G. MCLAREN, Attorney
Email: mmclaren@blackmclaw.com
Direct: (901) 270-6525

| MEMPHIS OFFICE | BRENTWOOD OFFICE |
|---|---|
| SUITE 360 | BUILDING 300, SUITE 313 |
| 530 OAK COURT DRIVE | 104 EAST PARK DRIVE |
| MEMPHIS, TENNESSEE 38117 | BRENTWOOD, TENNESSEE 37027 |
| PHONE (901) 762-0535 | PHONE (615) 815-1508 |

Fax: (901) 762-0539  /  www.bmjrglaw.com

November 29, 2022

<u>VIA EMAIL</u>
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]                    <span style="color:red">COPY</span>

Nathan Bicks, Esq.
Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

<u>VIA EMAIL</u>
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Asplundh Tree Experts, LLC
c/o Nathan Bicks, Esq.
c/o Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

<u>VIA FEDERAL EXPRESS</u>

Travelers Casualty and Surety Company of America
ATTN: Kaitlyn Malkowski
One Tower Square
Hartford, CT 06183

Re:    Asplundh / MLGW
       My File No. 2302.002

Dear Nathan, Doug, and Ms. Malkowski:

Following our last meeting, your client, Asplundh, was to have submitted a per-mile proposal to
try to rectify the extreme deficiencies of tree cutting thus far this year.

EXHIBIT D

Nathan Bicks, Esq., et al.
November 29, 2022
Page 2

We have never received such a proposal. Consequently, pursuant to paragraph XVII of the Contract and paragraph A of the Performance Bond, MLGW is notifying Asplundh and the Surety that MLGW is considering declaring Asplundh in default of the Contract and is requesting and attempting to arrange another conference with Asplundh (and the Surety) to be held no later than December 14, 2022, to discuss methods of performing the Contract.

Note that MLGW is <u>not</u> terminating the contract at this time but, pursuant to Article V of the Contract, Article XVII of the Contract, and paragraph A of the Bond, is reserving its rights to declare the Contract in default, terminate the Contract, or act on any other remedies available to it under the Contract.

The Contract provides that notices to Asplundh shall be sent to:

> Asplundh Tree Experts, LLC
> c/o Nathan Bicks, Esq.
> c/o Douglas Halijan, Esq.
> BURCH PORTER & JOHNSON, PLLC
> 130 North Court Avenue
> Memphis, Tennessee 38103

And as to the Bond, notices shall be given to:

> Travelers Casualty and Surety Company of America
> ATTN: Kaitlyn Malkowski
> One Tower Square
> Hartford, CT 06183

MLGW would still welcome some resolution of the issues involved in this matter but is taking this step to fulfill its obligations under the Contract and the Bond.

Please call me at your convenience.

Sincerely,

Michael G. McLaren

John C. Ryland

MGM/clw

EXHIBIT D



JOHN C. RYLAND, Attorney
Email: jryland@blackmclaw.com

BLACK / MCLAREN / JONES / RYLAND / GRIFFEE

**MEMPHIS OFFICE**
SUITE 360
530 OAK COURT DRIVE
MEMPHIS, TENNESSEE 38117
PHONE (901) 762-0535

**BRENTWOOD OFFICE**
BUILDING 300, SUITE 313
104 EAST PARK DRIVE
BRENTWOOD, TENNESSEE 37027
PHONE (615) 815-1508

Fax: (901) 762-0539 / www.bmjrglaw.com

June 1, 2023

**VIA FEDERAL EXPRESS**

Travelers Casualty & Surety Company of America
ATTN: Kaitlyn Malkowski
One Tower Square
Hartford, Connecticut 06183

**VIA E-MAIL**
[lmmurphy@travelers.com]

Laura M. Murphy, Esq.
Travelers
P.O. Box 2989
Hartford, Connecticut 06104-2989

Re:    Performance Bond No. 107114240
       Principal: Asplundh Tree Expert, LLC
       Surety: Travelers Casualty & Surety Company of America
       Oblige: Memphis Light, Gas & Water Division of the City of Memphis, Tennessee
       My File No. 2302.002

Dear Ms. Malkowski and Ms. Murphy:

I represent Memphis Light, Gas & Water Division of the City of Memphis, Tennessee (hereinafter "MLG&W") in relation to its rights and claims under the above-mentioned Performance Bond. A copy of the Performance Bond is enclosed herein for your ease of reference.

On November 29, 2022 written notice was provided to Travelers pursuant to paragraph A of the Performance Bond advising that MLG&W was considering declaring Asplundh in default of Asplundh's Contract with MLG&W. In the November 29, 2022 notice letter, MLG&W advised that it was requesting and attempting to arrange another conference with Asplundh (and Travelers) to be held no later than December 14, 2022 to discuss methods of Asplundh performing the Contract. For your ease of reference, a copy of the November 29, 2022 notice letter is enclosed herein.

EXHIBIT E

Kaitlyn Malkowski
Laura M. Murphy, Esq.
June 1, 2023
Page 2

Subsequent to the November 29, 2022 notice letter, Asplundh and MLG&W conferred at length to discuss proposals in an effort to discuss a resolution of Asplundh's failure to perform under the Contract and no resolution was reached. Since that time, Asplundh's failure to perform its obligations under the Contract has continued through the present date.

On May 30, 2023, MLG&W, by and through counsel, sent Asplundh a Notice of Breach letter as required by Article VIII of the Contract. A copy of the May 30, 2023 Notice of Breach letter to Asplundh is enclosed herein. As you will note in the May 30, 2023 letter, MLG&W has requested a conference with Asplundh to be held no later than fifteen (15) days after receipt of the Notice letter to discuss methods of Asplundh performing the Contract. However, please note that this has previously been done in an effort to get Asplundh to fulfill its obligations under the Contract and Asplundh has failed to do so. We are trying to schedule the aforementioned meeting with Asplundh within the next two (2) weeks. A copy of a May 31, 2023 letter to the attorneys for Asplundh setting forth several proposed dates for the meeting is enclosed herein for your review. Please promptly let me know the availability of a Travelers' representative to participate in the subject meeting pursuant to the terms of Section A of the Performance Bond. I look forward to hearing from you regarding this matter so that the meeting can be promptly scheduled on a convenient date for all concerned.

Sincerely,

John C. Ryland

JCR/klw
Enclosures
cc:  Michael G. McLaren, Esq. (Via Email)
     Amy Worrell Sterling, Esq. (Via Email)

EXHIBIT E

FedEx Ship Manager - Print Your Label(s)

ORIGIN ID:NQAA        (901) 762-0535
JOHN C. RYLAND
BLACK MCLAREN JONES RYLAND & GRIFFE
530 OAK COURT DRIVE, SUITE 360

MEMPHIS, TN 38117
UNITED STATES US

SHIP DATE: 01JUN23
ACTWGT: 0.50 LB
CAD: 8577300/INET4610

BILL SENDER

TO   KAITLYN MALKOWSKI
     TRAVELERS CASUALTY & SURETY CO
     ONE TOWER SQUARE

     HARTFORD CT 06183
(901) 762-0535          REF: 2302 002
INV:
PO:                     DEPT:



FedEx
Express

FRI - 02 JUN 4:30P
STANDARD OVERNIGHT

TRK#
0201   7723 2189 6481

06183
CT-US   BDL

XE KXAA



After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

EXHIBIT E

Bond No. 107114240

## PERFORMANCE BOND

**STATE OF** Pennsylvania

**COUNTY OF** Philadelphia

**KNOW ALL BY THESE PRESENTS, THAT:**

WE, Asplundh Tree Expert, LLC                                                    (**"Principal"**),
a Limited Liability Company                                                       (form of business
organization), organized and existing under and by virtue of the laws of the State of
Pennsylvania                          ; and Travelers Casualty and Surety Company of America ("Surety"),
a Company                                                                          (form of
business organization), organized and existing under and by virtue of the laws of the State of
Connecticut                                                                       and licensed
to engage in the surety business in the State of Tennessee; do hereby bind ourselves, successors,
assigns, heirs and personal representatives for the use and benefit of Memphis Light, Gas and
Water Division of the City of Memphis, Tennessee, ("Obligee") in the sum of Nineteen Million Four
Hundred Eighty Three Thousand Eight Hundred Four and 85/100 Dollars ($19,483,804.85) for the
payment of which will and truly to be made, in lawful money of the United States.

WHEREAS, the Obligee, has engaged the Principal, for the sum of Nineteen Million Four Hundred
Eighty Three Thousand Eight Hundred Four and 85/100 Dollars ($19,483,804.85), which
represents an annual bond to equal 20% of the 60-month Contract price to provide
machinery, apparatus, equipment and all material and labor for Contract No. 12077 the necessary
more fully described in a written Contract bearing date of August 30, 2019   12077
which Contract, including all writing therein referred to, is by reference hereby made a part
hereof, and it is the desire of the Obligee, that the Principal shall assure all undertakings under
the Contract. The bond shall be extended by continuation certificate for additional periods from the
expiry date hereof.

NOW, THEREFORE, the condition of this obligation is such that, if the above named Principal
shall promptly and faithfully perform all undertakings and obligations under the Contract, and
shall fully indemnify and save harmless the Obligee from all costs and damages which it may
suffer by any failure by the Principal so to do, and shall fully reimburse and repay the Obligee
any and all outlay and expense which it may incur in making good any such default, then this
obligation shall be null and void; otherwise, it shall remain in full force and effect.

If the Principal performs the Contract, to the satisfaction of MLGW, the Surety and the Principal
shall have no obligation under this Performance Bond.

Provided there is no default by the Obligee, the Surety's obligation under this Performance Bond
shall arise after:

      A.    The Obligee has notified the Principal and the Surety in writing (at the address
           described on the signature page) that the Obligee is considering declaring the
           Principal in default of the Contract and has requested and attempted to arrange a

EXHIBIT E

conference with the Principal and the Surety to be held not later than 15 days after receipt of such notice to discuss methods of performing the Contract. If the Obligee, the Principal, and the Surety agree, the Principal shall be allowed a reasonable time to perform the Contract, but such agreement shall not waive the Obligee's right subsequently to declare the Principal in default; and

B.    The Obligee has declared the Principal in default of the Contract and formally terminated the Principal's right to complete the Contract. Such Default shall not be declared earlier than 20 days after the Principal and the Surety have received the notice as provided in A; and

C.    The Obligee has agreed to pay the balance of the contract price to the Surety under the terms of the Contract or to a contractor selected to perform the Contract under the terms of the Contract with the Obligee.

When the Obligee has satisfied the conditions aforesaid, the Surety shall promptly and at Surety's expense take one (1) of the following actions:

A.    Arrange for the Principal, with consent of the Obligee, to perform and complete the Contract; or

B.    Perform and complete the Contract itself, through the Surety's agents or through independent contractors; or

C.    Obtain bids or negotiate proposals from qualified contractors acceptable to the Obligee for a contract for performance and completion of the Contract, arrange for a contract to be prepared for execution by the Obligee and the contractor selected with the Obligee's concurrence, to be secured with performance and payment bonds, executed by a qualified surety equivalent to the bonds issued on the Contract, and pay to the Obligee the damages over the balance of the Contract price incurred by the Obligee resulting from the Principal's default; or

D.    Waive the Surety's right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances, after investigation, determine the amount for which the Surety may be liable to the Obligee and, as soon as practicable after the amount is determined, tender payment to the Obligee; or

E.    Deny liability in whole or in part and notify the Obligee in writing, citing reasons.

If the Surety does not proceed with reasonable promptness, the Surety shall be deemed in default on this Performance Bond 15 days after receipt of an additional written notice from the Obligee to the Surety demanding the Surety perform the Surety's obligations under this Performance Bond, and the Obligee shall be entitled to enforce any remedy available to the Obligee. If the Surety proceeds as provided above and the Obligee refuses the payment tendered or the Surety has denied liability, in whole or in part, without further written notice the Obligee shall be

C- 33

EXHIBIT E

entitled to enforce any remedy available to the Obligee including the Obligee's costs, expenses, and attorney's fees.

After the Obligee has terminated the Principal's right to complete the Contract, and if the Surety elects to act under the aforesaid subparagraphs A through E above, then the responsibilities of the Surety to the Obligee shall not be greater than those of the Principal under the Contract, and the responsibilities of the Obligee to the Surety shall not be greater than those of the Obligee under the Contract. To the limit of this Performance Bond, but subject to the commitment by the Obligee of the balance of the Contract price to mitigation of costs and damages on the Contract, the Surety is obligated without duplication for:

A.    The responsibilities of the Principal for correction of defective work and completion of the Contract;

B.    Additional legal, design, professional and delay costs resulting from the Principal's default, and resulting from the actions or failure to act of the Surety under the preceding paragraph; and

C.    Liquidated damages, or if no liquidated damages are specified in the Contract, actual damages caused by delayed performance or nonperformance of the Principal.

When this Performance Bond has been furnished to comply with a statutory or other legal requirement in the location where the Contract was to be performed, any provision in this Performance Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated. The intent is this Performance Bond shall be construed as a statutory bond and not as a common law bond.

And, for value received, it is stipulated and agreed that no change, extension of time, alteration or addition to the terms or to the work to be performed or the Specifications accompanying the same shall in anywise affect the obligations under this obligation or bond, and notice is waived of any such change, extension of time, alteration or addition to the terms or to the work or to the Specifications.

**SIGNATURE PAGE TO FOLLOW**

EXHIBIT E

IN WITNESS WHEREOF, the Principal has affixed the principal's signature and the Surety
has affixed the Surety's signature and seal, by their duly authorized officers, on the ___8th___ day
of ___August___ , 20 19 ____ .


Asplundh Tree Expert, LLC
PRINCIPAL

BY: PRINT NAME Ann P. Ercolani

  Asst. Secretary(Ins./Bonds)
TITLE

  708 Blair Mill Road, Willow Grove, PA 19090-1784
ADDRESS



Travelers Casualty and Surety Company of America
SURETY

BY: PRINT NAME   Kaitlyn Malkowski

  Attorney-In-Fact
TITLE

  One Tower Square, Hartford, CT 06183
ADDRESS


ACKNOWLEDGEMENT PAGE TO FOLLOW


C- 35


EXHIBIT E

**ACKNOWLEDGEMENT OF PRINCIPAL**

**STATE OF** Pennsylvania

**COUNTY OF** Montgomery

Personally appeared before me, a Notary Public in and for the above referenced State and County, the undersigned, Laura Ann Wilson ; Ann P. Ercolani with whom I am acquainted and made oath that he or she is the **Asst. Secretary(Ins./Bonds)** of **Asplundh Tree Expert, LLC** , that he or she is duly authorized to execute the foregoing Performance Bond in that capacity, and that he or she executed the same.

Witness my hand and seal this **09th** day of **August** , 20 **19** .

My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA - NOTARY SEAL
Laura Ann Wilson, Notary Public
Montgomery County
My Commission Expires 04/15/2023
Commission Number 1269615

**ACKNOWLEDGEMENT OF SURETY**

**STATE OF** Pennsylvania

**COUNTY OF** Philadelphia

Personally appeared before me, a Notary Public in and for the above referenced State and County, the undersigned, Kaitlyn Malkowski , with whom I am acquainted, and made oath that he or she is the Attorney-In-Fact of Travelers Casualty and Surety Company of America , a company licensed to engage in the surety business in the State of Tennessee, and that he or she is duly authorized to execute the foregoing Performance Bond in that capacity, and that he or she executed the same.

Witness my hand and seal this 8th day of August , 20 19 .

My Commission Expires: 9/18/2021

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
WAYNE G. McVAUGH, Notary Public
City of Philadelphia, Phila. County
My Commission Expires September 18, 2021

C- 36

EXHIBIT E



MICHAEL G. MCLAREN, Attorney
Email: mmclaren@blackmclaw.com
Direct: (901) 270-6525

B L A C K / M C L A R E N / J O N E S / R Y L A N D / G R I F F E E

| **MEMPHIS OFFICE** | **BRENTWOOD OFFICE** |
|---|---|
| SUITE 360 | BUILDING 300, SUITE 313 |
| 530 OAK COURT DRIVE | 104 EAST PARK DRIVE |
| MEMPHIS, TENNESSEE 38117 | BRENTWOOD, TENNESSEE 37027 |
| PHONE (901) 762-0535 | PHONE (615) 815-1508 |

Fax: (901) 762-0539  /  www.bmjrglaw.com

November 29, 2022

VIA EMAIL
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Nathan Bicks, Esq.
Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

VIA EMAIL
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Asplundh Tree Experts, LLC
c/o Nathan Bicks, Esq.
c/o Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

VIA FEDERAL EXPRESS

Travelers Casualty and Surety Company of America
ATTN: Kaitlyn Malkowski
One Tower Square
Hartford, CT 06183

Re:     Asplundh / MLGW
        My File No. 2302.002

Dear Nathan, Doug, and Ms. Malkowski:

Following our last meeting, your client, Asplundh, was to have submitted a per-mile proposal to try to rectify the extreme deficiencies of tree cutting thus far this year.

EXHIBIT E

Nathan Bicks, Esq., et al.
November 29, 2022
Page 2

We have never received such a proposal. Consequently, pursuant to paragraph XVII of the Contract and paragraph A of the Performance Bond, MLGW is notifying Asplundh and the Surety that MLGW is considering declaring Asplundh in default of the Contract and is requesting and attempting to arrange another conference with Asplundh (and the Surety) to be held no later than December 14, 2022, to discuss methods of performing the Contract.

Note that MLGW is <u>not</u> terminating the contract at this time but, pursuant to Article V of the Contract, Article XVII of the Contract, and paragraph A of the Bond, is reserving its rights to declare the Contract in default, terminate the Contract, or act on any other remedies available to it under the Contract.

The Contract provides that notices to Asplundh shall be sent to:

> Asplundh Tree Experts, LLC
> c/o Nathan Bicks, Esq.
> c/o Douglas Halijan, Esq.
> BURCH PORTER & JOHNSON, PLLC
> 130 North Court Avenue
> Memphis, Tennessee 38103

And as to the Bond, notices shall be given to:

> Travelers Casualty and Surety Company of America
> ATTN: Kaitlyn Malkowski
> One Tower Square
> Hartford, CT 06183

MLGW would still welcome some resolution of the issues involved in this matter but is taking this step to fulfill its obligations under the Contract and the Bond.

Please call me at your convenience.

Sincerely,

Michael G. McLaren

John C. Ryland

MGM/clw

EXHIBIT E



MICHAEL G. MCLAREN, Attorney
Email: mmclaren@blackmclaw.com
Direct: (901) 270-6525

BLACK / MCLAREN / JONES / RYLAND / GRIFFEE

| MEMPHIS OFFICE | BRENTWOOD OFFICE |
|---|---|
| SUITE 360 | BUILDING 300, SUITE 313 |
| 530 OAK COURT DRIVE | 104 EAST PARK DRIVE |
| MEMPHIS, TENNESSEE 38117 | BRENTWOOD, TENNESSEE 37027 |
| PHONE (901) 762-0535 | PHONE (615) 815-1508 |

Fax: (901) 762-0539  /  www.bmjrglaw.com

May 30, 2023

<u>VIA EMAIL</u>
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Nathan Bicks, Esq.
Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

Re:    **Notice of Breach of Contract**
        Asplundh / MLGW
        My File No. 2302.002

Dear Nathan and Doug:

Please consider this Memphis Light, Gas and Water's Notice of Breach of the contract titled "Contract Documents for Line Clearance, Contract No. 12077," by and between Memphis Light, Gas and Water Division, Board of Light, Gas and Water Commissioners and Asplundh Tree Expert, LLC, entered into the 30th day of August, 2019 ("Contract"). The particular contract is labeled "Line Clearance," and the parties thereto as specified in Article I are Memphis Light, Gas and Water Division of the City of Memphis, Tennessee ("MLGW") and Asplundh Tree Expert, LLC ("Asplundh").

The term of the Contract specified in Article V is for "60 months from the date of the notice to proceed." This is a Notice of Breach of that contract as required by Article VIII. Notice is specified to be given to Asplundh Tree Expert, LLC, c/o Gene Hayden, 708 Blair Mill Road, Willow Grove, PA 19090. However, since you have been acting as Asplundh's attorneys, I assume this notice can be appropriately accepted by you. Please let me know immediately if you cannot accept this notice for any reason.

There is also a bond on this Contract pursuant to Article XIV. The bond is a "performance bond for 100% of the contract price." My law partner John Ryland will be handling the issues with the bond and will send you a separate notice.

EXHIBIT E

Nathan Bicks, Esq.
Douglas Halijan, Esq.
May 30, 2023
Page 2

Recall that MLGW sent you and the bonding company a letter on November 29, 2022, indicating it was considering declaring a breach. Subsequently, Asplundh and MLGW continued meeting to discuss a resolution, which was not reached.

The breach of contract-specific provisions noted in the Contract that this notice covers are contained in Article XVII, titled "Breach of Contract." MLGW cites that entire paragraph in this Notice of Breach but calls particular attention to the following paragraphs:

1. Fail or refuse to perform the Work in whole or in part after notice by MLGW to proceed;

2. Abandon the Work;

3. Unnecessarily or unreasonably delay the Work at any time;

6. Willfully or negligently violate any provisions of the Contract;

7. Fail or refuse to fully complete the Work within the time specified or extension of time granted by MLGW;

11. Fail or refuse to comply with the terms and provisions of the Contract and or Contract Documents;

12. Fail to complete the work within the specified time allotted for completion of Work as set forth in the proposal and otherwise as set forth in the Contract Documents;

MLGW also cites Article XXIV in this Notice of Breach. That section indicates that "the Work shall begin in a timely manner and be continued through completion … ." It also specifies that Asplundh "agrees to complete each portion of the Work by the date specified in Contract Documents … ."

MLGW has never granted an extension of time as specified in Article XXV of the Contract, nor has Asplundh ever requested one.

MLGW also cites Article XXVI in this Notice of Breach, which requires Asplundh to "furnish the personnel that shall be required to complete the Work in a timely manner and within the Contract amount." That same paragraph requires Asplundh, at Asplundh's sole cost and expense, to "train employees prior to the start of the Work … ."

EXHIBIT E

Nathan Bicks, Esq.
Douglas Halijan, Esq.
May 30, 2023
Page 3

In point of fact, the average number of crews at work for MLGW has dropped as follows:

       2020 – 37
       2021 – 27
       2022 – 17
       2023 – 16

The miles trimmed by Asplundh has also dropped precipitously:

       2020 – 610
       2021 – 552
       2022 – 189.6
       2023 (as of May 17, 2023) – 20.2

At this point, MLGW has notified in you, in writing, that MLGW is considering declaring you in default of the Contract. Formally, we are requesting a conference with you to be held not later than 15 days after the receipt of this notice to discuss methods of performing the Contract. I will point out, however, that this has previously been done, and an extension of time was granted while you, Asplundh, and MLGW and the Principal were asked to meet. MLGW excused the Surety from that meeting, but MLGW and Asplundh met several, several times in an effort to fulfill the terms of the Contract. If you (Asplundh) deem it necessary for appropriate bond coverage to have and schedule the meeting called for in the bond, please let us know immediately, and we will fully comply.

In the event there is no "cure" under the terms of the Contract, MLGW will terminate the Contract for cause and take any remedy which may be available to them, including reletting the Contract, bringing an action for breach, and any other remedies.

Also, please note that I am sending this by email to you. If you require certified mail or any other form of delivery, please let me know. Otherwise, we will consider your non-response as a waiver of any other method of service.

Sincerely,

Michael G. McLaren

MGM/clw
Attachment
cc:    John C. Ryland, Esq. (Via Email)

EXHIBIT E



MICHAEL G. MCLAREN, Attorney
Email: mmclaren@blackmclaw.com
Direct: (901) 270-6525

B L A C K / M C L A R E N / J O N E S / R Y L A N D / G R I F F E E

| MEMPHIS OFFICE | BRENTWOOD OFFICE |
|---|---|
| SUITE 360 | BUILDING 300, SUITE 313 |
| 530 OAK COURT DRIVE | 104 EAST PARK DRIVE |
| MEMPHIS, TENNESSEE 38117 | BRENTWOOD, TENNESSEE 37027 |
| PHONE (901) 762-0535 | PHONE (615) 815-1508 |

Fax: (901) 762-0539  /  www.bmjrglaw.com

November 29, 2022

VIA EMAIL
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Nathan Bicks, Esq.
Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103



COPY

VIA EMAIL
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Asplundh Tree Experts, LLC
c/o Nathan Bicks, Esq.
c/o Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

VIA FEDERAL EXPRESS

Travelers Casualty and Surety Company of America
ATTN: Kaitlyn Malkowski
One Tower Square
Hartford, CT 06183

Re:     Asplundh / MLGW
        My File No. 2302.002

Dear Nathan, Doug, and Ms. Malkowski:

Following our last meeting, your client, Asplundh, was to have submitted a per-mile proposal to try to rectify the extreme deficiencies of tree cutting thus far this year.

EXHIBIT E

Nathan Bicks, Esq., et al.
November 29, 2022
Page 2

We have never received such a proposal. Consequently, pursuant to paragraph XVII of the Contract and paragraph A of the Performance Bond, MLGW is notifying Asplundh and the Surety that MLGW is considering declaring Asplundh in default of the Contract and is requesting and attempting to arrange another conference with Asplundh (and the Surety) to be held no later than December 14, 2022, to discuss methods of performing the Contract.

Note that MLGW is <u>not</u> terminating the contract at this time but, pursuant to Article V of the Contract, Article XVII of the Contract, and paragraph A of the Bond, is reserving its rights to declare the Contract in default, terminate the Contract, or act on any other remedies available to it under the Contract.

The Contract provides that notices to Asplundh shall be sent to:

> Asplundh Tree Experts, LLC
> c/o Nathan Bicks, Esq.
> c/o Douglas Halijan, Esq.
> BURCH PORTER & JOHNSON, PLLC
> 130 North Court Avenue
> Memphis, Tennessee 38103

And as to the Bond, notices shall be given to:

> Travelers Casualty and Surety Company of America
> ATTN: Kaitlyn Malkowski
> One Tower Square
> Hartford, CT 06183

MLGW would still welcome some resolution of the issues involved in this matter but is taking this step to fulfill its obligations under the Contract and the Bond.

Please call me at your convenience.

Sincerely,

Michael G. McLaren

John C. Ryland

MGM/clw

EXHIBIT E



MICHAEL G. MCLAREN, Attorney
Email: mmclaren@blackmclaw.com
Direct: (901) 270-6525

| MEMPHIS OFFICE | BRENTWOOD OFFICE |
|---|---|
| SUITE 360 | BUILDING 300, SUITE 313 |
| 530 OAK COURT DRIVE | 104 EAST PARK DRIVE |
| MEMPHIS, TENNESSEE 38117 | BRENTWOOD, TENNESSEE 37027 |
| PHONE (901) 762-0535 | PHONE (615) 815-1508 |

Fax: (901) 762-0539  /  www.bmjrglaw.com

May 31, 2023

<u>VIA EMAIL</u>
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Nathan Bicks, Esq.
Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

Re:    Asplundh / MLGW
       My File No. 2302.002

Dear Nathan and Doug:

My client and I can schedule a meeting on the following days:

- Monday, June 5, 2023, in the morning;
- Tuesday, June 6, 2023, in the morning, preferably beginning at 8:30 a.m.
- Monday, June 12, 2023, in the morning;
- Tuesday, June 13, 2023, all day;
- Wednesday, June 14, 2023, in the morning; or
- Thursday, June 15 in the morning.

I will speak to you on the phone about this, but we would prefer Zoom. Please let me know.

Sincerely,

Michael G. McLaren

MGM/clw
cc:  John C. Ryland, Esq. (Via Email)
     Amy Worrell Sterling, Esq. (Via Email)

EXHIBIT E



JOHN C. RYLAND, Attorney
Email: jryland@blackmclaw.com

BLACK / MCLAREN / JONES / RYLAND / GRIFFEE

| MEMPHIS OFFICE | BRENTWOOD OFFICE |
|---|---|
| SUITE 360 | BUILDING 300, SUITE 313 |
| 530 OAK COURT DRIVE | 104 EAST PARK DRIVE |
| MEMPHIS, TENNESSEE 38117 | BRENTWOOD, TENNESSEE 37027 |
| PHONE (901) 762-0535 | PHONE (615) 815-1508 |

Fax: (901) 762-0539 / www.bmjrglaw.com

June 20, 2023

**VIA E-MAIL**
[lmmurphy@travelers.com]

Laura M. Murphy, Esq.
Travelers
P.O. Box 2989
Hartford, Connecticut 06104-2989

Re:     Performance Bond No. 107114240
        Principal: Asplundh Tree Expert, LLC
        Surety: Travelers Casualty & Surety Company of America
        Oblige: Memphis Light, Gas & Water Division of the City of Memphis, Tennessee
        My File No. 2302.002

Dear Ms. Murphy:

This letter is in follow up to our June 15, 2023 conference with representatives of Memphis Light, Gas & Water ("MLG&W") and Asplundh Tree Expert, LLC ("Asplundh") to discuss Asplundh's failure to perform under its Line Clearance Contract, Contract No. 12077. You participated in the conference on behalf of Travelers Casualty and Surety Company of America ("Travelers") in light of Travelers' Performance Bond in connection with the Contract. During the conference, it was agreed that the conference was being held in compliance with Section A. of the Performance Bond, Bond No. 107114240.

During the conference, you asked me to provide you with a copy of the Line Clearance Contract. With this correspondence, I am providing you with a Dropbox link with a copy of the subject Contract.

During the conference, you asked me to provide you with some details concerning Asplundh's breach of the Contract. Asplundh's lack of performance under the Contract was summarized in a May 30, 2023 letter from MLG&W's counsel, Mike McLaren, to counsel for Asplundh, Nathan Bicks and Douglas Halijan. For your ease of reference, a copy of the May 30, 2023 letter from Mr. McLaren is enclosed herewith. Additionally, please note that a completed mile of tree trimming services under the Contract may, and frequently does, include two distinct type of

EXHIBIT F

Laura M. Murphy, Esq.
June 20, 2023
Page 2

trimming. The first involves cutting trees that are accessible via a bucket truck. Typically, bucket trucks are used to trim trees near overhead lines located along a street. However, manual crews must trim trees along power lines located in backyards and other areas of the corresponding grids/sections that are not accessible to bucket truck trimming. Asplundh has failed to maintain an appropriate number of manual trimming crews to keep up with its bucket trimming work. As noted in Mr. McLaren's May 30, 2023 letter, the Contract requires Asplundh to furnish the personnel required to complete the work in a timely manner. However, Asplundh has failed to do so.

Asplundh's failure to adequately staff manual crews has resulted in woefully deficient progress in completing necessary tree trimming work. As a result of this deficient and unacceptable performance, MLG&W has incurred significant problems and consequential costs dealing with more extensive power outages from trees and tree limbs disrupting utility service in the wake of storms and other weather-related events.

As discussed during the June 15, 2023 conference, in the face of Asplundh's failure to perform under the Contract, MLG&W has a duty to mitigate its damages, which includes reducing the severity of power outages and repair costs as a result of downed trees and tree limbs from storms and other weather-related events. MLG&W has put out bid requests for tree trimming work in an effort to mitigate its damages. During the conference, you asked me to provide you with documentation relating to these bids. The subject documents are included in the Dropbox link that is being provided to you with this correspondence. At the present time, MLG&W and the City of Memphis have yet to approve and formally enter into the additional tree trimming contracts. However, please understand that time is of the essence, and it will be imperative for MLG&W and the City of Memphis to move forward with securing reliable tree trimming services in the immediate future to mitigate damages and reduce the likelihood and severity of power outages to MLG&W's customers. Please do not hesitate to contact me if you have any questions or comments regarding the foregoing.

Sincerely,

John C. Ryland

JCR/klw
Enclosure
cc:  Michael G. McLaren, Esq. (Via Email)
     Amy Worrell Sterling, Esq. (Via Email)
     Douglas Halijan, Esq. (Via Email)
     Nathan Bicks, Esq. (Via Email)

EXHIBIT F



MICHAEL G. MCLAREN, Attorney
Email: mmclaren@blackmclaw.com
Direct: (901) 270-6525

B L A C K / M C L A R E N / J O N E S / R Y L A N D / G R I F F E E

**MEMPHIS OFFICE**
SUITE 360
530 OAK COURT DRIVE
MEMPHIS, TENNESSEE 38117
PHONE (901) 762-0535

**BRENTWOOD OFFICE**
BUILDING 300, SUITE 313
104 EAST PARK DRIVE
BRENTWOOD, TENNESSEE 37027
PHONE (615) 815-1508

Fax: (901) 762-0539 / www.bmjrglaw.com

May 30, 2023

<u>VIA EMAIL</u>
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]



Nathan Bicks, Esq.
Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

Re:    **Notice of Breach of Contract**
       Asplundh / MLGW
       My File No. 2302.002

Dear Nathan and Doug:

Please consider this Memphis Light, Gas and Water's Notice of Breach of the contract titled "Contract Documents for Line Clearance, Contract No. 12077," by and between Memphis Light, Gas and Water Division, Board of Light, Gas and Water Commissioners and Asplundh Tree Expert, LLC, entered into the 30th day of August, 2019 ("Contract"). The particular contract is labeled "Line Clearance," and the parties thereto as specified in Article I are Memphis Light, Gas and Water Division of the City of Memphis, Tennessee ("MLGW") and Asplundh Tree Expert, LLC ("Asplundh").

The term of the Contract specified in Article V is for "60 months from the date of the notice to proceed." This is a Notice of Breach of that contract as required by Article VIII. Notice is specified to be given to Asplundh Tree Expert, LLC, c/o Gene Hayden, 708 Blair Mill Road, Willow Grove, PA 19090. However, since you have been acting as Asplundh's attorneys, I assume this notice can be appropriately accepted by you. Please let me know immediately if you cannot accept this notice for any reason.

There is also a bond on this Contract pursuant to Article XIV. The bond is a "performance bond for 100% of the contract price." My law partner John Ryland will be handling the issues with the bond and will send you a separate notice.

EXHIBIT F

Nathan Bicks, Esq.
Douglas Halijan, Esq.
May 30, 2023
Page 2

Recall that MLGW sent you and the bonding company a letter on November 29, 2022, indicating it was considering declaring a breach. Subsequently, Asplundh and MLGW continued meeting to discuss a resolution, which was not reached.

The breach of contract-specific provisions noted in the Contract that this notice covers are contained in Article XVII, titled "Breach of Contract." MLGW cites that entire paragraph in this Notice of Breach but calls particular attention to the following paragraphs:

1. Fail or refuse to perform the Work in whole or in part after notice by MLGW to proceed;

2. Abandon the Work;

3. Unnecessarily or unreasonably delay the Work at any time;

6. Willfully or negligently violate any provisions of the Contract;

7. Fail or refuse to fully complete the Work within the time specified or extension of time granted by MLGW;

11. Fail or refuse to comply with the terms and provisions of the Contract and or Contract Documents;

12. Fail to complete the work within the specified time allotted for completion of Work as set forth in the proposal and otherwise as set forth in the Contract Documents;

MLGW also cites Article XXIV in this Notice of Breach. That section indicates that "the Work shall begin in a timely manner and be continued through completion ... ." It also specifies that Asplundh "agrees to complete each portion of the Work by the date specified in Contract Documents ... ."

MLGW has never granted an extension of time as specified in Article XXV of the Contract, nor has Asplundh ever requested one.

MLGW also cites Article XXVI in this Notice of Breach, which requires Asplundh to "furnish the personnel that shall be required to complete the Work in a timely manner and within the Contract amount." That same paragraph requires Asplundh, at Asplundh's sole cost and expense, to "train employees prior to the start of the Work ... ."

EXHIBIT F

Nathan Bicks, Esq.
Douglas Halijan, Esq.
May 30, 2023
Page 3

In point of fact, the average number of crews at work for MLGW has dropped as follows:

    2020 – 37
    2021 – 27
    2022 – 17
    2023 – 16

The miles trimmed by Asplundh has also dropped precipitously:

    2020 – 610
    2021 – 552
    2022 – 189.6
    2023 (as of May 17, 2023) – 20.2

At this point, MLGW has notified in you, in writing, that MLGW is considering declaring you in default of the Contract. Formally, we are requesting a conference with you to be held not later than 15 days after the receipt of this notice to discuss methods of performing the Contract. I will point out, however, that this has previously been done, and an extension of time was granted while you, Asplundh, and MLGW and the Principal were asked to meet. MLGW excused the Surety from that meeting, but MLGW and Asplundh met several, several times in an effort to fulfill the terms of the Contract. If you (Asplundh) deem it necessary for appropriate bond coverage to have and schedule the meeting called for in the bond, please let us know immediately, and we will fully comply.

In the event there is no "cure" under the terms of the Contract, MLGW will terminate the Contract for cause and take any remedy which may be available to them, including reletting the Contract, bringing an action for breach, and any other remedies.

Also, please note that I am sending this by email to you. If you require certified mail or any other form of delivery, please let me know. Otherwise, we will consider your non-response as a waiver of any other method of service.

Sincerely,

Michael G. McLaren

MGM/clw
Attachment
cc:    John C. Ryland, Esq. (Via Email)

EXHIBIT F



MICHAEL G. McLAREN, Attorney
Email: mmclaren@blackmclaw.com
Direct: (901) 270-6525

BLACK / MCLAREN / JONES / RYLAND / GRIFFEE

**MEMPHIS OFFICE**
SUITE 360
530 OAK COURT DRIVE
MEMPHIS, TENNESSEE 38117
PHONE (901) 762-0535

**BRENTWOOD OFFICE**
BUILDING 300, SUITE 313
104 EAST PARK DRIVE
BRENTWOOD, TENNESSEE 37027
PHONE (615) 815-1508

Fax: (901) 762-0539 / www.bmjrglaw.com

November 29, 2022

<u>VIA EMAIL</u>
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Nathan Bicks, Esq.
Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

COPY

<u>VIA EMAIL</u>
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Asplundh Tree Experts, LLC
c/o Nathan Bicks, Esq.
c/o Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

<u>VIA FEDERAL EXPRESS</u>

Travelers Casualty and Surety Company of America
ATTN: Kaitlyn Malkowski
One Tower Square
Hartford, CT 06183

Re:    Asplundh / MLGW
       My File No. 2302.002

Dear Nathan, Doug, and Ms. Malkowski:

Following our last meeting, your client, Asplundh, was to have submitted a per-mile proposal to try to rectify the extreme deficiencies of tree cutting thus far this year.

EXHIBIT F

Nathan Bicks, Esq., et al.
November 29, 2022
Page 2

We have never received such a proposal. Consequently, pursuant to paragraph XVII of the Contract and paragraph A of the Performance Bond, MLGW is notifying Asplundh and the Surety that MLGW is considering declaring Asplundh in default of the Contract and is requesting and attempting to arrange another conference with Asplundh (and the Surety) to be held no later than December 14, 2022, to discuss methods of performing the Contract.

Note that MLGW is <u>not</u> terminating the contract at this time but, pursuant to Article V of the Contract, Article XVII of the Contract, and paragraph A of the Bond, is reserving its rights to declare the Contract in default, terminate the Contract, or act on any other remedies available to it under the Contract.

The Contract provides that notices to Asplundh shall be sent to:

> Asplundh Tree Experts, LLC
> c/o Nathan Bicks, Esq.
> c/o Douglas Halijan, Esq.
> BURCH PORTER & JOHNSON, PLLC
> 130 North Court Avenue
> Memphis, Tennessee 38103

And as to the Bond, notices shall be given to:

> Travelers Casualty and Surety Company of America
> ATTN: Kaitlyn Malkowski
> One Tower Square
> Hartford, CT 06183

MLGW would still welcome some resolution of the issues involved in this matter but is taking this step to fulfill its obligations under the Contract and the Bond.

Please call me at your convenience.

Sincerely,

Michael G. McLaren

John C. Ryland

MGM/clw

EXHIBIT F



MICHAEL G. MCLAREN, Attorney
Email: mmclaren@blackmclaw.com
Direct: (901) 270-6525

BLACK / MCLAREN / JONES / RYLAND / GRIFFEE

| MEMPHIS OFFICE | BRENTWOOD OFFICE |
|---|---|
| SUITE 360 | BUILDING 300, SUITE 313 |
| 530 OAK COURT DRIVE | 104 EAST PARK DRIVE |
| MEMPHIS, TENNESSEE 38117 | BRENTWOOD, TENNESSEE 37027 |
| PHONE (901) 762-0535 | PHONE (615) 815-1508 |

Fax: (901) 762-0539 / www.bmjrglaw.com

July 13, 2023

<u>VIA EMAIL AND U.S. MAIL</u>
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Nathan Bicks, Esq.
Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

Re:    Asplundh / MLGW
        My File No. 2302.002

Dear Nathan and Doug:

As you know, my client, Memphis Light, Gas and Water ("MLGW"), entered into a certain contract with your client, Asplundh Tree Expert, LLC ("Asplundh"), for line clearance work to be performed by Asplundh over the course of five (5) years. The referenced contract is Contract No. 12077, made and entered into on August 30, 2019 (the "Contract"). Article V of the Contract allows MLGW to terminate the contract, without any prior written notice, "for any reason described in the Breach of Contract Article." Such Breach of Contract Article XVII provides MLGW the right to terminate the Contract if, in MLGW's opinion, any of the enumerated grounds set forth in the Article exist.

While not required by the Contract, but to ensure compliance with the performance bond's requirements, on May 30, 2023, I provided you with MLGW's written Notice of Breach outlining Asplundh's breaches of the Contract. In that Notice of Breach, which I have enclosed and incorporate fully herein, MLGW notified Asplundh that MLGW would terminate the Contract for cause if Asplundh failed to cure its breaches of the Contract. To date, Asplundh has failed to cure those breaches and has not performed the Contract.

Accordingly, please consider this letter as MLGW's formal written notice that it is terminating the Contract, effective immediately, based on the grounds set forth in the Notice of Breach. MLGW specifically reserves all rights and remedies available to it as a result of Asplundh's breach of the Contract, none of which are waived by omission in this letter or otherwise.

EXHIBIT G

Nathan Bicks, Esq.
Douglas Halijan, Esq.
July 13, 2023
Page 2

Article VIII of the Contract allows for notices to be provided to an authorized representative of
Asplundh via email. As you represent Asplundh, I assume this notice can be appropriately accepted
by you. Please let me know immediately if you are not authorized to accept this notice on behalf
of Asplundh.

Sincerely,

Michael G. McLaren

MGM/clw
Enclosure/Attachment
cc:  John C. Ryland, Esq. (Via Email)
     Amy Worrell Sterling, Esq. (Via Email)

EXHIBIT G



MICHAEL G. MCLAREN, Attorney
Email: mmclaren@blackmclaw.com
Direct: (901) 270-6525

BLACK / MCLAREN / JONES / RYLAND / GRIFFEE

**MEMPHIS OFFICE**
SUITE 360
530 OAK COURT DRIVE
MEMPHIS, TENNESSEE 38117
PHONE (901) 762-0535

**BRENTWOOD OFFICE**
BUILDING 300, SUITE 313
104 EAST PARK DRIVE
BRENTWOOD, TENNESSEE 37027
PHONE (615) 815-1508

Fax: (901) 762-0539 / www.bmjrglaw.com

May 30, 2023

<u>VIA EMAIL</u>
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]



Nathan Bicks, Esq.
Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

Re:    **Notice of Breach of Contract**
       Asplundh / MLGW
       My File No. 2302.002

Dear Nathan and Doug:

Please consider this Memphis Light, Gas and Water's Notice of Breach of the contract titled "Contract Documents for Line Clearance, Contract No. 12077," by and between Memphis Light, Gas and Water Division, Board of Light, Gas and Water Commissioners and Asplundh Tree Expert, LLC, entered into the 30th day of August, 2019 ("Contract"). The particular contract is labeled "Line Clearance," and the parties thereto as specified in Article I are Memphis Light, Gas and Water Division of the City of Memphis, Tennessee ("MLGW") and Asplundh Tree Expert, LLC ("Asplundh").

The term of the Contract specified in Article V is for "60 months from the date of the notice to proceed." This is a Notice of Breach of that contract as required by Article VIII. Notice is specified to be given to Asplundh Tree Expert, LLC, c/o Gene Hayden, 708 Blair Mill Road, Willow Grove, PA 19090. However, since you have been acting as Asplundh's attorneys, I assume this notice can be appropriately accepted by you. Please let me know immediately if you cannot accept this notice for any reason.

There is also a bond on this Contract pursuant to Article XIV. The bond is a "performance bond for 100% of the contract price." My law partner John Ryland will be handling the issues with the bond and will send you a separate notice.

EXHIBIT G

Nathan Bicks, Esq.
Douglas Halijan, Esq.
May 30, 2023
Page 2

Recall that MLGW sent you and the bonding company a letter on November 29, 2022, indicating it was considering declaring a breach. Subsequently, Asplundh and MLGW continued meeting to discuss a resolution, which was not reached.

The breach of contract-specific provisions noted in the Contract that this notice covers are contained in Article XVII, titled "Breach of Contract." MLGW cites that entire paragraph in this Notice of Breach but calls particular attention to the following paragraphs:

1.   Fail or refuse to perform the Work in whole or in part after notice by MLGW to proceed;

2.   Abandon the Work;

3.   Unnecessarily or unreasonably delay the Work at any time;

6.   Willfully or negligently violate any provisions of the Contract;

7.   Fail or refuse to fully complete the Work within the time specified or extension of time granted by MLGW;

11.  Fail or refuse to comply with the terms and provisions of the Contract and or Contract Documents;

12.  Fail to complete the work within the specified time allotted for completion of Work as set forth in the proposal and otherwise as set forth in the Contract Documents;

MLGW also cites Article XXIV in this Notice of Breach. That section indicates that "the Work shall begin in a timely manner and be continued through completion … ." It also specifies that Asplundh "agrees to complete each portion of the Work by the date specified in Contract Documents … ."

MLGW has never granted an extension of time as specified in Article XXV of the Contract, nor has Asplundh ever requested one.

MLGW also cites Article XXVI in this Notice of Breach, which requires Asplundh to "furnish the personnel that shall be required to complete the Work in a timely manner and within the Contract amount." That same paragraph requires Asplundh, at Asplundh's sole cost and expense, to "train employees prior to the start of the Work … ."

EXHIBIT G

Nathan Bicks, Esq.
Douglas Halijan, Esq.
May 30, 2023
Page 3

In point of fact, the average number of crews at work for MLGW has dropped as follows:

> 2020 – 37
> 2021 – 27
> 2022 – 17
> 2023 – 16

The miles trimmed by Asplundh has also dropped precipitously:

> 2020 – 610
> 2021 – 552
> 2022 – 189.6
> 2023 (as of May 17, 2023) – 20.2

At this point, MLGW has notified in you, in writing, that MLGW is considering declaring you in default of the Contract. Formally, we are requesting a conference with you to be held not later than 15 days after the receipt of this notice to discuss methods of performing the Contract. I will point out, however, that this has previously been done, and an extension of time was granted while you, Asplundh, and MLGW and the Principal were asked to meet. MLGW excused the Surety from that meeting, but MLGW and Asplundh met several, several times in an effort to fulfill the terms of the Contract. If you (Asplundh) deem it necessary for appropriate bond coverage to have and schedule the meeting called for in the bond, please let us know immediately, and we will fully comply.

In the event there is no "cure" under the terms of the Contract, MLGW will terminate the Contract for cause and take any remedy which may be available to them, including reletting the Contract, bringing an action for breach, and any other remedies.

Also, please note that I am sending this by email to you. If you require certified mail or any other form of delivery, please let me know. Otherwise, we will consider your non-response as a waiver of any other method of service.

Sincerely,

Michael G. McLaren

MGM/clw
Attachment
cc:      John C. Ryland, Esq. (Via Email)

EXHIBIT G



MICHAEL G. McLAREN, Attorney
Email: mmclaren@blackmclaw.com
Direct: (901) 270-6525

BLACK / McLAREN / JONES / RYLAND / GRIFFEE

**MEMPHIS OFFICE**
SUITE 360
530 OAK COURT DRIVE
MEMPHIS, TENNESSEE 38117
PHONE (901) 762-0535

**BRENTWOOD OFFICE**
BUILDING 300, SUITE 313
104 EAST PARK DRIVE
BRENTWOOD, TENNESSEE 37027
PHONE (615) 815-1508

Fax: (901) 762-0539 / www.bmjrglaw.com

November 29, 2022

VIA EMAIL
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

COPY

Nathan Bicks, Esq.
Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

VIA EMAIL
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Asplundh Tree Experts, LLC
c/o Nathan Bicks, Esq.
c/o Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

VIA FEDERAL EXPRESS

Travelers Casualty and Surety Company of America
ATTN: Kaitlyn Malkowski
One Tower Square
Hartford, CT 06183

Re:    Asplundh / MLGW
       My File No. 2302.002

Dear Nathan, Doug, and Ms. Malkowski:

Following our last meeting, your client, Asplundh, was to have submitted a per-mile proposal to try to rectify the extreme deficiencies of tree cutting thus far this year.

EXHIBIT G

Nathan Bicks, Esq., et al.
November 29, 2022
Page 2

We have never received such a proposal. Consequently, pursuant to paragraph XVII of the Contract and paragraph A of the Performance Bond, MLGW is notifying Asplundh and the Surety that MLGW is considering declaring Asplundh in default of the Contract and is requesting and attempting to arrange another conference with Asplundh (and the Surety) to be held no later than December 14, 2022, to discuss methods of performing the Contract.

Note that MLGW is not terminating the contract at this time but, pursuant to Article V of the Contract, Article XVII of the Contract, and paragraph A of the Bond, is reserving its rights to declare the Contract in default, terminate the Contract, or act on any other remedies available to it under the Contract.

The Contract provides that notices to Asplundh shall be sent to:

> Asplundh Tree Experts, LLC
> c/o Nathan Bicks, Esq.
> c/o Douglas Halijan, Esq.
> BURCH PORTER & JOHNSON, PLLC
> 130 North Court Avenue
> Memphis, Tennessee 38103

And as to the Bond, notices shall be given to:

> Travelers Casualty and Surety Company of America
> ATTN: Kaitlyn Malkowski
> One Tower Square
> Hartford, CT 06183

MLGW would still welcome some resolution of the issues involved in this matter but is taking this step to fulfill its obligations under the Contract and the Bond.

Please call me at your convenience.

Sincerely,

Michael G. McLaren

John C. Ryland

MGM/clw

EXHIBIT G



JOHN C. RYLAND, Attorney
Email: jryland@blackmclaw.com

BLACK / McLAREN / JONES / RYLAND / GRIFFEE

**MEMPHIS OFFICE**
SUITE 360
530 OAK COURT DRIVE
MEMPHIS, TENNESSEE 38117
PHONE (901) 762-0535

**BRENTWOOD OFFICE**
BUILDING 300, SUITE 313
104 EAST PARK DRIVE
BRENTWOOD, TENNESSEE 37027
PHONE (615) 815-1508

Fax: (901) 762-0539 / www.bmjrglaw.com

July 14, 2023

**VIA E-MAIL**
[lmmurphy@travelers.com]

Laura M. Murphy, Esq.
Travelers
P.O. Box 2989
Hartford, Connecticut 06104-2989

Re:    Performance Bond No. 107114240
       Principal: Asplundh Tree Expert, LLC
       Surety: Travelers Casualty & Surety Company of America
       Oblige: Memphis Light, Gas & Water Division of the City of Memphis, Tennessee
       My File No. 2302.002

Dear Ms. Murphy:

On June 15, 2023, you participated in a conference with representatives of Memphis Light Gas & Water ("MLG&W") and Asplundh Tree Expert, LLC, ("Asplundh") to discuss Asplundh's failure to perform under its Line Clearance Contract, Contract No. 12077. You participated in the conference on behalf of Travelers Casualty and Surety Company of America ("Travelers") in light of Travelers' Performance Bond in connection with the Contract. During the conference, it was agreed that the conference was being held in compliance with Section A. of the Performance Bond, Bond No. 107114240.

On June 20, 2023, I sent you a follow-up letter providing you with certain documents that you had requested during the June 15, 2023, conference. In my June 20, 2023, letter, I referenced MLG&W's duty to mitigate its damages in the face of Asplundh's failure to perform under the Contract. In the letter, I stressed that time was of the essence in securing reliable tree trimming service to mitigate MLG&W's damages and reduce the likelihood and/or severity of power outages to MLG&W's customers.

As you may be aware, subsequent to my June 20, 2023, letter, there was another round of storms in the Shelby County area that caused widespread power outages. Asplundh's failure to perform under the Contract certainly caused and/or contributed to the severity of these power outages.

EXHIBIT H

Laura M. Murphy, Esq.
July 14, 2023
Page 2

In light of Asplundh's default under the Contract, please be advised that MLG&W formally terminated Asplundh's right to complete the Contract by letter dated July 13, 2023. A copy of the letter to Asplundh's counsel formally terminating the Contract is enclosed herein for your review. MLG&W's termination of Asplundh's right to complete the Contract satisfies the requirements of Section B. of the Performance Bond.

Pursuant to Subsection C. of the Performance Bond, please accept this letter as MLG&W's agreement to pay the balance of the Contract price to Travelers (as the surety under the Performance Bond), or to a contractor selected to perform the Contract, in accordance with the terms and conditions of the Contract. Pursuant to the terms of the Contract, payments are not due until work has been performed.

Given MLG&W's payment assurances pursuant to the terms of the Contract, MLG&W has now satisfied its obligations under Subsections A., B., and C. of the Performance Bond. In light of the foregoing, the Performance Bond requires Travelers to promptly take one of the following actions at Travelers' expense:

A. Arrange for the Principal, with consent of the Obligee, to perform and complete the Contract; or

B. Perform and complete the Contract itself, through the Surety's agents or through independent contractors; or

C. Obtain bids or negotiate proposals from qualified contractors acceptable to the Obligee for a contract for performance and completion of the Contract, arrange for a contract to be prepared for execution by the Obligee and the contractor selected with the Obligee's concurrence, to be secured with performance and payment bonds, executed by a qualified surety equivalent to the bonds issued on the Contract, and pay to the Obligee the damages over the balance of the Contract price incurred by the Obligee resulting from the Principal's default; or

D. Waive the Surety's right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances, after investigation, determine the amount for which the Surety may be liable to the Obligee and, as soon as practicable after the amount is determined, tender payment to the Obligee; or

E. Deny liability in whole or in part and notify the Obligee in writing, citing reasons.

Since time is of the essence, I would appreciate it if you would promptly let me know which of the abovementioned options Travelers will be exercising under the Performance Bond. In this regard,

EXHIBIT H

Laura M. Murphy, Esq.
July 14, 2023
Page 3


please let me know which option Travelers will be exercising by 5:00 p.m. on Thursday, July 20, 2023.


Sincerely,

John C. Ryland

JCR/klw
Enclosure
cc:  Michael G. McLaren, Esq. (Via Email)
     Amy Worrell Sterling, Esq. (Via Email)
     Douglas Halijan, Esq. (Via Email)
     Nathan Bicks, Esq. (Via Email)

EXHIBIT H



MICHAEL G. MCLAREN, Attorney
Email: mmclaren@blackmclaw.com
Direct: (901) 270-6525

BLACK / MCLAREN / JONES / RYLAND / GRIFFEE

MEMPHIS OFFICE
SUITE 360
530 OAK COURT DRIVE
MEMPHIS, TENNESSEE 38117
PHONE (901) 762-0535

BRENTWOOD OFFICE
BUILDING 300, SUITE 313
104 EAST PARK DRIVE
BRENTWOOD, TENNESSEE 37027
PHONE (615) 815-1508

Fax: (901) 762-0539 / www.bmjrglaw.com

July 13, 2023

<u>VIA EMAIL AND U.S. MAIL</u>
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Nathan Bicks, Esq.
Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

Re:    Asplundh / MLGW
       My File No. 2302.002

Dear Nathan and Doug:

As you know, my client, Memphis Light, Gas and Water ("MLGW"), entered into a certain contract with your client, Asplundh Tree Expert, LLC ("Asplundh"), for line clearance work to be performed by Asplundh over the course of five (5) years. The referenced contract is Contract No. 12077, made and entered into on August 30, 2019 (the "Contract"). Article V of the Contract allows MLGW to terminate the contract, without any prior written notice, "for any reason described in the Breach of Contract Article." Such Breach of Contract Article XVII provides MLGW the right to terminate the Contract if, in MLGW's opinion, any of the enumerated grounds set forth in the Article exist.

While not required by the Contract, but to ensure compliance with the performance bond's requirements, on May 30, 2023, I provided you with MLGW's written Notice of Breach outlining Asplundh's breaches of the Contract. In that Notice of Breach, which I have enclosed and incorporate fully herein, MLGW notified Asplundh that MLGW would terminate the Contract for cause if Asplundh failed to cure its breaches of the Contract. To date, Asplundh has failed to cure those breaches and has not performed the Contract.

Accordingly, please consider this letter as MLGW's formal written notice that it is terminating the Contract, effective immediately, based on the grounds set forth in the Notice of Breach. MLGW specifically reserves all rights and remedies available to it as a result of Asplundh's breach of the Contract, none of which are waived by omission in this letter or otherwise.

EXHIBIT H

Nathan Bicks, Esq.
Douglas Halijan, Esq.
July 13, 2023
Page 2


Article VIII of the Contract allows for notices to be provided to an authorized representative of Asplundh via email. As you represent Asplundh, I assume this notice can be appropriately accepted by you. Please let me know immediately if you are not authorized to accept this notice on behalf of Asplundh.

Sincerely,

Michael G. McLaren

MGM/clw
Enclosure/Attachment
cc:  John C. Ryland, Esq. (Via Email)
      Amy Worrell Sterling, Esq. (Via Email)

EXHIBIT H



MICHAEL G. McLAREN, Attorney
Email: mmclaren@blackmclaw.com
Direct: (901) 270-6525

BLACK / MCLAREN / JONES / RYLAND / GRIFFEE

| MEMPHIS OFFICE | BRENTWOOD OFFICE |
|---|---|
| SUITE 360 | BUILDING 300, SUITE 313 |
| 530 OAK COURT DRIVE | 104 EAST PARK DRIVE |
| MEMPHIS, TENNESSEE 38117 | BRENTWOOD, TENNESSEE 37027 |
| PHONE (901) 762-0535 | PHONE (615) 815-1508 |

Fax: (901) 762-0539 / www.bmjrglaw.com

May 30, 2023

VIA EMAIL
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Nathan Bicks, Esq.
Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

Re:    **Notice of Breach of Contract**
       Asplundh / MLGW
       My File No. 2302.002

Dear Nathan and Doug:

Please consider this Memphis Light, Gas and Water's Notice of Breach of the contract titled "Contract Documents for Line Clearance, Contract No. 12077," by and between Memphis Light, Gas and Water Division, Board of Light, Gas and Water Commissioners and Asplundh Tree Expert, LLC, entered into the 30th day of August, 2019 ("Contract"). The particular contract is labeled "Line Clearance," and the parties thereto as specified in Article I are Memphis Light, Gas and Water Division of the City of Memphis, Tennessee ("MLGW") and Asplundh Tree Expert, LLC ("Asplundh").

The term of the Contract specified in Article V is for "60 months from the date of the notice to proceed." This is a Notice of Breach of that contract as required by Article VIII. Notice is specified to be given to Asplundh Tree Expert, LLC, c/o Gene Hayden, 708 Blair Mill Road, Willow Grove, PA 19090. However, since you have been acting as Asplundh's attorneys, I assume this notice can be appropriately accepted by you. Please let me know immediately if you cannot accept this notice for any reason.

There is also a bond on this Contract pursuant to Article XIV. The bond is a "performance bond for 100% of the contract price." My law partner John Ryland will be handling the issues with the bond and will send you a separate notice.

EXHIBIT H

Nathan Bicks, Esq.
Douglas Halijan, Esq.
May 30, 2023
Page 2

Recall that MLGW sent you and the bonding company a letter on November 29, 2022, indicating it was considering declaring a breach. Subsequently, Asplundh and MLGW continued meeting to discuss a resolution, which was not reached.

The breach of contract-specific provisions noted in the Contract that this notice covers are contained in Article XVII, titled "Breach of Contract." MLGW cites that entire paragraph in this Notice of Breach but calls particular attention to the following paragraphs:

1.    Fail or refuse to perform the Work in whole or in part after notice by MLGW to proceed;

2.    Abandon the Work;

3.    Unnecessarily or unreasonably delay the Work at any time;

6.    Willfully or negligently violate any provisions of the Contract;

7.    Fail or refuse to fully complete the Work within the time specified or extension of time granted by MLGW;

11.   Fail or refuse to comply with the terms and provisions of the Contract and or Contract Documents;

12.   Fail to complete the work within the specified time allotted for completion of Work as set forth in the proposal and otherwise as set forth in the Contract Documents;

MLGW also cites Article XXIV in this Notice of Breach. That section indicates that "the Work shall begin in a timely manner and be continued through completion … ." It also specifies that Asplundh "agrees to complete each portion of the Work by the date specified in Contract Documents … ."

MLGW has never granted an extension of time as specified in Article XXV of the Contract, nor has Asplundh ever requested one.

MLGW also cites Article XXVI in this Notice of Breach, which requires Asplundh to "furnish the personnel that shall be required to complete the Work in a timely manner and within the Contract amount." That same paragraph requires Asplundh, at Asplundh's sole cost and expense, to "train employees prior to the start of the Work … ."

EXHIBIT H

Nathan Bicks, Esq.
Douglas Halijan, Esq.
May 30, 2023
Page 3


In point of fact, the average number of crews at work for MLGW has dropped as follows:

        2020 – 37
        2021 – 27
        2022 – 17
        2023 – 16

The miles trimmed by Asplundh has also dropped precipitously:

        2020 – 610
        2021 – 552
        2022 – 189.6
        2023 (as of May 17, 2023) – 20.2

At this point, MLGW has notified in you, in writing, that MLGW is considering declaring you in default of the Contract. Formally, we are requesting a conference with you to be held not later than 15 days after the receipt of this notice to discuss methods of performing the Contract. I will point out, however, that this has previously been done, and an extension of time was granted while you, Asplundh, and MLGW and the Principal were asked to meet. MLGW excused the Surety from that meeting, but MLGW and Asplundh met several, several times in an effort to fulfill the terms of the Contract. If you (Asplundh) deem it necessary for appropriate bond coverage to have and schedule the meeting called for in the bond, please let us know immediately, and we will fully comply.

In the event there is no "cure" under the terms of the Contract, MLGW will terminate the Contract for cause and take any remedy which may be available to them, including reletting the Contract, bringing an action for breach, and any other remedies.

Also, please note that I am sending this by email to you. If you require certified mail or any other form of delivery, please let me know. Otherwise, we will consider your non-response as a waiver of any other method of service.

Sincerely,

Michael G. McLaren

MGM/clw
Attachment
cc:     John C. Ryland, Esq. (Via Email)


EXHIBIT H



MICHAEL G. MCLAREN, Attorney
Email: mmclaren@blackmclaw.com
Direct: (901) 270-6525

BLACK / MCLAREN / JONES / RYLAND / GRIFFEE

**MEMPHIS OFFICE**
SUITE 360
530 OAK COURT DRIVE
MEMPHIS, TENNESSEE 38117
PHONE (901) 762-0535

**BRENTWOOD OFFICE**
BUILDING 300, SUITE 313
104 EAST PARK DRIVE
BRENTWOOD, TENNESSEE 37027
PHONE (615) 815-1508

Fax: (901) 762-0539 / www.bmjrglaw.com

November 29, 2022

VIA EMAIL
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

COPY

Nathan Bicks, Esq.
Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

VIA EMAIL
[nbicks@bpjlaw.com]
[dhalijan@bpjlaw.com]

Asplundh Tree Experts, LLC
c/o Nathan Bicks, Esq.
c/o Douglas Halijan, Esq.
BURCH PORTER & JOHNSON, PLLC
130 North Court Avenue
Memphis, Tennessee 38103

VIA FEDERAL EXPRESS

Travelers Casualty and Surety Company of America
ATTN: Kaitlyn Malkowski
One Tower Square
Hartford, CT 06183

Re:    Asplundh / MLGW
       My File No. 2302.002

Dear Nathan, Doug, and Ms. Malkowski:

Following our last meeting, your client, Asplundh, was to have submitted a per-mile proposal to try to rectify the extreme deficiencies of tree cutting thus far this year.

EXHIBIT H

Nathan Bicks, Esq., et al.
November 29, 2022
Page 2

We have never received such a proposal. Consequently, pursuant to paragraph XVII of the
Contract and paragraph A of the Performance Bond, MLGW is notifying Asplundh and the Surety
that MLGW is considering declaring Asplundh in default of the Contract and is requesting and
attempting to arrange another conference with Asplundh (and the Surety) to be held no later than
December 14, 2022, to discuss methods of performing the Contract.

Note that MLGW is not terminating the contract at this time but, pursuant to Article V of the
Contract, Article XVII of the Contract, and paragraph A of the Bond, is reserving its rights to
declare the Contract in default, terminate the Contract, or act on any other remedies available to it
under the Contract.

The Contract provides that notices to Asplundh shall be sent to:

     Asplundh Tree Experts, LLC
     c/o Nathan Bicks, Esq.
     c/o Douglas Halijan, Esq.
     BURCH PORTER & JOHNSON, PLLC
     130 North Court Avenue
     Memphis, Tennessee 38103

And as to the Bond, notices shall be given to:

     Travelers Casualty and Surety Company of America
     ATTN: Kaitlyn Malkowski
     One Tower Square
     Hartford, CT 06183

MLGW would still welcome some resolution of the issues involved in this matter but is taking this
step to fulfill its obligations under the Contract and the Bond.

Please call me at your convenience.

Sincerely,

Michael G. McLaren

John C. Ryland

MGM/clw

EXHIBIT H



| | Commercial Surety - Hartford | Laura Murphy |
|---|---|---|
| | | Senior Claim Counsel |
| | P.O. Box 2989 | Bond & Specialty Insurance Claim |
| | Hartford, CT, 06104-2989 | Phone: (860) 277-0328 |
| | | Fax: (888) 460-6622 |
| | | Email: LMMURPHY@travelers.com |

July 18, 2023

Black McLaren Jones Ryland Griffee
530 Oak Court Drive, Suite 360
Memphis, TN 38117
Attention: John Ryland, Esq.

Re:    Surety:          Travelers Casualty and Surety Company of America
        Our File No.:     210-SC-T2216443-NR
        Bond No.:        004-SB-107114240
        Principal:        Asplundh Tree Expert, LLC
        Obligee:         Memphis Light, Gas and Water Division of the City of Memphis
        Claimant:       Memphis Light, Gas and Water Division of the City of Memphis
        Project:         Contract 12077

Dear Mr. Ryland.

On behalf of Travelers Casualty and Surety Company of America (the "Surety"), I write to acknowledge receipt of your correspondence dated July 14, 2023, and sent on behalf of Memphis Light, Gas and Water Division of the City of Memphis ("MLGW").

We are in receipt of your claim notice in the above-referenced matter. The information you have provided to date is not sufficient to establish liability under the bond. Therefore, we must inform you that at this time we consider no portion of the amount claimed to be undisputed. The basis for challenging the disputed amount is lack of substantiation. Therefore, to facilitate our independent investigation of the claim, we request that you provide the following documents:

1. The applicable Contract and all Specifications, General and Supplemental Conditions, addenda, Project Drawings, Project Manuals and Amendments to same;
2. Specific contract clauses which MLGW alleges have been breached by Asplundh;
3. All proposals provided by Asplundh to MLGW provided in response to concerns raised by MLGW and all MLGW responses thereto;
4. All documents evidencing Principal's scope of work;
5. All Change Orders (Requested and Approved, Pending, Requested and Unapproved) and all Responses thereto;
6. Requests for Information and Supplemental Instructions;
7. Notices to Proceed;
8. Copies of all relevant correspondence to or from the Obligee and Principal;
9. Project Meeting Minutes;
10. All Payment Information (Paid and Unpaid);
11. All Notices of Defective and/or Unacceptable Work or Deficiency Notices;
12. A Statement or Contract Balance Referencing: Contract Amount, Approved and Paid Payment Requisitions, Approved and Unpaid Payment Requisitions and Amount Retained;

*********************** **Our toll-free number is 800-842-8496** ***********************
If possible, please send future communications and documents concerning this claim via email to LMMURPHY@travelers.com Please
include the claim number in the subject line. (Please note that in certain cases we may still request original documents).
Rev 11/11/17                                                      C-01

EXHIBIT I

**Travelers**

Memphis Light, Gas And Water Division Of The City Of Memphis
July 18, 2023
Page 2

13. All information and documentation regarding any alleged damages or loss sustained by MLGW which were incurred as a direct or indirect result of Asplundh's alleged breach of Contract;

14. The scope of the project as rebid;

15. Pertinent information regarding decision to rebid the Project; and

16. Any other pertinent information that you believe may assist us in reviewing this matter.

**There is no need to send any documentation that MLGW previously provided to Travelers.**

Our purpose in requesting information from you is to develop a complete understanding of the circumstances surrounding the claim. As such, if other information or documents exist which you feel would assist our evaluation of the claim, we ask that you furnish that information as well. In the interim, we will correspond with our Principal to gain an understanding of their position.

This correspondence and all prior or subsequent communications and/or investigative efforts are made with the express reservation of all rights and defenses the Surety or the Principal has or may have at law, equity or under the terms and provisions of the bond and contract documents. This reservation includes, without limitation, defenses that may be available under any applicable notice and suit limitation provisions. Subject to this strict and continuing reservation, we look forward to hearing from you.

Sincerely,

*Laura Murphy*

Laura Murphy

encl:   Claim Form
cc:      Asplundh Tree Expert, LLC

*************************  **Our toll-free number is 800-842-8496**  *************************
If possible, please send future communications and documents concerning this claim via email to LMMURPHY@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).
Rev 11/11/17                                                                                                                                    C-01

EXHIBIT I

**Subject:**                FW: Performance Bond No. 107114240 - Principal: Asplundh Tree Expert, LLC - Surety: Travelers Casualty & Surety Company of America

---

**From:** Murphy, Laura M <LMMURPHY@travelers.com>
**Sent:** Friday, July 28, 2023 4:49 PM
**To:** J Ryland <JRyland@blackmclaw.com>
**Cc:** 'dhalijan@bpjlaw.com' <dhalijan@bpjlaw.com>; 'nbicks@bpjlaw.com' <nbicks@bpjlaw.com>; MMcLaren <MMcLaren@blackmclaw.com>; Amy W. Sterling <asterling@blackmclaw.com>
**Subject:** RE: Performance Bond No. 107114240 - Principal: Asplundh Tree Expert, LLC - Surety: Travelers Casualty & Surety Company of America

Mr. Ryland,

I was unable to prepare a proper response by today as requested. I had surgery last Friday and will also be out of the office next week. I will respond when I return the week of August 8.

Thank you.

Laura

---

**From:** Murphy, Laura M
**Sent:** Tuesday, July 18, 2023 1:45 PM
**To:** J Ryland <JRyland@blackmclaw.com>
**Cc:** dhalijan@bpjlaw.com; nbicks@bpjlaw.com; MMcLaren <MMcLaren@blackmclaw.com>; Amy W. Sterling <asterling@blackmclaw.com>
**Subject:** RE: Performance Bond No. 107114240 - Principal: Asplundh Tree Expert, LLC - Surety: Travelers Casualty & Surety Company of America

Mr. Ryland,

I have received your correspondence dated July 14, 2023. I note that you have asked for a response by close of business on July 20, 2023. Although there is no specific response date required by the bond, other than reasonable promptness, I am advising that I will be out of the office on July 20-21 for medical reasons.

Please also be advised that our contact person at Asplundh was out of the office on vacation and returned today. I was able to have a call with Asplundh earlier today, but have asked that they provide me with more information as part of our investigation.

I am also providing the attached correspondence to you.

I will need some time to review the materials that have been requested. I hope to be in a position to respond to you by the end of next week.

Please let me know if you would like to discuss.

1

EXHIBIT J

Thank you.

Laura M. Murphy
Travelers Bond & Specialty Insurance
Phone: 860-277-0328

The information contained in this document is provided for risk management purposes relating to Travelers' potential bonded exposure and is not to be regarded as providing a legal opinion or legal advice. Travelers and its employees are not engaged in the practice of law and are not rendering legal advice in any manner to our accounts/customers. If legal advice is required, you need to seek the services of a competent legal professional. Finally, Travelers and its employees disclaim all warranties, express or implied, and assume no liability to any party for any damages arising out of or in connection with the information presented.

**From:** Shelly Bloor <sbloor@blackmclaw.com>
**Sent:** Friday, July 14, 2023 10:10 AM
**To:** Murphy, Laura M <LMMURPHY@travelers.com>
**Cc:** dhalijan@bpjlaw.com; nbicks@bpjlaw.com; MMcLaren <MMcLaren@blackmclaw.com>; Amy W. Sterling <asterling@blackmclaw.com>; J Ryland <JRyland@blackmclaw.com>
**Subject:** [External] Performance Bond No. 107114240 - Principal: Asplundh Tree Expert, LLC - Surety: Travelers Casualty & Surety Company of America

> **CAUTION: This email came from outside of the company.**
> **Please exercise caution when opening attachments, clicking links or responding to this email. The original sender of this email is sbloor@blackmclaw.com.**

Please feel free to contact me if you should have any questions or have any problems viewing the attachment.

SHELLY BLOOR
PARALEGAL



**BLACK / McLAREN / JONES / RYLAND / GRIFFEE**
530 OAK COURT DRIVE, SUITE 360
MEMPHIS, TN 38117
901.762.0535 PHONE / 901.762.0539 FAX
sbloor@blackmclaw.com • www.bmjrglaw.com
*The information contained in this email is legally privileged and confidential information intended solely for the use of the person named above. If the reader of this email is not the intended recipient, you are notified that any use, dissemination, distribution or copying of this email or its contents is strictly and absolutely prohibited.*

This message (including any attachments) may contain confidential, proprietary, privileged and/or private information. The information is intended to be for the use of the individual or entity designated above. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended recipient is prohibited.

EXHIBIT J



JOHN C. RYLAND, Attorney
Email: jryland@blackmclaw.com

BLACK / MCLAREN / JONES / RYLAND / GRIFFEE

**MEMPHIS OFFICE**
SUITE 360
530 OAK COURT DRIVE
MEMPHIS, TENNESSEE 38117
PHONE (901) 762-0535

**BRENTWOOD OFFICE**
BUILDING 300, SUITE 313
104 EAST PARK DRIVE
BRENTWOOD, TENNESSEE 37027
PHONE (615) 815-1508

Fax: (901) 762-0539 / www.bmjrglaw.com

August 18, 2023

**<u>VIA E-MAIL</u>**
[lmmurphy@travelers.com]

Laura M. Murphy, Esq.
Travelers
P.O. Box 2989
Hartford, Connecticut 06104-2989

Re:    Surety: Travelers Casualty & Surety Company of America
       Your File No. 210-SC-T2216443-NR
       Bond No. 004-SB-107114240
       Principal: Asplundh Tree Expert, LLC
       Obligee: Memphis Light, Gas and Water Division of the City of Memphis, Tennessee
       Claimant: Memphis Light, Gas and Water Division of the City of Memphis, Tennessee
       Project: Contract 12077
       My File No. 2302.002

Dear Ms. Murphy:

This letter will acknowledge receipt of your July 18, 2023 correspondence. Respectfully, Memphis Light, Gas and Water Division of the City of Memphis, Tennessee (hereinafter "MLG&W") disputes any contention on Travelers' behalf that Travelers has not been provided with sufficient information to establish Travelers' liability under the Performance Bond. It is undisputed that MLG&W has fully complied with its obligations under Sections A. – C. of the Performance Bond. Therefore, it is incumbent on Travelers to promptly take one of its required actions under Sections A. – E. of the Performance Bond.

Notwithstanding the foregoing, MLG&W is responding to your request for additional documentation as provided below. For ease of reference, MLG&W's responses will track the request numbers in your July 18, 2023 correspondence.

1.    A complete copy of Contract 12077 which includes, among other things, all pricing, labor and equipment rates, conditions and specifications applicable to the Contract is being provided to you with this letter. Previously, Asplundh Tree Expert, LLC, (hereinafter

**EXHIBIT K**

Laura M. Murphy, Esq.
August 18, 2023
Page 2

"Asplundh"), has erroneously claimed through its legal counsel that the Contract only references aspirational performance "goals" and sets no definitive tree trimming requirements that must be met for Asplundh to be in compliance with the Contract. However, any such position is belied by the terms of the Contract. This is clearly confirmed by the Specification Section of the Contract which expressly provides under paragraph 2 that "MLG&W's whole distribution system will be trimmed on a 3 year cycle. A goal of 1,400 miles/year **must be trimmed**." The phrase "must be trimmed" establishes a mandatory performance standard that must be met on an annual basis by Asplundh. Asplundh has never met this performance requirement nor has Asplundh trimmed MLG&W's entire distribution system on a 3 year cycle as mandated by the terms of the Contract. The documents being provided in relation to this item number bear Bates Stamp numbers MLGW 000001 – MLGW 000124.

Aside from the Contract, you asked me to provide you with Project Drawings and Project Manuals. MLG&W is not aware of any Project Drawings or Project Manuals that exist as those types of documents would normally be applicable to a contract involving a construction project.

2.  As noted above, Asplundh has failed to even remotely meet the tree trimming requirements established by the Contract. The clauses of the Contract that have been breached by Asplundh include, but are not necessarily limited to, the breached clauses referenced in Mike McLaren's May 30, 2023 Notice of Breach of Contract letter to Nathan Bicks and Douglas Halijan. I sent you a copy of Mr. McLaren's May 30, 2023 Notice of Breach letter on June 20, 2023.

3.  I believe documents responsive to item number 3 have been previously provided to Travelers. However, enclosed herewith please find copies of correspondence between counsel for Asplundh and counsel for MLG&W addressing Asplundh's breach of its performance obligations under the Contract. These documents bear Bates Stamp numbers MLGW 000125 to MLGW 000196.

4.  Asplundh's scope of work is set forth in the Contract which is being provided to you with this letter.

5.  In response to this request, enclosed please find a February 25, 2021 Contract Addendum between Asplundh and MLG&W. When complaints were raised about Asplundh's failure to meet its performance obligations under the Contract, Asplundh suggested that its failure to perform was excused by a lack of available employees. However, under the terms of the Contract, Asplundh assumed an affirmative duty to maintain an adequate work force. Section XXVI. of the Contract expressly provides that Asplundh "will furnish the personnel that shall be required to complete the work in a timely manner and within the Contract amount." Section XXIV. of the Contract further requires Asplundh to maintain and operate a work force sufficient to meet the work requirements of the Contract.

EXHIBIT K

Laura M. Murphy, Esq.
August 18, 2023
Page 3

Respectfully, Asplundh cannot use its failure to comply with the work force requirements of the Contract to excuse the breaches of its performance obligations under the Contract. Obviously, Asplundh cannot rely upon its breach of one part of the Contract to excuse its breach of other parts of the Contract. Therefore, Asplundh's failure to maintain an adequate tree trimming staff, as required by the Contract, provides no legitimate excuse for its lack of performance under the Contract. The document being provided in relation to this item number bears Bates Stamp number MLGW 000197.

6.    In item number 6, you asked for "Requests for Information and Supplemental Instructions." This request is extremely vague. Due to the foregoing, MLG&W is not certain what specific documents Travelers is requesting. As a result, MLG&W is unable to confirm whether any such documents exist or not.

7.    With respect to your request for "Notices to Proceed," MLG&W is not aware of any specific documents that are labeled in this fashion. Asplundh's duties and obligations are set forth in the Contract which is being provided to you with this letter.

8.    In relation to item number 8, please see the documents responsive to item number 3.

9.    As noted above, the Contract involves a tree trimming service contract, not a construction project. The conditions, duties and specifications applicable to the Contract are set forth in the Contract. MLG&W is not aware of any documents labeled "Project Meeting Minutes." Notwithstanding the foregoing, enclosed please find part of the Final Agenda for the Board of Memphis Light, Gas and Water Commissioners' meeting on April 21, 2021. The documents being provided in relation to this item number bear Bates Stamp numbers MLGW 000198 – MLGW 000202.

10.   In response to the information requested in item number 10, please see the enclosed spreadsheet entitled "Asplundh's Cost Plus Billing." The document being provided in relation to this item number bears Bates Stamp numbers MLGW 000203 – MLGW 000242.

11.   Many of the notices and complaints of defective and unacceptable work performance were provided to Asplundh orally by MLG&W representatives. However, Asplundh's defective, unacceptable and deficient performance under the Contract also was repeatedly referenced in the correspondence between counsel for MLG&W and Asplundh. Please see the documents provided in response to item number 3 above.

12.   Please see the documents provided in response to item number 10 above.

13.   The Asplundh tree clearance Contract was cancelled for Asplundh's non-performance and breach of the Contract. Asplundh had been contracted to perform a preventative vegetation management program that would clear MLGW's overhead electric line right of ways of tree encroachment. Cycle trim programs are common in the utility industry and are

EXHIBIT K

Laura M. Murphy, Esq.
August 18, 2023
Page 4

designed to mitigate tree related outages and reduce system repair costs. Work was scheduled on a three-year cycle. This entailed clearance of 1,400 miles of overhead line per year. Asplundh's actual miles trimmed were 612 miles in 2020, 618 miles in 2021, and 423 miles in 2022. Asplundh completed less than 40% of the mileage needed to maintain a three-year cycle. Failure to clear lines on schedule allowed unchecked tree growth and encroachment and resulted in deterioration of the integrity of the electric system.

Asplundh's failure to meet the requirements of the Contract resulted in monetary damages to MLGW in several ways. First, MLGW was forced to replace Asplundh with other contractors to complete the work that Asplundh was under contract to perform. Asplundh's failure to complete its obligations on the cycle trim resulted in additional work to properly clear the lines. Vegetation growth went un-addressed in even longer intervals which increased the amount of trimming needed and the work to dispose of added debris. Replacement contractors were selected by a competitive bid process. The new contracts' mileage rates were driven significantly higher than the existing agreement with Asplundh because of the system overgrowth and neglect. The cost for the **first year alone** will be $21,431,569.14 more than under the Asplundh Contract.[1] It will take at least three years to reach the desired cycle frequency. Thus, the particular form of damages referenced above will continue to accrue over the time period originally covered by the Asplundh Contract.

Asplundh's non-performance also resulted in an ongoing increase in tree related outages. MLGW normally addresses areas with frequent outages due to trees by conducting line inspections and then ordering remedial trimming through planned maintenance work orders. Remedial trimming is required on sections of lines where tree related outages recur frequently and planned work orders are issued to clear lines. As the cycle trim fell further behind as a result of Asplundh's failure to perform its obligations under the Contract, the need for corrective work increased dramatically. Between October 2020 and January 2023, MLGW paid $3,733,671.00 for spot trimming to supplement the cycle trimming work. Based upon computer modeling, 75% of this work would have been unnecessary if the cycle trim had been achieved and maintained. However, the real increase in costs for remedial trimming will occur going forward as MLGW strives to catch up on clearance work that in some areas has not been done in over seven years. Remedial tree trimming cost increases will continue to be felt for the next three years. Thus, MLG&W's damages in this regard are ongoing and will continue to be incurred in the future.

Increased tree related power outages add to MLGW's restoration cost. Interruptions caused by trees are now over four times higher than would occur with a well-maintained three-

---

[1] The cycle cost for Asplundh's services under year 5 of the Contract equal $20,432,721.43. The replacement contracts that MLG&W is having to enter into as a result of Asplundh's breach of contract are being entered into with three separate companies and the total annual cycle trimming costs under these three contracts will be $41,864,290.67 in year one. Therefore, the increased cycle trim costs to MLG&W in year one alone equals $21,431,569.14.

EXHIBIT K

Laura M. Murphy, Esq.
August 18, 2023
Page 5

year cycle. MLGW is suffering rising costs for emergency tree trimming to clear lines when trees damage lines and infrastructure. Between October 2020 and January 2023, MLGW paid $5,592,683.00 for emergency clearance work. Computer modeling estimates that 75% of this work would not have been required if the cycle trim was on schedule. Ironically, Asplundh benefited from the increase in both remedial and emergency tree trimming by receiving addition work and payment. This does include costs for line repair work and materials.

Asplundh's incompetence led to MLGW paying additional money for major storm restorations. These restoration expenses again included tree trimming along with material costs, line crew costs, revenue loss and more. During two of these events alone, MLGW spent a combined $25 Million on restoration efforts. Of this $25 Million, $8.3 million was spent exclusively on tree trimming expenses.

In summary, Asplundh's failure to fulfill obligations to timely clear MLGW power lines cost MLGW millions of dollars through multiple facets. Because of this, MGLW is now paying additional costs in contracts, non-scheduled trims, and major restoration expenses.

MLG&W is still in the process of gathering additional documents and information relating to the amount of its total damages. However, suffice it is to say, the damages that MLG&W has sustained as a direct and proximate result of Asplundh's breach of contract vastly exceed the amount of Travelers' Performance Bond.

14. The information requested in item number 14 can be found in the project rebid documents that were provided to you on June 20, 2023.

15. Please see the documents being provided in response to item number 3.

16. At this point, MLG&W firmly believes that it already has provided Travelers with more than ample documentation and information confirming Asplundh's grossly deficient performance in breach of the Contract. MLG&W has fully met and complied with all of its obligations under Sections A. – C. of the Performance Bond. Therefore, MLG&W expects and demands that Travelers promptly honor its commitments and obligations under the Performance Bond.

As requested in my July 14, 2023 letter to you, I would appreciate it if you would immediately let me know which option that Travelers will be exercising under Sections A. – E. of the Performance Bond. I look forward to receiving this information from Travelers.

EXHIBIT K

Laura M. Murphy, Esq.
August 18, 2023
Page 6

Sincerely,

John C. Ryland

JCR/klw
Enclosures
cc:  Michael G. McLaren, Esq. (Via Email)
     Amy Worrell Sterling, Esq. (Via Email)

EXHIBIT K



JOHN C. RYLAND, Attorney
Email: jryland@blackmclaw.com

BLACK / MCLAREN / JONES / RYLAND / GRIFFEE

**MEMPHIS OFFICE**
SUITE 360
530 OAK COURT DRIVE
MEMPHIS, TENNESSEE 38117
PHONE (901) 762-0535

**BRENTWOOD OFFICE**
BUILDING 300, SUITE 313
104 EAST PARK DRIVE
BRENTWOOD, TENNESSEE 37027
PHONE (615) 815-1508

Fax: (901) 762-0539 / www.bmjrglaw.com

August 24, 2023

**VIA E-MAIL**
[lmmurphy@travelers.com]

Laura M. Murphy, Esq.
Travelers
P.O. Box 2989
Hartford, Connecticut 06104-2989

Re:   Surety: Travelers Casualty & Surety Company of America
      Your File No. 210-SC-T2216443-NR
      Bond No. 004-SB-107114240
      Principal: Asplundh Tree Expert, LLC
      Obligee: Memphis Light, Gas and Water Division of the City of Memphis, Tennessee
      Claimant: Memphis Light, Gas and Water Division of the City of Memphis, Tennessee
      Project: Contract 12077
      My File No. 2302.002

Dear Ms. Murphy:

I hope this correspondence finds you well. MLG&W and Asplundh have agreed to attend mediation
with the Honorable Chancellor Ellen Hobbs Lyle prior to the initiation of legal proceedings. Chancellor
Lyle is handling mediations after serving a distinguished career of twenty-seven (27) years as a
Chancellor in Davidson County, Tennessee. I would like for Travelers to participate in the mediation
process with Chancellor Lyle. Please promptly let me know Travelers' position on this matter.

Sincerely,

John C. Ryland
JCR/klw
cc:  Michael G. McLaren, Esq. (Via Email)
     Amy Worrell Sterling, Esq. (Via Email)
     bcc:    Doug Black (Via Email)

EXHIBIT L

| | |
|---|---|
| **From:** | Murphy, Laura M <LMMURPHY@travelers.com> |
| **Sent:** | Friday, August 25, 2023 1:46 PM |
| **To:** | J Ryland; 'Peter Macaluso' |
| **Cc:** | MMcLaren; Amy W. Sterling; Kristy Wood |
| **Subject:** | RE: File No. 210-SC-T2216443-NR |

John,

The obligee on the bond continues to press Travelers to take action under the bond in response to its termination of Asplundh. I have asked Peter to provide a written response to Travelers to address the issues raised in the latest letter from Memphis's counsel.

With respect to your request that Travelers participate in the mediation, please be advised that typically Travelers as the surety does not participate in mediation. Under the terms of the General Contract of Indemnity("GCI") executed by Asplundh which runs to Travelers, Travelers would expect that Asplundh would make payment on any settlement that was reached and that Travelers would not contribute to any settlement. Travelers also has no specific knowledge of the facts or circumstances of the project. If you believe that there would be some benefit to including Travelers, I am happy to discuss. Please note, however, that our participation would increase the cost to Asplundh, as I would need to retain separate surety counsel, which would be an additional cost to Asplundh under the GCI.

If Asplundh wanted Travelers to participate, I could only attend via Zoom or Teams due to an ongoing personal matter which prevents me from traveling.

Please let me know if you would like to discuss.

Thank you.

Laura

Laura M. Murphy
Travelers Bond & Specialty Insurance
Phone: 860-277-0328

The information contained in this document is provided for risk management purposes relating to Travelers' potential bonded exposure and is not to be regarded as providing a legal opinion or legal advice. Travelers and its employees are not engaged in the practice of law and are not rendering legal advice in any manner to our accounts/customers. If legal advice is required, you need to seek the services of a competent legal professional. Finally, Travelers and its employees disclaim all warranties, express or implied, and assume no liability to any party for any damages arising out of or in connection with the information presented.

---

**From:** Rhonda Friedrichsen <rfriedrichsen@blackmclaw.com>
**Sent:** Thursday, August 24, 2023 4:43 PM
**To:** Murphy, Laura M <LMMURPHY@travelers.com>
**Cc:** MMcLaren <MMcLaren@blackmclaw.com>; Amy W. Sterling <asterling@blackmclaw.com>; J Ryland <JRyland@blackmclaw.com>; Kristy Wood <kwood@blackmclaw.com>
**Subject:** [External] File No. 210-SC-T2216443-NR

EXHIBIT M

**CAUTION: This email came from outside of the company.**
**Please exercise caution when opening attachments, clicking links or responding to this email. The original sender of this email is rfriedrichsen@blackmclaw.com.**

Please see attached correspondence from Attorney John Ryland regarding the above-referenced matter.

**Rhonda Friedrichsen**
**Legal Assistant/Paralegal**



**BLACK / McLAREN / JONES / RYLAND / GRIFFEE**
**530 OAK COURT DRIVE / SUITE 360**
**MEMPHIS, TN  38117**
**P (901) 762-0535 / F (901) 762-0539**
**www.bmjrglaw.com**

---

This message (including any attachments) may contain confidential, proprietary, privileged and/or private information. The information is intended to be for the use of the individual or entity designated above. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended recipient is prohibited.

EXHIBIT M



JOHN C. RYLAND, Attorney
Email: jryland@blackmclaw.com

BLACK / MCLAREN / JONES / RYLAND / GRIFFEE

**MEMPHIS OFFICE**                                                    **BRENTWOOD OFFICE**
SUITE 360                                                              BUILDING 300, SUITE 313
530 OAK COURT DRIVE                                                       104 EAST PARK DRIVE
MEMPHIS, TENNESSEE 38117                                          BRENTWOOD, TENNESSEE 37027
PHONE (901) 762-0535                                                   PHONE (615) 815-1508

Fax: (901) 762-0539  /  www.bmjrglaw.com

October 10, 2023

**VIA E-MAIL**
[lmmurphy@travelers.com]

Laura M. Murphy, Esq.
Travelers
P.O. Box 2989
Hartford, Connecticut 06104-2989

Re:    Surety: Travelers Casualty & Surety Company of America
       Your File No. 210-SC-T2216443-NR
       Bond No. 004-SB-107114240
       Principal: Asplundh Tree Expert, LLC
       Obligee: Memphis Light, Gas and Water Division of the City of Memphis, Tennessee
       Claimant: Memphis Light, Gas and Water Division of the City of Memphis, Tennessee
       Project: Contract 12077
       My File No. 2302.002

Dear Ms. Murphy:

On July 14 and August 18, 2023 I sent you correspondence regarding the above referenced
Performance Bond and asked you to let me know which option Travelers would be exercising under
Sections A. – E. of the Performance Bond. On August 25, 2023, you sent me an e-mail advising that
you had asked Peter Macaluso to provide a written response to Travelers to address the issues involved.
Can you please provide me with an update concerning the status of Mr. Macaluso's written response
and Travelers' decision concerning the option it will be exercising under Sections A. – E. of the
Performance Bond? Thanks!

Sincerely,

John C. Ryland
JCR/klw
cc:  Michael G. McLaren, Esq. (Via Email)
     Amy Worrell Sterling, Esq. (Via Email)
     Charles S. Mitchell, Esq. (Via Email)

EXHIBIT N



Laura Murphy
Senior Claim Counsel
Bond & Specialty Insurance Claim
Phone: (860) 277-0328
Fax: (888) 460-6622
Email: LMMURPHY@travelers.com

October 19, 2023

Black McLaren Jones Ryland and Griffee
530 Oak Ct. Drive
Memphis, TN 38120
Attention: Michael McLaren

| | | |
|---|---|---|
| Re: | Surety: | Travelers Casualty and Surety Company of America |
| | File No.: | 210-SC-T2216443-NR |
| | Bond No.: | 004-SB-107114240 |
| | Principal: | Asplundh Tree Expert, LLC |
| | Project: | Contract 12077 |
| | Obligee: | Memphis Light, Gas and Water Division |
| | Claimant: | Memphis Light, Gas and Water Division |

Dear Mr. McLaren:

This letter is written in response to Memphis Light, Gas and Water Division's ("Memphis LG&W") claim against the above-referenced Bond and the documentation you have submitted to the Surety in support of that claim. Travelers Casualty and Surety Company of America (the "Surety" or "Travelers") has completed its review of the information provided by Memphis LG&W. We are also in receipt of documentation from Asplundh Tree Expert, LLC ("Asplundh") wherein Asplundh disputes your claim in full. Enclosed for your review are a copy of Contract 12077, Contract 12420, a copy of Asplundh's July 26, 2023 letter directed to Travelers and a copy of a letter from Asplundh's counsel directed to you enclosed therewith.

Based upon our review of the above referenced information, we respectfully deny your claim due to the existence of a bona fide dispute between Asplundh for the reasons set forth below.

Factual Findings:

- On November 29, 2022, Memphis LG&W acting through its counsel, Black, McLaren, Jones, Ryland, Griffee, notified Asplundh, its counsel Burch Porter & Johnson, and Travelers that Asplundh was considering declaring Asplundh in default of the Contract and was requesting a conference to discuss methods of performing the Contract.
- Travelers responded and was informed by counsel for Memphis LG&W that the requested conference was postponed indefinitely by agreement of the two parties, who were continuing to discuss the issues.
- Asplundh provided a response to Memphis LG&W to which Memphis LG&W's counsel responded in a letter dated January 23, 2023, that he was trying to figure out the economic ramifications of Asplundh's proposal and hoped to respond that week.
- Memphis LG&W issued a Notice to Bidders for Line Clearance Work (Contract 12420). Bids were to be submitted by February 28, 2023. Memphis LG&W invited Asplundh to bid on the new contract. The scope of Contract 12420 includes most or all of the work covered

*************************** **Our toll-free number is 800-842-8496** ***************************
If possible, please send future communications and documents concerning this claim via email to LMMURPHY@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

Rev 11/11/17                                                                                                   C-15

EXHIBIT O

**Travelers**

October 19, 2023
Page 2

- by Asplundh's current Contract. Asplundh submitted a bid for this Contract 12420 but was not awarded the bid.
- The rebid was not disclosed to Travelers. Travelers was not made aware that the Contract was being rebid until June 2023 months after the rebid and subsequent award.
- Unaware that the Contract was being rebid, Travelers contacted counsel for Memphis LG&W for a status via email dated March 21, 2023.
- Counsel for Memphis LG&W responded that there was no activity with respect to the "potential dispute," that the parties had "stopped any discussions regarding either resolution or claims against each other" and that counsel would keep Travelers "posted as to any developments." Travelers was not made aware of any new developments until a default letter issued by Counsel for the City as noted below.
- Counsel for Memphis LG&W issued a letter to Travelers alleging that Asplundh continued in its failure to perform under the contract and no resolution was reached. Counsel included a copy of a Notice of Breach Letter dated May 30, 2023, which it issued to Asplundh. Counsel demanded a meeting under the terms of the Bond.
- The requested meeting was held on June 15, 2023 via video conference, and was attended by Asplundh, Memphis LG&W, their respective counsel and Travelers. Other than the fact that the parties entered into a contract and Traveler issued a performance bond, the parties did not agree on even the most basic facts regarding the terms of the contract, work orders, Asplundh's performance obligations or what had changed between Memphis LG&W's letter of March 23 and the present.
- During this meeting, Travelers became aware that the job had been rebid and a new contractor has been selected and was under contract. It advised that it has requested that Asplundh present a new bid, which it did, but that it had not been selected as the final bid. The parties also discussed and agreed that counsel for Memphis LG&W would draft a Tolling Agreement to provide the parties time to discuss the issues. A draft of the Tolling Agreement was never provided.
- July 14, 2023, Counsel for Memphis LG&W issued a letter terminating Asplundh and was making a claim on the Performance Bond.

**Discussion**

**Claim:**

Memphis LG&W's claim against the Surety is alleged to arise from "Asplundh's failure to perform under its Line Clearance Contract, Contract No. 12077" (the "Contract"). Memphis LG&W alleges Asplundh failed to meet what it termed the tree trimming mileage "requirements" under the Contract, that Asplundh failed to mitigate damages, and that storms caused power failures and Asplundh's failure to perform caused and/or contributed to the power outages. Memphis LG&W further alleges that Asplundh is in breach of Section XVII. "Breach of Contract" of the Contract. No specific monetary demand was made upon the Surety. Instead Memphis LG&W directed the Surety to the Bond, a copy of which is attached hereto, and requested that Travelers take one of the actions set forth in the Bond in Subsections A., B., C., D., or E. of the attached Bond form.

**Bona Fide Dispute:**

Asplundh has notified the Surety that it disputes the claim in its entirety. It alleges that there are no tree trimming mileage requirements under the Contract, only "goals." Asplundh alleged that it

*********************** **Our toll-free number is 800-842-8496** ***********************
If possible, please send future communications and documents concerning this claim via email to LMMURPHY@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

EXHIBIT O

**Travelers**

October 19, 2023
Page 3

specifically negotiated the insertion of the work "goal" into the Contract to avoid this exact situation in which the City is claiming that there was a tree trimming mileage requirement. It also points to the revised wording in the rebid contract, which stated "1398 miles/year must be trimmed" as evidence that the word "goal" was just that, a goal and not a requirement or metric for miles trimmed. The rebid contract sets forth a clear mileage requirement. It further alleges that it attempted to address issues raised by Memphis LG&W on multiple occasions by submitting written proposals for Memphis LG&W's review, yet Memphis LG&W has failed to respond to these proposals. Asplundh also alleges that Memphis has not suffered any compensable damages and further that Memphis LG&W directed Asplundh's work, including the type of tree trimming work and the areas where work was to be performed. Certain areas required that trimming be done "manually" by climbing the trees, rather than utilizing bucket trucks and other equipment. Asplundh alleges that Memphis LG&W directed its work to areas where the manual trimming process must be utilized, thereby slowing its progress. Asplundh alleges that it requested that the work be spread among a balanced mix of geographic areas, which would have allowed Asplundh to utilize crews and equipment more efficiently, however the City continued to direct work to areas where manual trimming was required. Asplundh also cited serious safety and security concerns impacting its work force, and a lack of both a national and local trained work force. Asplundh's position is that it has not breached the Contract in any way, nor has it failed or refused to perform, abandoned, delayed or refused to complete work.

The Surety is aware that the parties dispute the factual issues at hand. The Contract stated that "A goal of 1400 miles/year must be trimmed." The parties dispute whether "goal" is a contractual requirement or not, particularly given the change of language in the new contract, which stated "1398 miles/year must be trimmed." "Goal" is not a defined term under the Contract.

Interpretation of a written contract is a matter of law, rather than a matter of fact. *See Hamblen County v. City of Morristown,* 656 S.W.2d 331, 335–36 (Tenn.1983); *Standard Fire Ins. v. Chester O'Donley & Assocs., Inc.,* 972 S.W.2d 1, 5–6 (Tenn. Ct. App.1998). The purpose of interpreting a written contract is to ascertain and to give effect to the contracting parties' intentions. *See Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.,* 521 S.W.2d 578, 580 (Tenn.1975); *Gredig v. Tennessee Farmers Mut. Ins. Co.,* 891 S.W.2d 909, 912 (Tenn. Ct. App.1994).

In the case of written contracts, these intentions are reflected in the contract itself. Thus, the search for the contracting parties' intent should focus on the four corners of the contract, *see Whitehaven Community Baptist Church v. Holloway,* 973 S.W.2d 592, 596 (Tenn.1998); *Hall v. Jeffers,* 767 S.W.2d 654, 657–58 (Tenn. Ct. App.1988), and the circumstances in which the contract was made. *See Penske Truck Leasing Co. v. Huddleston,* 795 S.W.2d 669, 671 (Tenn.1990); *Pinson & Assocs. Ins. Agency, Inc. v. Kreal,* 800 S.W.2d 486, 487 (Tenn. Ct. App.1990).

The surety has the right to raise any defense it identifies in its investigation that either the principal or the surety has against the obligee. "After the obligee makes a declaration of default, the surety, in its initial investigation, will also attempt to indemnify any defenses the principal and the surety have against the obligee. These may include the obligee impairing the surety's rights against the principal, the obligee modifying the underlying contract and the conduct of the obligee.
A performance bond only guarantees performance to which an obligee is entitled to. Therefore, if the principal maintains a defense against the obligee's demand for performance, the surety is also entitled to assert that defense against the obligee. Oftentimes a principal may defend on the basis of an improper termination, a bad faith declaration of default, a failure to allow the principal to cure,

*********************** **Our toll-free number is 800-842-8496** ***********************
If possible, please send future communications and documents concerning this claim via email to LMMURPHY@travelers.com Please
include the claim number in the subject line. (Please note that in certain cases we may still request original documents.)

Rev 11/11/17                                                                                                                                C-15

EXHIBIT O

**Travelers**

October 19, 2023
Page 4

substantial performance, failing to cooperate, differing site conditions, improper administration of the contract or impossibility of performance." § 5:36. Performance bonds—Defenses TNPRAC-CONST § 5:36 Tennessee Practice Series, Construction Law Handbook Construction Surety Bonds.

The parties dispute the factual issue of whether the tree trimming mileage goal stated in the Contract was a contractual requirement or merely a goal, something that Asplundh would aspire to achieve, but in the event it was not able to meet the goal that would not a breach of the Contract or a basis for termination. Memphis LG&W raises Asplundh's alleged failure to trim 1400 miles/year as a default of the Contract and a basis for termination.

Asplundh also alleges that factors outside of its control impacted its ability to work, including safety and security issues, lack of a training and licensed work force, and the refusal of Memphis LG&W to respond to its various proposals provided to Memphis LG&W which attempted to address the concerns raised by Memphis LG&W, and the refusal to direct Asplundh to a more balanced work flow with both manual and bucket trimming work.

**Lack of Documentation in Support of Claims:**

Aside of the dispute regarding the Contract interpretation, Memphis LG&W has not provided any evidence of the mileage actually trimmed. Further, Asplundh alleges that Memphis LG&W directed and controlled where it worked. Asplundh alleged that it was complying with the work orders it received, and further that Memphis LG&W cannot claim a contract breach when it was the party directing Asplundh to perform a great deal of manual trim work and was aware of the time-consuming process of manual trimming.

Memphis LG&W also has not provided any evidence of any damages it alleges to have sustained as a result of its claim that Asplundh breached the Contract.

**Deprivation of Surety Rights and Remedies:**

Memphis LG&W re-bid the work more than 6 months ago and awarded the new contract to another contractor. This action interfered with the Surety's right to mitigate damages and its remedies under the Bond, which provides the following:

> When the Obligee has satisfied the conditions aforesaid, the Surety shall promptly and at Surety's expense take one (1) of the following actions:

> A.   Arrange for the Principal, with consent of the Obligee, to perform and complete the Contract; or

> B.   Perform and complete the Contract itself, through the Surety's agents or through independent contractors; or

> C.   Obtain bids or negotiate proposals from qualified contractors acceptable to the Obligee for a contract for performance and completion of the Contract, arrange for a contract to be prepared for execution by the Obligee and the contractor selected with the Obligee's concurrence, to be secured with performance and

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* **Our toll-free number is 800-842-8496** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
If possible, please send future communications and documents concerning this claim via email to LMMURPHY@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

EXHIBIT O

**Travelers**

October 19, 2023
Page 5

payment bonds, executed by a qualified surety equivalent to the bonds issued on the Contract, and pay to the Obligee the damages over the balance of the Contract price incurred by the Obligee resulting from the Principal's default; or

D.   Waive the Surety's right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances, after investigation, determine the amount for which the Surety may be liable to the Obligee and, as soon as practicable after the amount is determined, tender payment to the Obligee; or

E.   Deny liability in whole or in part and notify the Obligee in writing, citing reasons.

Memphis LG&W unilaterally rebid the job, asked Asplundh to bid, and awarded the job to another contractor, all while it advised the Surety that it was not pursuing a claim under the Bond. In January of 2023 and in March 2023, while advising the Suety that it was not pursuing a claim and failing to advise the Surety that it was in the process of rebidding the Contract, Memphis LG&W was proceeding as if it had already terminated of the Contract. These actions deprived the Surety of the opportunity to exercise its performance options and rights under the Bond. Further, although the letter counsel for Memphis LG&W issued dated July 13, 2023 stated that the Obligee had satisfied the requirements pursuant to A, B and C of the Bond, it has not satisfied C.:

C.   The Obligee has agreed to pay the balance of the contract price to the Surety under the terms of the Contract or to a contractor selected to perform the Contract under the terms of the Contract with the Obligee.

The Contract was rebid and the Surety's understanding is that another contractor is performing under the rebid Contract 12420. Although in its letter to the Surety, the Obligee stated that it agreed to pay the Surety the Contract balance, it has already retained another Contactor to perform the work. A Resolution awarding Contract 12420, the rebid contract, on the agenda at a Board meeting of the Board of Light, Gas and Water Commissioners on June 21, 2023. A copy of the Board agenda is attached.

A significant policy rationale behind the surety's right to take over the defaulted principal's work is the surety's right to mitigate damages resulting from the default. Numerous court decisions have highlighted the performance bond surety's right to mitigate damages. *See Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*, 192 F.Supp.3d 1326, 1334 (S.D. Fla. 2016) (obligee did not have right to unilaterally hire contractor without allowing the surety to exercise rights under performance bond); *CC-Aventura, Inc. v. Weitz Co.*, 2008 WL 2937856, 5 (S.D. Fla. 2008) (obligee's unilateral action did not satisfy the bond's reasonable notice requirement); *Seaboard Sur. Co. v. Town of Greenfield*, 266 F. Supp. 2d 189, 195 (D. Mass. 2003) (upon the obligee's notice of default, the performance bond surety is allowed a reasonable amount of time to investigate the circumstances before selecting from the available performance options); *Sch. Bd. of Escambia Cty. v. TIG Premier Ins. Co.*, 110 F. Supp. 2d 1351, 1354 (N.D. Fla. 2000) (holding that the obligee's failure to provide the required notice deprived the surety of its right to mitigate damages); *Tishman Westside Constr. LLC v. ASF Glass, Inc.*, 33 A.D.3d 539, 540 (N.Y. App. Div. 2006) (holding that surety was discharged because the obligee failed to provide an opportunity for the surety to exercise its performance options under the bond).

************************ **Our toll-free number is 800-842-8496** ************************
If possible, please send future communications and documents concerning this claim via email to LMMURPHY@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

EXHIBIT O

**Travelers**

October 19, 2023
Page 6

<u>**Conclusion:**</u>

Travelers finds that there is a bona fide dispute between Memphis LG&W and Asplundh as to whether Asplundh breached the Contract and whether Asplundh was properly terminated. In addition, Memphis has not provided any evidence of damages which arose out of the alleged default. Also, Memphis LG&W has rebid the contract. Further, Asplundh has advised Travelers that Memphis LG&W has requested alternative dispute resolution. As a surety, Travelers cannot resolve this dispute, but rather must allow the parties to resolve their dispute either jointly or through the judicial or dispute resolution process. For the reasons set forth herein, we must, therefore, respectfully deny Memphis LG&W's claim at this time.

We are available to discuss the position we have taken. If you have questions, you may contact me at the phone number listed above.

Our decision is based upon the information made available to date. If you have any additional information which you believe may affect our determination, we ask that you please send this to us.

Please understand that our attention to this matter should not be construed as a waiver of any right or defense which may be available to the surety or its principal. Rather, all rights and defenses available to the surety or its principal are hereby specifically reserved.

Sincerely,

Laura Murphy

Laura Murphy

cc:    Asplundh Tree Expert, LLC

*********************** **Our toll-free number is 800-842-8496** ***********************
If possible, please send future communications and documents concerning this claim via email to LMMURPHY@travelers.com Please include the claim number in the subject line. (Please note that in certain cases we may still request original documents).

Rev 11/11/17                                                                                                                    C-15

EXHIBIT O